UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAVID FERGUSON, et al.

              Plaintiff,

                                          C-1-02-039

   -v-

RYDER AUTOMOTIVE, et al.,                 Judge Weber

              Defendants.

**PLAINTIFFS' ANSWER TO DEFENDANT HANES SUPPLY, INC.,
HEREAFTER "HANES" MOTION FOR SUMMARY JUDGMENT**

**FACTS**

The safety cables involved in the instant suit were designed by either or both Defendant Hanes and/or Defendant Commercial Carriers, Inc. Neither Hanes nor Defendant Commercial Carriers, Inc., will take credit for designing same. The product no one wants to have designed. Why? Because the design was defective from the beginning. (Alexander's depo. P.119).

Commercial Carriers, Inc., did not design the hand cable in question. Hanes Supply, Inc., did. (Answers to Objections of Defendant Commercial Carriers, Inc., and Plaintiffs' First Set of Interrogatories and Request For Production of Documents No. 2 filed herein).

Hanes decided on material to be used on the safety cables, coating and design. (Bevilaqua depo. Pp. 14 and 26). Hanes decided the material and design of the safety cables in question. (Terzain depo. Pp. 47, 65 and 66).

However, Hanes states that they did not design the safety cable. Hanes merely manufactured the cable in accordance with the specifications provided to it by Defendant Commercial Carriers, Inc. (Defendant Hanes Supply, Inc.'s Answer and Objections to Plaintiffs' First Set of Interrogatories No. 4 filed herein). This creates a question of fact between Hanes

and Commercial Carriers, Inc.

In any event, the safety cables in question were defective and Defendant Hanes and Defendant Commercial Carriers, Inc., released the safety cables in the market without sufficient testing. (Alexander's depo. Pp. 40 and 41). The safety cable was defective in that it failed during normal reasonable operation. The safety cable was defective in that it was not corrosion resistant and failed in an area of reduced cross section in the presence geometric stress concentrations. The incident vehicle was defectively manufactured without a proper Safety Cable, knowing available technology that should have been utilized in this design. The Vehicle was dangerous and defective in a manner that caused Ferguson's fall. Furthermore, in the absence of a proper design, which would have prevented the fall, warnings and instructions should have been provided with regard to required inspection and maintenance procedures. (Alexander's Report previously filed with 26(A) Disclosures).

The design of this safety cable using galvanized steel was not fit for a 10 year/million mile life. (Alexander's depo. P.57).

> Q.    Please state what type of material was used in the cable that was broken that is the subject of this lawsuit.
>
> A.    Galvanized steel.
>
> Q.    Please state what material is currently being used in the replacement cables on the trucks.
>
> A.    Stainless steel.

(Answers and Objections of Defendants Allied Systems and Defendant Allied Automotive Group, Inc., to Plaintiff's most recent set of Interrogatories and Request For Production of Documents No. 3 and No. 4 filed herein.)

2

Mr. Alexander testified:

"Q.    What's going on with these cables in the field that enables the corrosive processes to get started?

A.    It's the flexibility of the cable.  It's extremely flexible away from the fitting, okay, right in the area where you leave the fitting, okay.  And that is where the flexing, through use of people grabbing onto it, using it as a hand support, leaning on it.

You also have the over-the-road vibrations, allowing it to flap back and forth similar to a flag in the wind, if you will."

(Alexander depo. Pp. 48 and 49).

A stainless steel cable will not corrode as the instant cable did.  (Alexander depo. Pp. 54 and 55).  The yellow coating over the cable obstructed an inspection for rust.  (Alexander depo. Pp. 68, 69 and 70).  The cables used in this application being made of galvanized steel would only last three to five years.  That Mr. Alexander testified concerning the design:

"A.    For example, one of the things they could have done is use the eyebolt design, okay.  So in that design, you don't have, you know, that high concentration of stresses right there.  Do you follow me?

Q.    Um-hum.

A.    You have the ability to swivel between the fixed post and the swaged fitting, if you will.

Q.    So would it be your opinion that the selection of the more rigid swaged fitting was an inappropriate choice for the intended use of this cable?

A.    With a steel cable.  With a stainless steel cable, that would not be subjected to corrosion and loss of strength due to corrosion.  I think that that would have been adequate.

Q.    Okay.  But if you're using the galvanized material, then you would need to have at a minimum some sort of a swivel connection?

A.    That's correct.

Q.      So whoever made the decision on the use of a swaged fitting versus a swivel fitting in association with the galvanized aircraft cable was guilty of a poor design?

