UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAVID FERGUSON, et al.

        Plaintiff,

                                      C-1-02-039

  -v-

RYDER AUTOMOTIVE, et al.,                Judge Weber

        Defendants.

PLAINTIFF'S ANSWERS TO DEFENDANT COMMERCIAL CARRIERS, INC.,
HEREINAFTER (CCI) MOTION FOR SUMMARY JUDGMENT

FACTS

Testimony has shown that Commercial Carriers, Inc., still exists as a subsidiary of Allied Systems, Inc. Terzain depo. at 68 and 69. Supposedly, Defendant Allied assumed the liability of all the trailers that had been built by Commercial Carriers, Inc. Terzain depo. at 67. Commercial Carrier changed to Allied in 1997. Palladino depo. P. 13.

There is some evidence that Defendant Allied and Defendant Ryder have a joint defense agreement. Affidavit of Thomas R. Koustmer, filed 07/08/03, Exhibit 3, P. 35.

These safety cables were put out into the stream of commerce without anyone testing the design of the cables and in fact, no one will take credit for the design of the cables, not Allied Automotive Group, Inc., not Allied Systems, Inc., not Commercial Carriers, Inc., not Ryder Systems, Inc., not Hanes Supply, Inc. In fact, Hanes Supply, Inc., blames the design of the safety cable on Commercial Carriers, Inc. Hanes depo. Pp. 24, 25, 44-47 and 61.

After the injury to Mr. Ferguson, Defendant Allied destroyed the cable without taking photographs. Weaver depo. Pp. 8 and 11.

Allied had a motive to eliminate the evidence. Allied shares a parent corporation with

manufacturer-defendant Commercial Carriers, Inc.  <u>Ex. D., Terzain depo. 68-69</u>.  Thus, a loss to Commercial Carriers, Inc.'s bottom line is the same as a loss to Allied's bottom line.

In fact, Allied assumed the liabilities of the very tractor-trailer designed and manufactured by Defendant Commercial Carriers, Inc.  <u>Terzain depo. P. 67</u>.  Defendant Allied admits destroying the defective cables in question and not taking any photographs of same when it is Allied's company policy to retain any product involved in an injury.

Defendants Allieds' destruction of applicable evidence can be inferred to be a deliberate attempt to protect itself and CCI from suit.  This is especially true upon reading Defendant CCI's, Expert Witness Disclosure and report.  <u>Attached to Defendant's Motion For Summary Judgment, Exhibit 5</u>.  The expert's conclusions is that he can't give an opinion because of the fact that there is no cable or exemplar cables.  Therefore, Defendants Allied, who is a parent company for CCI is by destruction of evidence protecting CCI and itself from liability in this matter.  The report of Mr. Sauer reads, "It is my professional opinion within a reasonable degree of engineering certainty that with the evidence at hand and lack thereof, no definite conclusion can be formulated in this failure situation."  Mr. Sauer's conclusion is the absence of a failed part in conjunction with the poor photographic documentation of the failure makes an engineering analysis of this situation impossible to perform.  Therefore, Defendants Allied have both protected itself as well as protected CCI.  CCI now files a Motion For Summary Judgment based upon same.

Defendants Allied and Defendant CCI should not benefit from the willful and malicious conduct and attempt to deny Plaintiff Ferguson his rights under the Ohio Constitution Article 1 § 5; and Article 1§ 16.

The safety cables involved in the instant suit were designed by either Defendant Hanes or Defendant CCI. Defendant Hanes and Defendant CCI blame each other for the design. The product no one wants to have designed. Why? Because the design was defective.

CCI does admit that CCI decided to paint the cables yellow. Bevilaqua depo. P. 16. The vinyl could have been clear. Terzain depo. Pp. 93-94 and 124. As a result, one could not see through the vinyl to see if there was rusting at the crimp. Weaver depo. Pp. 31 and 32. This is the exact place where Ferguson's cable broke and other cables were breaking. Palladino depo. Pp. 24, 27 and 71. You were able to see through the clear coating but not the yellow coating. Hanes depo. Pp. 15 and 21. The coating goes up to the metal part, threaded stud as close as possible. Hanes depo. Pp. 36 and 42. The yellow coating went all the way up to the threaded stud. Hanes depo. P. 108.

Further, CCI, who had several engineers on staff, requested galvanized steel but stainless steel was a better option because it is more corrosion resistant. Hanes depo. Pp. 31 and 32.