A.      Yes, that's a poor design."


(Alexander depo. P. 95).

Mr. Alexander testified concerning warning, maintenance and instructions:

"Q.     Was there any maintenance activities that could have been done on the clothes lines to prolong their life before the water intrusion and rust began, sir?

A.      Yeah, you can clean them, clean the ends and oil them.

Q.      And did that come from anything from the manufacturer of the truck or the component part manufacturer?

        I'll withdraw the question.

        Did you see any evidence that those instructions were provided to the Allied defendants by any manufacturer or component manufacturer?

A.      No, I did not."


(Alexander depo. P. 115).

Employees of Defendants Allied have testified concerning the safety cables.  Mr. Palladino says the problem with the cables was that the cables were breaking where the cable meets the steel crimps as in Ferguson's case.  (Palladino depo. Pp. 24, 27, 71).  Mike Palladino stated in his initial report immediately after the accident that the cause of the accident was fatigued cable on the head rack.  (Palladino depo. P. 8).  Broken cables broke at the crimp edge also known as swedge where the exemplar also broke.  (Wolf depo. P. 29).  The exemplar is similar to broken cables that injured Ferguson.  (Palladino depo. P. 40).  Allied employees were

never instructed how to care for the cables. (Wolf depo. Pp. 44-46). The exemplar is similar to other broken cables and break at swedge. (Shively depo. Pp. 8 and 9). Cables were being replaced to eliminate flex point where breaking at the crimp. (Shively depo. P. 15). Eventually, the design of the cables went to using stainless steel to eliminate corrosion. (Shively depo. P. 17). They were never given instruction for care, maintenance or how to inspect cables. (Shively depo. P. 18). Cables that injured David Ferguson broke at the crimp of the cable, the same as exemplar used by expert, Gabriel Alexander. (Weaver depo. Pp. 6 and 7). No instructions of any kind were given for care, maintenance, and inspection of cables. (Weaver depo. P. 27). No one told Allied employees to inspect cables for corrosion or how to inspect for corrosion. (Weaver depo. P. 30). The new cables have clear plastic coating to see the metal through. On the old cables as in the Ferguson Case, the plastic was painted yellow and you could not see the metal or corrosion. (Weaver depo. Pp. 31 and 32). Mr. Ferguson could not examine the cables on this truck because of plastic over the cables was painted yellow by Commercial Carriers, Inc. (Ferguson depo. Pp. 33-35). The safety cables were put on the trucks to stop people from falling off at the most dangerous part of the truck management told Ferguson. (Ferguson depo. Pp. 51 and 52). Ferguson, prior to his injury, was never told not to use cables because they were failing. (Ferguson depo. P. 53). Ferguson assumed the cables were good because if they were not replacement cables, they had been checked by maintenance. (Ferguson depo. Pp. 55-58). Plaintiff Ferguson was not sure if new cables because they were painted yellow. (Ferguson depo. P. 59). Mr. Ferguson's testimony was that where the cables had been painted, the paint obscures the metal cable underneath and impairs your ability to see if there has been any deterioration of the metal. (Ferguson depo. P. 157).

Employees of Commercial Carriers, Inc., state that between January 1, 1994 and 1997, 861 trailers were manufactured by Commercial Carriers, Inc., all with same cable design that injured Plaintiff. (Terzain depo. Pp. 13 and 37). Terzain says Commercial Carriers, Inc., started putting cables on trucks in the spring of 1994. (Terzain depo. P. 24). The cable was designed by Hanes Supply, Inc. (Terzain depo. P. 35). All 861 cables were bought from Hanes Corp. (Terzain depo. P. 39). Commercial Carriers, Inc., requested vinyl coating be colored yellow. (Terzain depo. P. 37). Hanes Supply decided the material specifications and design of the cable in question. (Terzain depo. Pp. 47, 65 and 66). Commercial Carriers, Inc., did no testing on the cables. (Terzain depo. P. 49). No other type or design of cable was tried before these cables were put on all 861 trucks. (Terzain depo. P. 51). Allied told Hanes they wanted something to last the life of the truck (10 years). (Terzain depo. Pp. 52, 53 and 54). The cables were made so that drivers could grab onto them and prevent a fall. (Terzain depo. P. 56). The tractor trailer in question that was involved in the Ferguson injury was manufactured by Commercial Carriers, Inc., on April 23, 1995 and the cables were put on a day or two before. (Terzain depo. Pp. 76 and 77). None of the cables were supposed to fail in six years. (Terzain depo. P. 91). According to Hanes, the cables were to last the life of the truck which Hanes was told was 10 years. (Terzain depo. Pp. 52, 53, 54 and 91). An option was to have clear vinyl coating but Commercial Carriers, Inc., decided they wanted coating in yellow. It could have been clear vinyl. (Terzain depo. Pp. 93 and 94). No warnings or instructions were given from Hanes to Commercial Carriers, Inc., on the care of the cables. (Terzain depo. P. 95). The cables on Ferguson's trailer were purchased from Defendant Hanes. (Terzain depo. Pp. 100 and 101). Commercial Carriers, Inc., didn't buy cables from anyone but Hanes. (Terzain depo. P. 101).