CCI chose the material and design without advice from Hanes. Hanes depo. P. 47. These cable's had slack so a car door could be opened though Mr. Hanes states that these straight line cables would be better without slack. Hanes depo. P. 59. CCI did not do any testing or request any testing before putting these cables into commerce. Hanes depo. P. 59; Terzain depo. P. 49. CCI did not ask Mr. Hanes about suitable material but if asked he would not have recommended galvanized steel. Hanes depo. Pp. 70 and 73. That CCI picked the least expensive option for the cables and this option would not last 10 years or the life of the truck. Hanes depo. Pp. 1-15, 70 and 72. That five or six years if maintained and inspected properly should have been the life of the cable. Hanes depo. Pp. 71 and 72. CCI put these cables on the

truck for the life of the trucks or 10 years.  Terzain depo. P. 91.  CCI picked out the design and material.  Hanes depo. Pp. 24, 25, 44-47.  However, galvanized steel cable used on these safety cables is not suitable for 10 years.  Hanes depo. P. 72.  No warning of any kind was given by CCI nor was there any testing done by CCI concerning the safety cables.  Terzain depo. P. 49.

       The safety cables in question were defective and Defendant Hanes and Defendant CCI released the safety cables in the market without sufficient testing.  Alexander's depo. Pp. 40 and 41.  The safety cable was defective in that it failed during normal reasonable operation.  The safety cable was defective in that it was not corrosion resistant and failed in an area of reduced cross section in the presence geometric stress concentrations.  The incident vehicle was defectively manufactured without a proper Safety Cable, knowing available technology that should have been utilized in this design.  The incident Vehicle was dangerous and defective in a manner that caused Ferguson's fall.  Furthermore, in the absence of a proper design, which would have prevented the fall, warnings and instructions should have been provided with regard to required inspection and maintenance procedures.  Alexander's Report previously filed with 26(A) Disclosures.

       The design of this safety cable using galvanized steel was not fit for a 10 year/million mile life.  Alexander's depo. P. 57.

> Q. Please state what type of material was used in the cable that was broken that is the subject of this lawsuit.
>
> A. Galvanized steel.
>
> Q. Please state what material is currently being used in the replacement cables on the trucks.
>
> A. Stainless Steel.

<u>Answers and Objections of Defendant Allied Systems and Defendant Allied Automotive Group, Inc., to Plaintiff's most recent set of Interrogatories and Request For Production of Documents No. 3 and No. 4 filed herein</u>.

Mr. Alexander testified:

"Q.    What's going on with these cables in the field that enables the corrosive processes to get started?

A.    It's the flexibility of the cable. It's extremely flexible away from the fitting, okay, right in the area where you leave the fitting, okay. And that is where the flexing, through use of people grabbing onto it, using it as a hand support, leaning on it.

You also have the over-the-road vibrations, allowing it to flap back and forth similar to a flag in the wind, if you will."

<u>Alexander depo. Pp. 48 and 49</u>.

A stainless steel cable will not corrode as the instant cable did. <u>Alexander depo. Pp. 54 and 55</u>. The yellow coating over the cable obstructed an inspection for rust. <u>Alexander depo. Pp. 68, 69 and 70</u>. The cables used in this application being made of galvanized steel would only last three to five years. That Mr. Alexander testified concerning the design:

"A.    For example, one of the things they could have done is use the eyebolt design, okay. So in that design, you don't have, you know, that high concentration of stresses right there. Do you follow me?

Q.    Um-hum.

A.    You have the ability to swivel between the fixed post and the swaged fitting, if you will.

Q.    So would it be your opinion that the selection of the more rigid swaged fitting was an inappropriate choice for the intended use of this cable?

A.    With a steel cable. With a stainless steel cable, that would not be subjected to corrosion and loss of strength due to corrosion. I think that    that would have been adequate.

> Q. Okay. But if you're using the galvanized material, then you would need to have at a minimum some sort of a swivel connection?
>
> A. That's correct.
>
> Q. So whoever made the decision on the use of a swaged fitting versus a swivel fitting in association with the galvanized aircraft cable was guilty of a poor design?
>
> A. Yes, that's a poor design."

<u>Alexander depo. P. 95</u>.