6

That no warning labels were on the trailer concerning the cables. (Terzain depo. P. 120). That

Mr. Terzain himself an employee of Commercial Carriers, Inc., decided to switch from clear

winy to yellow coated vinyl. (Terzain depo. P. 124). Originally, Commercial Carriers, Inc.,

thought of using eyebolts but Hanes said used swedge on end with galvanized cables which

Commercial Carriers, Inc., did. (Bevilaqua depo. P. 14). That Commercial Carriers, Inc.,/Allied

went to Hanes Supply for expertise on cables. (Bevilaqua depo. P. 14). That Hanes didn't give

any maintenance instructions. (Bevilaqua depo. Pp. 16 and 22). That Mr. Hanes picked out the

metal, coating and swedge design. (Bevilaqua depo. P. 26). That no tests were done including

corrosion tests and none were asked for. (Bevilaqua depo. P. 27). That Hanes gave no

instruction concerning care or inspection of cables. (Bevilaqua depo. P. 30).

 Mr. Hanes, 100% owner of Defendant Hanes Supply, denies he designed the safety cable

in question but agreed with Mr. Alexander, Plaintiff's expert, :That stainless steel is more

corrosion resistant." (Hanes depo. P. 32). Mr. Hanes stated that stainless steel is a better choice

for this cable design and more corrosion resistant. (Hanes depo. P. 71). Mr. Hanes states that

five or six years, if maintained properly and inspected, should be the life span of the cable.

(Hanes depo. Pp. 71 and 72). That the material used, galvanized aircraft cables, was not suitable

for 10 year life span. (Hanes depo. P. 72). That stainless steel is a more appropriate material for

the safety cables. (Hanes depo. P. 73). That straight line cables are probably better without the

slack as in the instant cables. (Hanes depo. Pp. 50-51).

 Mr. Hanes stated that the clear coating is available for the cables. (Hanes depo. P. 14).

You are able to see though the clear coating but not the yellow coating. (Hanes depo. P. 15).

Commercial Carrier, Inc., ordered all yellow coating on cables. (Hanes depo. P. 21). That the

coating goes up to metal parts, threaded stud, as close as possible. (Hanes depo. P. 34). That Hanes tries to get coating up to metal stud. (Hanes depo. P. 42). That the area susceptible to corrosion is the area covered by the vinyl coating. (Hanes depo. P. 107). That the yellow vinyl coating is all the way up to threaded stud. (Hanes depo. P. 108).

Mr. Hanes also made some surprising and damaging admissions. Mr. Hanes knew the cable was to be used for a safety cable. (Hanes depo. Pp. 85, 87, 91 and 92). Hanes never asked how long the cable was to last. (Hanes depo. Pp. 109-110). No testing was requested or performed on the safety cable. (Hanes depo. P. 59). Hanes only gave standard warning, no instructions on longevity of cables, no instruction on maintenance of cables and no written instructions were given. (Hanes depo. P. 49). Only item Hanes gave CCI was invoice and bill although they knew these cables were being used for safety cables. (Hanes depo. Pp. 49-51). Hanes did not provide CCI specific instructions on inspection. (Hanes depo. Pp. 103, 104 and 106). Hanes never told CCI the proper maintenance. (Hanes depo. P. 110). CCI picked the least expensive option for the design and material of the cables. (Hanes depo. Pp. 1-15).

## LEGAL ARGUMENT

The record is clear that Defendant Hanes put into commerce a defective product when that product left Hanes which proximately caused the injury to Plaintiff Ferguson. The safety cable was the wrong design using the wrong product, galvanized steel. This was known in the industry at the time. If the Defendant Hanes was to use galvanized steel in this design, the design had to be eyebolt and not the swedge design. If the swedge design was used, the material had to be stainless steel. Not only is this the opinion of Plaintiff's expert Mr. Alexander but Mr. Hanes himself of Defendant Hanes.