Mr. Alexander testified concerning wearing, maintenance and instructions:

> Q. Was there any maintenance activities that could have been done on the clothes lines to prolong their life before the water intrusion and rust began, sir?
>
> A. Yeah, you can clean them, clean the ends and oil them.
>
> Q. And did that come from anything from the manufacturer of the truck or the component part manufacturer?
>
> I'll withdraw the question.
>
> Did you see any evidence that those instructions were provided to the Allied defendants by any manufacturer or components manufacturer?
>
> A. No, I did not.

<u>Alexander depo. P. 115</u>.

Employees of Defendants Allied have testified concerning the safety cables. Mr. Palladino says the problem with the cables was that the cables were breaking where the cable meets the steel crimp as in Ferguson's case. <u>Palladino depo. Pp. 24, 27 and 71</u>. Mike Palladino stated in his initial report immediately after the accident that the cause of the accident was fatigued cable on the head rack. <u>Palladino depo. P. 8</u>. Broken cables broke at the crimp edge also known as swedge where the exemplar also broke. <u>Wolf depo. P. 29</u>. The exemplar is

similar to broken cables that injured Ferguson.  Palladino depo. P. 40.  Allied employees were never instructed how to care for the cables.  Wolf depo. Pp. 44-46.  The exemplar is similar to other broken cables and break at swedge.  Shively depo. Pp. 8 and 9.  Cables were being replaced to eliminate flex point where breaking at the crimp.  Shively depo. P. 15.  Eventually, the design of the cables went to using stainless steel to eliminate corrosion.  Shively depo. P. 17.  They were never given instruction for care, maintenance or how to inspect cables.  Shively depo. P. 18.  Cables that injured David Ferguson broke at the crimp of the cable, the same as exemplar used by expert, Gabriel Alexander.  Weaver depo. Pp. 6 and 7.  No instructions of any kind were given for care, maintenance and inspection of cables.  Weaver depo. P. 27.  No one told Allied employees to inspect cables for corrosion or how to inspect for corrosion.  Weaver depo. P. 30.  The new cables have clear plastic coating to see the metal through.  On the old cables as in the Ferguson case, the plastic was painted yellow and you could not see the metal or corrosion.  Weaver depo. Pp. 31 and 32.  Mr. Ferguson could not examine the cables on this truck because of plastic over the cables which were painted yellow by CCI.  Ferguson depo. Pp. 33-35.  The safety cables were put on the trucks to stop people from falling off at the most dangerous part of the truck management told Ferguson.  Ferguson depo. Pp. 51 and 52.  Ferguson, prior to his injury, was never told not to use cables because they were failing.  Ferguson depo. P. 53.  Ferguson assumed the cables were good because if they were not replacement cables, they had been checked by maintenance.  Ferguson depo. Pp. 55-58.  Plaintiff Ferguson was not sure if new cables because they were painted.  Ferguson depo. P. 59.  Mr. Ferguson's testimony was that where the cables had been painted, the paint obscures the metal cable underneath and impairs your ability to see if there has been any deterioration of the metal.  Ferguson depo. P. 157.

LEGAL ARGUMENT

A.  PROXIMATE CAUSE

Defendant CCI now directly attempts to benefit from Defendants Allied destruction of the cable in question against Defendants Allied company policy by arguing proximate cause.

Defendants Allied assumed the liabilities of the very truck in question from CCI and they should not legally benefit from destruction of the evidence and failure to even photograph same.

Defendant CCI in their Memorandum for Summary Judgment states, "Due to the unavailability of the cable proximate cause not proven."  As a matter of law, CCI is wrong and CCI and Allied should not benefit from the destruction of evidence.

Plaintiff has shown a causal connection between the design defect and the injury to Mr. Ferguson.  The material in the instant case was wrong for the design and the design was wrong for the material.  There was a defect in the product and the design of the product.  The product was not designed correctly for the material used.  If the design was swedge or crimp end the design needed stainless steel.  If galvanized steel was used, then you must use eyebolt design.  However, CCI directed Hanes to produce swedge/crimp with galvanized steel.  This only lasts five or six years.  However, the trucks were not to be refitted for 10 years.  This was the cheapest design and CCI gave no one including Mr. Ferguson any warning of same or instructions on care or maintenance.  No one said replacement in five or six years.  In fact, the opposite was said that the cables would last 10 years. Mr. Ferguson's cable broke at the crimp as did others break as did the examplar given to expert Alexander.