This safety cable could not last 10 years as required by Commercial Carriers, Inc., but only five or six years. Yet, Hanes knowing it was needed to last 10 years designed and put out in commerce a safety cable that would only last five or six years when other designs were available that would last 10 years. Commercial Carriers, Inc., relied on Defendant Hanes to design and pick the material for this safety cable. Ten years is important because after ten years Commercial Carriers, Inc., either retires or completely retrofits the trucks.

Further, Defendant Hanes, by their own admission, did no testing, gave no warnings, and provided no maintenance instructions. The facts are clear that Defendant Hanes designed a defective product proximately causing Plaintiff's injuries.

## A. INTERVENING AND SUPERSEDING CAUSE

Defendant Hanes's main argument for summary judgment is the defense of intervening and superseding causation. In *Leibreich v. A.J. Refrigeration, Inc*. (1993), 67 Ohio St.3d 266, 617, N.E.2d, 1068, 1071 the court in reviewing a motion for summary judgment in a product liability case stated:

> We have also repeatedly recognized that the issue of intervening causation generally presents factual issues to be decided by the trier of fact. *Merchants Mut. Ins. Co. v. Baker* (1984), 15 Ohio St.3d 315, 318, 15 OBR 444, 446, 473 N.E.2d 827, 828-829; *Cascone v. Herb Kay Co.* (1983), 6 Ohio St.3d 155, 160, 6 OBR 209, 214, 451 N.E.2d 815, 820; *Mudrich*, *supra*, 153 Ohio St. at 40, 41 O.O. at 121, 90 N.E.2d at 864. The determination of intervening causation "involves a weighing of the evidence, and an application of the appropriate law to such facts, a function normally to be carried out by the trier of the facts." *Cascone*, *supra*, 6 Ohio St.3d at 160, 6 OBR at 214, 451 N.E.2d at 820.

The court in *Leibreich* in 1071, 1072 approved the following jury instruction:

> "The causal connection of the first act of negligence is broken and superseded by the second, only if the intervening negligent act is both new and independent. The term "independent" means the absence of any connection or relationship of

9

cause and effect between the original and subsequent act of negligence.  The terms "new" means that the second act of negligence could not reasonably have been foreseen."

In *Bleh v. Bero Mfg. Co.*, (2001 1st Dist.), 142 Ohio App.3d 434, 441, the court held that for a third party intentional tort to be an intervening superseding causal/defense, the harm of the third party must not be within the scope of the risk created by the original actions/conduct. Certainly, original actor Defendant Hanes's conduct created the risk in the instant case. Defendant Hanes's conduct of placing a defective safety cable into commerce that will rust and corrode and break before the 10 year life of the truck and in fact the safety cable does same is within the scope despite Allied's actions or inactions of replacement.

In the instant case, there was in fact a defect in the product designed by Defendant Hanes, such defect existed at the time it left Hanes's hands and the defect was the direct and proximate cause of Ferguson's injuries.  For an intervening act to be a defense, it must have destroyed the causal connection between any breach of duty by the defendant and the accident.  It must have been extraordinary, not foreseeable in the normal course of events, or independent of, or far removed from the defendant's conduct.  Such an intervening cause is known as a superseding or a responsible cause, or a new and independent intervening cause.  Some courts have characterized a superseding cause as being the <u>"sole cause" of the injury</u>.  Certainly, this is not present in the instant case.

A defense of intervening, superseding causation will defeat a products liability action only when the intervening cause is "*sufficient* to break the chain of causation between an allegedly defectively designed product and a plaintiff's injuries."  (Emphasis *sic*.)  *Nye v. Fostaria*, 78 Ohio App.3d 319, (Ohio 1992).

The defendant Hanes cites one other case, *Burns v. Cooper Industries, Inc.*, for the proposition according to Defendant Hanes that if an employer supplies a defective product to its employees, the employers' acts are the superseding cause of any resulting injury. That was not a true statement of the law under *Leibreich v. A.J. Refrigeration* decided after *Burns* or *Bleh* decided after *Burns*. An intentional tort by a third party (ie. Employer) must be outside the scope of risk created by the original action (ie. Hanes) to be a superseding cause. *Bleh v. Bio Mfg. Co.,* 142 Ohio App.3d 434, 441, (1st Dist. 2001). The third party's behavior must be so unusual that it could not be foreseen by the Defendant. Again, this certainly was foreseeable by Defendant Hanes. In fact, even criminal conduct can be foreseeable. In the Restatement of Tort 2nd one of the factors is, "The fact that the intervening force is operating independently of any situation created by the actors negligence." Again, the facts are clear that Defendant Hanes set this matter in motion (ie. The defectively designed safety cable and lack of maintenance were foreseeable.)