Mr. Alexander has stated:

A.  For example, one of the things they could have done is use the eyebolt design, okay.  So in that design, you don't have, you know, that high

         concentration of stresses right there. Do you follow me?
Q.      Um-hum.

A.      You have the ability swivel between the fixed post and the swaged fitting, if you will.

Q.      So would it be your opinion that the selection of the more rigid swaged fitting was an inappropriate choice for the intended use of this cable?

A.      With a steel cable. With a stainless steel cable, that would not be subjected to corrosion and loss of strength due to corrosion. I think that that would have been adequate.

Q.      Okay. But if you're using the galvanized material, then you would need to have at a minimum some sort of a swivel connection?

A.      That's correct.

Q.      So whoever made the decision on the use of a swaged fitting versus a swivel fitting in association with the galvanized aircraft cable was guilty of a poor design?

A.      Yes, that's a poor design.

<u>Alexander depo. P. 74, 75 and 95</u>.

The incident vehicle was defective in that the Safety Cable failed during normal reasonable operation. The Safety Cable was defective in that it was not corrosion resistant and failed in an area of reduced cross section in the presence geometric stress concentrations. The incident vehicle was defectively manufactured without a proper Safety Cable, known available technology that should have been utilized in its design. The incident Vehicle was dangerous and defective in a manner that caused Ferguson's fall.

<u>Alexander Report 26(A) Disclosure</u>.

All evidence including Allied's witness, Plaintiff's expert, Hanes witnesses and even CCI witnesses establish that the rusting, corroding and breaking was occurring at the crimp/swedge.

Mike Palladino, Allied Safety Supervisor, stated in his initial report after the accident that the cause of the accident was fatigue cable at the steel crimp. <u>Palladino depo. Pp. 8, 24, 27 and 71</u>. He stated that the problem with the cables was that the cables were breaking where the cables meet the steel crimp as in the Ferguson case. <u>Palladino depo., Pp. 24, 27 and 71</u>. Mr. Palladino investigated the Ferguson accident. The photos after the accident confirm same. Employees of Allied agree that broken cables broke at the crimp edge also known as "swedge." The break in the exampler studied by expert Alexander and the break in the Ferguson cable are at the same place. <u>Palladino depo. Pp. 24, 27 40 and 71</u>, <u>Wolf depo. Pp. 29, 40, 44, 45 and 46</u>, <u>Shively depo. Pp. 8, 9 and 15</u>, <u>Weaver depo. Pp. 9, 10, 31 and 32</u>. Mr. Alexander's opinion is that the design was not fit for 10 years and that a stainless steel cable would not corrode as in the Ferguson use. That a cable such as Ferguson's would not last three to five years. <u>Alexander depo. Pp. 54, 55, 57 and 95</u>.

This cable was put in service in April, 1995. <u>Terzain depo. Pp. 76-77</u>. That in June, 1999, the cables were being replaced by Allied due to rusting, corroding and breaking. <u>Weaver depo. Pp. 49-51</u>. That this cable failed September 7, 2000, five years later in the same spot as the exampler given to Mr. Alexander and in the same broken spot as other cables.

Even Mr. Hanes admitted the cable and design used in the instant case would only last five or six years if maintained properly and inspected. <u>Hanes depo. Pp. 71 and 72</u>.

That area susceptible to corrosion where threaded stud at vinyl coating or crimp is the area where Ferguson's cable broke and the exampler broke. <u>Hanes depo. P. 107</u>. Mr. Hanes stated that galvanized aircraft cable was not suitable for 10 year life span and stainless steel was more appropriate material for these safety cables. <u>Hanes depo. Pp. 32, 71 and 72</u>. That the

yellow coating was placed up to the stud. Hanes depo. P. 108. The crimp is where Ferguson's cable failed and the other cables failed. That is what is wrong with the design. The material galvanized steel was wrong for the crimp end and this was known in the industry.

Further, one could not see the rust or corrosion or breaking because CCI insisted on yellow coating of the vinyl instead of clear coating. CCI chose the galvanized steel and the design of the crimp. Hanes depo. Pp. 31, 32 and 47. CCI did not ask Hanes for advice. Hanes depo. Pp. 71 and 73. CCI just picked the cheapest design and material. Hanes depo. Pp. 1-15.