Finally, in direct opposition of Defendant Hanes' Memorandum, the 1st Dist. Court of Appeals, Hamilton Co., Ohio in *Valter v. C. Schmidt Co.*, 74 Ohio App.3d 36, 598 N.E.2d 35, 39, (Ohio App.1st 1991) specifically held:

"We hold that an employee's intentional tort does not relieve a manufacturer's strict liability as a matter of law . . ." (Emphasis added).

The current law is not as stated by Defendant Hanes. Defendant Hanes has not shown as a matter of law that this issue should be taken from the tier of fact. Rather, the law is that this issue is a question of fact and summary judgment is not appropriate.

### B.  PLAINTIFF MANUFACTURER'S CLAIMS NEED NOT FAIL BECAUSE DEFENDANT ALLIED DESTROYED THE SAFETY CABLES AGAINST DEFENDANTS ALLIED COMPANY POLICY

Defendant Hanes is correct that Defendant Allied knowingly destroyed the safety cable that injured Mr. Ferguson against Defendant Allied company policy.

Defendants Allied had a long standing company policy not to destroy items that had been involved in injuries.  (Weaver depo Pp. 7, 8 and Shively depo.)  While pictures were taken by friends of Plaintiff of the cable on the day in question after it broke on the truck, the actual cable was disposed of by Allied in violation of company policy.  The company policy is to not dispose of same.  Defendants Allied did not take photos or preserve the cable in any manner in violation of the companies' long standing policy.  (Weaver depo at 7 and 8).

Mr. Weaver in his deposition said that Mr. Palladino, the Safety Supervisor, had the cable.  (Weaver depo filed separately herein).  Mr. Weaver, in his deposition testimony stated the following:

A.    I was at a vendor.  The next day I was briefed by Tom Heller that it happened.  He said Mike Palladino was involved with the investigation and also the report.  We have a first report of injury we make, okay?  And that's where it was left at, with safety.  This individual took care of the safety.  And I'm not sure that they did the next day on it because I was never consulted about it.

Q.    But you did ask Mr. Palladino at some point in time, where's the cable?

A.    Yes.  I asked him if he had the cable.

Q.    And he said yes?

A.    He said yes.

Q.    Did you ever talk to him about that again?

A.    Not about the cable, no.

Subsequently, Mr. Weaver filed an errata sheet stating the following Answer:

> A.    We talked a little more about it.  I asked how Ferguson was, etc.  And I also asked him where the old cable was at.  Mr. Heller said that he was not sure, but he thought Mike Palladino had it.  I left it at that, because generally when something would happen like that, Mike Palladino, being the safety man would impound that and hold it pending an investigation.  Later on (it might have been 1-2 weeks later), Mike called and asked me some questions about cables and the policies on whether we were changing them and how often we were getting to change them, etc. I then asked Mike if he had the cable to Ferguson's truck.  He said, <u>"Well, I've got a cable."</u>  That is all that was said.  I did not ask anymore, since I figured it was in investigation and it wasn't any of my business. (Emphasis added)

In fact, Defendant Allied, although asked by Plaintiffs for this cable since the very beginning of this case, never produced this cable.  Therefore, this cable in Allied's possession was knowingly destroyed.  Mr. Palladino was the person who was the Supervisor and took the first report of injury from Mr. Ferguson.  Mr. Palladino was Safety Supervisor on the date of the injury September 7, 2000 and investigated same.  (Palladino depo at P. 16).  Mr. Palladino was aware and also had investigated an injury to a Thomas Fay on August 8, 2000, in which the same type cable broke causing injury.  (Palladino depo at P. 17) Despite same, there is no cable.  Mr. Palladino destroyed the cable or someone from Allied destroyed the cable.  This was done knowing that a prior cable had broken injuring Mr. Fay, a driver, and now this cable broke injuring another driver, David Ferguson.

Testimony has shown that Commercial Carriers, Inc., still exists as a subsidiary of Allied Systems, Inc. (Terzain depo. At 68 and 29).  Supposedly, Defendant Allied assumed the liability

13

of all the trailers that had been built by Commercial Carriers, Inc. (Terzain depo. P. 67).