Defendant CCI cites no cases that state Plaintiff has not shown proximate cause in this product liability action. In *State Farm v. Chrysler*, 37 Ohio St.3d 1, 523 N.E.2d 489 (1998), the court stated that the Plaintiff need only prove loss cause by defect and not other possibilities although not all possibilities need be eliminated. (Emphasis added.) In *Porter v. Gibson Greeting, Inc.*, 1997 W.L. 761, 851 (Ohio App. 7th Dist. 1997), the court in citing *State Farm*, held that proof can be direct or circumstantial and that the evidence is sufficient if proof of a causal link. Certainly a causal link has been shown. The safety cable was defective both under the risk/benefit or consumer expectation test. Furthermore, the defect was the proximate cause of Plaintiff's injury and summary judgment is not appropriate.

FAILURE TO WARN

Defendant CCI makes several factual assertions that are not correct. First, workers were never told not to use old cables. This is not correct. In fact, the testimony is that neither CCI nor Hanes gave any warnings. The workers were told by Allied to continue to use the trucks even if the truck had old style cables. Defendant Allied has admitted that they would replace what cables they had replacements for when a truck was shopped and then return the truck to be used

by the driver even if the old cables were on the truck.  <u>Wolf depo. P. 9</u>, <u>Shively depo. P. 22</u>, <u>Weaver depo. P. 35</u>.

Furthermore, CCI's assertion that all "new" cables were of a completely different design and obvious from a casual observation is not true.  In fact, the old cables were being replaced by two different style new cables.  One was the eyebolt design with galvanized steel.  The other was the same design as the old cables with stainless steel.  <u>Shively depo. P. 17</u>, <u>Ferguson depo. Pp. 55-58</u>.  In fact, Mr. Ferguson testified you wouldn't know the difference between old cables and the new stainless steel cables.  Mr. Ferguson's testimony concerning the cables is as follows:

> A.    Well, not necessarily due to the fact that you're getting out of this vehicle, you're being told by your employer that the cables are safe, they're replacing them, that they're good cables, don't worry about them, if they're on the truck they're good, they've been checked, they're good.  You trust -- I basically say you would trust your employer that they would be telling you the truth that the cables would be good. . . .
>
> . . .
>
> A.    I looked at the cable, sir, I looked -- when I looked at the truck, when I did my walk around I seen it had four cables on it.  I had seen that some of the cables had been replaced.  I presumed that whoever replaced those first cables would have inspected the whole -- the other -- the rest of the one.  And if it had one of the old type on that I would presume that they would have checked to see if it was okay seeing how that's their job.
>
> Q.    Okay.  So you assumed that if there was what would be considered original equipment, came on there, that somebody had inspected it and made the decision that it would stay there?
>
> A.    Sir, there's -- <u>they replaced -- Mr. Weaver and Allied has told us, there's two types of these two cables right here (indicating.)  They're telling us one has a newer type of steel in it that is better than the old ones we've got.  I wouldn't know if this would be the new one or the old one</u>. (Emphasis added)
>
> Q.    Okay.
>
> A.    <u>They're telling us that this same exact cable has got a newer steel</u>

<u>in it, it's made different, and it doesn't rust through like these do and they don't break</u>. (Emphasis added)

<u>Ferguson depo. Pp. 55-58</u>.

Plaintiff Ferguson further testified:

    Q.    And the fourth you reasonably anticipated that had been tested and tested satisfactorily?

    A.    Actually, I just presumed that it was replaced with the rest of them or it would have been good.

    Q.    No reason to believe --

    A.    -- that it was defective, no, sir.

<u>Ferguson depo. P. 129</u>.

The old style cables were eventually being replaced by the same design only stainless steel instead of galvanized steel. <u>Shively depo. P. 17</u>.

In fact, expert Alexander testified that if a cable is present it is reasonable for a driver to believe the cable is satisfactory, that's why they grab it. <u>Alexander depo. Pp. 132 and 133</u>.

Nowhere is there testimony that Mr. Ferguson "Knew how to tell the difference between old style and new style stainless cables" nor that "Ferguson made a conscious decision to work with the truck in question with full knowledge of the risk associated with doing so." This is not true. Ferguson's testimony is "I wouldn't know if this would be the new one or the old one." <u>Ferguson depo. Pp. 55-58</u>. Mr. Ferguson, contrary to CCI, did not admit old cables "were easily identifiable" but just the opposite.