Commercial Carrier changed to Allied in 1997. (Palladino depo. P. 13). There is some evidence

that Defendant Allied and Defendant Ryder have a joint defense agreement. (Affidavit Thomas

R. Koustmer, filed 07/08/03, Exhibit 3, P. 35). In *Pearce v. Fouad*, 146 Ohio App.3d 496, 766

N.E.2d 1057 (Ohio App. 10 Dist. 2001), the court held that a manufacturing defect can be

provided as circumstantial evidence. The court in *Peace, id* at 1063 stated:

> Plaintiff's manufacturing defect claim under these sections asserts that Kmart
> was the supplier of the fan in question, that Kmart sold the fan under its own trade
> name, and that the product was defective in manufacture in that it deviated from a
> design specification requiring it to meet UL safety guidelines for electric fans
> when it was sold by Kmart.

In the instant case, these safety cables were to last 10 years. However, they were only

designed and manufactured to last five or six years. This is a deviation from specification and

creates a question of fact.

### C. PLAINTIFF WARNING CLAIMS DO NOT FAIL BECAUSE HANES DID NOT SUPPLY ALL RELEVANT INFORMATION ABOUT THE CABLES TO EITHER EMPLOYER OR EMPLOYEE

The Defendant Hanes admits in Mr. Hanes's deposition that Hanes did not supply all

relevant information about the cables to Commercial Carriers, Inc., Allied or Ferguson. Hanes

never told Commercial Carriers, Inc., how to properly maintain cables. (Hanes depo. P. 110).

Hanes did not provide Commercial Carriers, Inc., specific instruction on inspection. (Hanes

depo. Pp. 103, 104 and 106). Hanes did not tell Commercial Carriers, Inc., the cables only last

five or six years and not 10 years as needed by Commercial Carriers, Inc. (Hanes depo. At 71, 72

and 73). Hanes did not tell Commercial Carriers, Inc., that stainless steel was a more appropriate

14

material.  (Hanes depo. Pp. 72 and 73) (Terzain depo. At 9 and 45).  Hanes knew the cables were

to be used for safety cables.  (Hanes depo. Pp. 85, 87, 91 and 92) (Terzain depo. Pp. 91 and 45).

According to Hanes, no instruction was given for maintenance of the cables and no written

instruction was given.  (Hanes depo. P. 49).  No testing was performed on the cables.  (Hanes

depo. Pp. 49-51).  However, Commercial Carriers, Inc., asked for Hanes for cables that would

last 10 years and Hanes designed the cables.  (Terzain depo. Pp. 45, 47 and 91).

Now Hanes claims that because the cables were breaking, rusting and corroding and

injuring people, they had no duty to warn anyone.  Obviously, Hanes did not warn Plaintiff

Ferguson of anything nor warn Allied nor warn Commercial Carriers, Inc.  If Hanes had given

instructions on the care of cables and/or how to inspect cables, this injury would not occur.  If

Hanes had warned not to use yellow coating at the crimp because of corrosion, this never would

have occurred.  If Hanes had used a different design, this never would have occurred.

Hanes was told the purpose of the cables was for safety.  Hanes knew yellow coating was

being ordered.  Hanes did not supply instructions on the care of the cables.  Hanes did not supply

instructions on how to inspect the cables.

Mr. Alexander has testified that:

> Q.    Was there any maintenance activities that could have been done on
> the clothes lines to prolong their life before the water intrusion and
> rust began, sir?
>
> A.    Yeah, you can clean them, clean the ends and oil them.
>
> Q.    And did that come from anything from the manufacturer of the
> truck or the component part manufacturer?
>
> I'll withdraw the question.
>
> Did you see any evidence that those instructions were provided to

the Allied defendants by any manufacturer or component manufacturer?

A.    No, I did not.

Mr. Alexander stated:

4.    The incident vehicle was defective in that the Safety Cable failed during normal reasonable operation.

5.    The Safety Cable was defective in that it was not corrosion resistant and failed in an area of reduced cross section in the presence geometric stress concentrations.

6.    The incident vehicle was defectively manufactured without a proper Safety Cable, known available technology that should have been utilized in its design.