Furthermore, no warning was given to Plaintiff by Defendant. No warning or instructions were given concerning proper maintenance. No warnings or instructions wer given on how to properly inspect the cables for corrosion, rust or breaking. <u>Hanes depo. Pp. 103, 104,</u>

13

106 and 110. This is especially relevant since CCI insisted on the yellow coating on the vinyl at the crimp which hides rusting, corrosion and breaking. No one was given instructions on how to inspect around the yellow vinyl coating to possibly see or feel for rust or corrosion. <u>Hanes depo. Pp. 100-110</u>. No one warned Plaintiff that these cables only last five or six years and not the life of the truck which was 10 years. <u>Hanes depo. Pp. 71, 72 and 73</u>. No one told Plaintiff that stainless steel was a more appropriate material.

  Defendant cites, *Venett v. Fred Christen and Son Co.*, 138 Ohio App.3d 586, 741 N.E.2d 984 (Ohio App. 2000), which held a warning is adequate if it reasonably discloses <u>all inherent risk</u> and if the product is safe when used as directed. (Emphasis added). In the instant case, the safety cable was not safe when used as directed and Defendant CCI gave absolutely no warnings whatsoever. In *Vernett*, the court held the issue of proximate cause is often a jury question. CCI gave no warnings or instructions of any kind. Mr. Ferguson was not warned or instructed on how to identify old from new cables nor was he warned or instructed not to use a truck with old cables nor told the length of life of the cables nor told that the yellow coating was obstructing a problem. In the instant case, <u>no inherent risks</u> were disclosed to Plaintiff. (Emphasis added.) Because the facts relied upon by CCI are in dispute, a motion for summary judgment is not proper and should be denied.

BREACH OF IMPLIED WARRANTY

  CCI not only implied warranty but specifically warranted that the production in question, the safety cable, would last 10 years. Everyone relied upon CCI and their engineers in choosing the material and the design (ie. that the product and design would last the life of the truck, 10 years.) This false representation and warranty is the proximate cause of Plaintiff's injury.

Therefore, summary judgment is not appropriate.

INTERVENING CAUSE

Defendant CCI main argument for summary judgment is the defense of intervening and superseding causation. Contrary to Defendant CCI argument the 1st District Court of Appeals, Hamilton, Ohio has held, "We hold that an employee's intentional tort does not relieve a manufacturers strict liability as a matter of law." *Valter v. C. Schmidt Co.*, 74 Ohio App.3d 36, 598 N.E.2d 35, 39 (Ohio App. 1st 1991). In *Leibreich v. A.J. Refrigeration, Inc*. (1993), 67 Ohio St.3d 266, 617, N.E.2d, 1068, 1071 the court in reviewing a motion for summary judgment in a product liability case stated:

> We have also repeatedly recognized that the issue of intervening causation generally presents factual issues to be decided by the trier of fact. *Merchants Mut. Ins. Co. v. Baker* (1984), 15 Ohio St.3d 315, 316, 15 OBR 444, 446, 473 N.E.2d 827, 828-829; *Cascone v. Herb Kay Co.* (1983), 6 Ohio St.3d 155, 160, 6 OBR 209, 214, 451 N.E.2d 815, 820; *Mudrich, supra*, 153 Ohio St. at 40, 41 O.O. at 121, 90 N.E.2d at 864. The determination of intervening causation "involves a weighing of the evidence, and an application of the appropriate law to such facts, a function normally to be carried out by the trier of the facts." *Cascone, supra*, 6 Ohio St.3d at 160, 6 OBR at 214, 451 N.E.2d at 820.

The court in *Leibreich* in 1071, 1072 approved the following jury instruction:

> "The causal connection of the first act of negligence is broken and superseded by the second, only if the intervening negligent act is both new and independent. The term "independent" means the absence of any connection or relationship of cause and effect between the original and subsequent act of negligence. The terms "new" means that the second act of negligence could not reasonably have been foreseen."

In *Bleh v. Bero Mfg. Co.*, (2001 1st Dist.), 142 Ohio App.3d 434, 441, the court held that for a third party intentional tort to be an intervening superseding causal defense, the harm of the third party must not be within the scope of the risk created by the original actions/conduct. Certainly, original actor Defendant CCI's conduct created the risk in the instant case. Defendant

CCI's conduct of placing a defective safety cable into commerce that will rust and corrode and break before the 10 year life of the truck and in fact the safety cable does rust, corrode and break is within the scope of the risk.