7.    The incident Vehicle was dangerous and defective in a manner that caused Ferguson's fall.

Further, if Hanes had instructed not to use the yellow coating at the crimp, because one could not see rust, this injury would not have occurred. If Hanes had instructed on how to inspect these cables at the crimp, the injury would not have occurred. No one was told to inspect, to oil/maintain or how to inspect and no one was doing same. Defendant Hanes cannot say Allied was aware of the above stated facts. In *Vernett v. Fred Christen and Son Co.*, 138 Ohio App.3d 586, 741 N.E.2d 984 (Ohio App. 2000), the case cited by Hanes, the court held a warning is adequate if it reasonably discloses all inherent risk and if the product is safe when used as directed. In the instant case, the safety cable was not safe when used and Defendant Hanes gave absolutely NO warnings whatsoever although they knew the cables would not last 10 years and the yellow coating covered rusting. In *Vernett*, the court held that the issue of proximate cause is often a jury question. Hanes gave no warnings or instructions. The only

16

warnings in this case are the actual injuries to people which are not warnings at all. Therefore, summary judgment is not appropriate as to warnings.

### D. THE PLAINTIFFS HAVE CONNECTED THE ALLEGED DEFECTIVE DESIGN TO THE CABLES FAILURE AND HANES SUPPLY IS NOT ENTITLED TO SUMMARY JUDGMENT

Incredibly, Hanes states Plaintiffs have not made a causal connection between the design defect and the injury to Mr. Ferguson. All the evidence including Mr. Hanes's own testimony shows a causal connection. Additionally, Mr. Alexander's testimony provides same.

Mike Palladino, Allied Safety Supervisor, stated in his initial report after the accident that the cause of the accident was fatigue cable at the steel crimp. (Palladino depo. Pp. 8, 24, 27 and 71). He stated that the problem with the cables was that the cables were breaking where the cables meet the steel crimp as in the Ferguson case. (Palladino depo. Pp. 24, 27 and 71). Mr. Palladino investigated the Ferguson accident. The photos after the accident confirm same. Employees of Allied agree that broken cables broke at the crimp edge also known as "swedge." The break in the exampler studied by expert Alexander and the break in the Ferguson cable are at the same place. (Palladino depo. Pp. 24, 27, 40 and 71) (Wolf depo. Pp. 29, 40, 44, 45 and 46) (Shively depo. Pp. 8, 9 and 15) (Weaver depo. Pp. 9, 10, 31 and 32). Mr. Alexander's opinion is that the design was not fit for 10 years and that a stainless steel cable would not corrode as in the Ferguson case. That a cable such as Ferguson's would only last three to five years. (Alexander depo. Pp. 54, 55, 57 and 95).

This cable was put in service in April, 1995. (Terzain depo. Pp. 76-77). That in June, 1999, the cables were being replaced by Allied due to rusting, corroding and breaking. (Weaver depo. Pp. 49-51). That this cable failed September 7, 2000, five years later in the same spot as

17

the exampler given to Mr. Alexander and in the same broken spot as other cables.

Even Mr. Hanes admitted the cable and design used in the instant case only lasts five or six years if maintained properly and inspected.  (Hanes depo. Pp. 71 and 72).  But, Hanes gave no instruction on maintenance or inspection.  (Hanes depo. Pp. 103, 104, 106 and 110).  That area susceptible to corrosion where threaded stud at vinyl coating or crimp is the area where Ferguson's cable broke and the exampler used by expert Alexander broke.  (Hanes depo. P. 107).  Mr. Hanes stated that galvanized aircraft cable was not suitable for 10 year life span and stainless steel was more appropriate material for these safety cables.  (Hanes depo. Pp. 32, 71 and 72).  That the yellow coating was placed up to the stud.  (Hanes depo. P. 108).  Mr. Hanes states he never asked how long these cables were to last.  (Hanes depo. Pp. 109, 110 and 111).  However, Commercial Carrier, Inc., states that they specifically told Mr. Hanes the cables were to last 10 years.  (Terzain depo. P. 91) (Bevilaqua depo. Pp. 14 and 26).  Hanes knew the use of the cables and in fact Commercial Carriers, Inc., thought to use the eyebolt design but Hanes said no and used the crimp.  (Bevilaqua depo. P. 14).  The crimp is where Ferguson's cable failed and other cables  failed.  That is what is wrong with the design.  The material, galvanized steel, was wrong for crimp end and this was known in the industry.