In the instant case, there was in fact a defect in the product designed and manufactured by Defendant CCI, such defect existed at the time it left CCI's hands and the defect was the direct and proximate cause of Ferguson's injuries. For an intervening act to be a defense, it must have destroyed the causal connection between any breach of duty by the defendant CCI and the accident. It must have been extraordinary, not foreseeable in the normal course of events, or independent of, or far removed from the defendant CCI's conduct. Such an intervening cause is known as a superseding cause, or a new and independent intervening cause. Some courts have characterized a superseding cause as being the "sole cause" of the injury. Certainly, this is not present in the instant case.

A defense of intervening, superseding causation will defeat a products liability action only when the intervening cause is "*sufficient* to break the chain of causation between an allegedly defectively designed product and a plaintiff's injuries." (Emphasis *sic*.) *Nye v. Fostaria*, 78 Ohio App.3d 319, (Ohio 1992.)

The defendant CCI cites *Burns v. Cooper Industries, Inc.*, for the proposition according to defendant CCI that if an employer supplied a defective product to its employees, the employers' acts as a matter of law are the superseding cause of any resulting injury. This is not a true statement of the law under *Leibreich v. A.J. Refrigeration* decided after *Burns* or *Bleh* decided after *Burns*. An intentional tort by a third party (ie. Employer) must be outside the scope of risk created by the original action (ie. CCI) to be a superseding cause. *Bleh v. Bio Mfg*.

*Co.*, 142 Ohio App.3d 434, 441, (1st Dist. 2001.) The third party's behavior must be so unusual that it could not be foreseen by the Defendant. Again, this certainly was foreseeable by Defendant CCI. In fact, even criminal conduct can be foreseeable. In the Restatement of Tort 2nd, one of the factors is, "The fact that the intervening force is operating independently of any situation created by the actors negligence." Again, the facts are clear that Defendant CCI set this matter in motion (ie. the defectively designed and manufactured safety cable and lack of maintenance) was foreseeable. The five or six year life span was foreseeable and Allied's slow response was foreseeable.

In *Valter v. C. Schmidt Co.*, 74 Ohio App.3d 36, 598 N.E.2d 35, 39, (Ohio App.1st 1991), the court specially held:

"We hold that an employee's intentional tort does not relieve a manufacturer's strict liability as a matter of law . . ." (Emphasis added.)

The current law is not as stated by Defendant CCI. Defendant CCI has not shown as a matter of law that this issue should be taken from the tier of fact. Rather, the law is that this issue is a question of fact and summary judgment is not appropriate and that material facts are in dispute.

Therefore, the summary judgment motion should be denied.

## CONCLUSION

For all the foregoing reasons, CCI's Motion For Summary Judgment should be denied.

                                        Respectfully submitted,

                                        _____

                                        Thomas R. Koustmer   (0008410)

        Attorney for Plaintiff
        1800 Federated Building
        7 West Seventh Street
        Cincinnati, Ohio 45202
        (513) 621-3616


        _____
        Michael J. Honerlaw, Esq.
        Attorney for Plaintiff
        Honerlaw & Honerlaw Co., L.P.A.
        9227 Winton Road
        Cincinnati, Ohio  45231

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing was sent by electronic transmission or ordinary U.S. Mail to the following this _____ day of September, 2003:

Kenneth Robert Schoeni
Kohnen & Patton
PNC Center, Suite 800
201 East Fifth Street
Cincinnati, Ohio 45202
(513) 381-0656
Attorney for Defendants, Ryder System Inc;
and Commercial Carriers, Inc.

David E. Larson
Larson & Larson PC
11300 Tomahawk Creek Parkway, Suite 310
Leawood, KS 66211
Attorney for Defendants Ryder System Inc.,
And Commercial Carriers, Inc.

Robert Albert Winter, Jr.
Hemmer Spoor Pangburn DeFrank & Kasson PLLC
250 Grandview Dr., Suite 200
Ft. Mitchell, KY 41017
(859) 344-1188
Attorney for Defendants, Allied Systems and
Allied Automotive Group

Craig R. Paulus, Esq.

Taft, Stettinius & Hollister LLP
PNC Center
201 E. Fifth St., Suite 800
Cincinnati, Ohio 45202-3957
Attorney for Defendant Hanes Supply, Inc.

 

_____
Thomas R. Koustmer
Attorney for Plaintiff


a:\green\undisput.cci