Defendant Hanes only cites *State Farm v. Chrysler*, 37 Ohio St.3d 523 N.E.2d 489 in which no expert testimony was offered.  In *State Farm*, the only proof of a defective design was the car caught on fire.  Therefore, plaintiff alleged there must be defective design.  That is far from the evidence in the instant case.  In the instant case, the wrong material was used for the wrong design as testified to by Mr. Hanes, expert Alexander and Allied employees.  Furthermore, *State Farm*, *id*. states Plaintiff need only prove loss caused by the defect and not

18

other possibilities <u>although not all possibilities</u> need be eliminated.  (Emphasis added)  In *Porter v. Gibson Greetings, Inc.*, 1997 W.L. 761851 (Ohio App. 7 Dist. 1997), the court in citing *State Farm* stated that proof can be direct or circumstantial and that the evidence is sufficient to deny a summary judgment if proof of a causal link.

Hanes, in their Memorandum, dream up some hypothetical possibilities.  However, since Hanes designed this cable and placed same in commerce, many of these possibilities are foreseeable.  Hanes states improper installation by Commercial Carriers, Inc., but records show installed in 1995 still there on June 7, 2000.  Improper maintenance by Allied but Hanes never instructed Allied on how to maintain.  Abuse, misuse, overloading, shock loading but all foreseeable by designer Hanes and furthermore, there is no record of repair for this cable.  Negligent repair but we have repair records and there are no indications this safety cable was repaired.  Ohio courts have held the design defect cases may include failure to design to prevent foreseeable misuse.  *Barrett v. Waco International*, 123 Ohio App.3d 1, 702 N.E.2d 1216 (Ohio App.4th Dist. 1997).

The material was wrong for the design and the design was wrong for the material which resulted in rusting, corrosion and breaking as in the other breaking cables, as in the Fay cable, as in the Ferguson cable and as in the exampler cable because as everyone agrees, this design and material for the safety cables would only last for five or six years.

The Plaintiff has shown a casual link and summary judgment is not appropriate.

### E.  THE PRODUCT DID NOT CONFORM TO THE REPRESENTATIONS OF HANES SUPPLY, INC.

Testimony of Commercial Carrier, Inc., is that Defendant Hanes represented that the

cable would last 10 years. (Terzain depo. P. 91). That Commercial Carriers, Inc., went to Hanes

for their expertise and that Hanes picked out the design and material and stated it would last 10

years. (Terzain depo. P. 91) (Bevilaqua depo. Pp. 14, 15, 16 and 26). O.R.C. § 2307.71 states:

> A product is defective if it did not confirm, when it left the control of its
> manufacturer, to a representation made by that manufacturer. A product may be
> defective because it did not conform to a representation even though its
> manufacturer did not act fraudulently, recklessly, or negligent in making the
> representation.

Everyone relied on the representation of Hanes in choosing the material and design (ie.

That the product and design would last the life of the truck, 10 years.) This false representation

is the proximate cause of Plaintiff Ferguson's injuries. Therefore, summary judgment is not

appropriate.

<u>CONCLUSION</u>

Summary Judgment is not appropriate because the Plaintiffs have come forward with the

necessary evidence to raise a genuine issue of fact regarding manufacturing defect, warning

defect, design defect and misrepresentation.

Respectfully submitted,

_____
Thomas R. Koustmer   (0008410)
Attorney for Plaintiff
1800 Federated Building
7 West Seventh Street
Cincinnati, Ohio 45202
(513) 621-3616

_____
Michael J. Honerlaw, Esq.

20

Attorney for Plaintiff
Honerlaw & Honerlaw Co., L.P.A.
9227 Winton Road
Cincinnati, Ohio  45231

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent electronically or by Ordinary U.S. Mail to the following this _____ day of September, 2003:

Kenneth Robert Schoeni
Kohnen & Patton
PNC Center, Suite 800
201 E. Fifth Street
Cincinnati, Ohio  45202
(513) 381-0656
Attorney for Defendants, Ryder System Inc;
and Commercial Carriers, Inc.

David E. Larson
Larson & Larson PC
11300 Tomahawk Creek Parkway, Suite 310
Leawood, KS 66211
Attorney for Defendants Ryder System Inc.,
And Commercial Carriers, Inc.

Robert Albert Winter, Jr.
Hemmer Spoor Pangburn DeFrank & Kasson PLLC
250 Grandview Dr., Suite 200
Ft. Mitchell, KY 41017
(859) 344-1188
Attorney for Defendants, Allied Systems and
Allied Automotive Group

Craig R. Paulus, Esq.
Taft, Stettinius & Hollister LLP
PNC Center
201 E. Fifth St., Suite 800
Cincinnati, Ohio 45202-3957
Attorney for Defendant Hanes Supply, Inc.

_____
Thomas R. Koustmer
Attorney for Plaintiff

21