I    THE UNITED STATES DISTRIC COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 88-F-1877

JOHN SIVULA and CYNTHIA SIVULA,

Plaintiffs,

vs.

RYDER SYSTEM, INC., a Florida corporation

Defendant.

FILED
UNITED STATES DISTRICT COURT
DENVER COLORADO

OCT 2 6 1989

JAMES R. MANSPEAKER
CLERK

## ORDER

Sherman G. Finesilver, Chief Judge.

THIS MATTER comes before the court on a number of motions, all filed by Defendant Ryder, Inc.: 1) Motion for Summary Judgment; 2) Motion to Dismiss Punitive Damages Claim; 3) Motion to Bifurcate. Plaintiffs John and Cynthia Sivula, Colorado residents, bring this action against Ryder System, Inc., a Florida corporation with wholly-owned subsidiaries. One of Ryder's subsidiaries, Commerical Carriers, Inc. ("CCI") is located in Henderson, Colorado and employed plaintiff John Sivula at the time of plaintiff's accident. Plaintiffs allege four claims: 1) negligent failure to install catwalks and/or deck plates which would have prevented plaintiff's accident; 2) negligent failure to train plaintiff regarding safety measures in loading and unloading his tractor/trailer unit; 3) loss of consortium; 4) willful and wanton misconduct entitling recovery of punitive damages.

For the reasons stated below, the motions are DENIED.

1

## FACTS

On December 17, 1986, Plaintiff John Sivula worked as an employee of Commercial Carriers, Inc. (CCI). He drove a tractor/trailer used to deliver motor vehicles to dealers. While unloading vehicles from an auto-transport headrack unit, plaintiff fell from the vehicle's rack and hung suspended by a chain. Sivula sustained a disabling knee injury as a result of the fall.

Plaintiffs sue Ryder System, Inc., a Florida corporation and whole owner of its alleged agent and subsidiary, Commercial Carriers, Inc. Plaintiffs allege that the Automotive Carrier Division manages CCI, along with eight other wholly-owned subsidiaries of Ryder. ACD allegedly acts as Ryder's agent in managing CCI, thus allowing plaintiffs to sue Ryder directly.

Sivula never recieved formal safety training regarding the operation of his vehicle. And, the deck plates and catwalks on plaintiff's vehicle covered only a portion of the area necessary to ensure plaintiff's safety. Plaintiffs allege that defendant's actions constitute negligence. Plaintiffs further allege that defendant, until 1984, installed deckplates and catwalks on their auto transport vehicles for safety purposes. About November 14, 1984, ACD directed its subsidiaries to stop "retrofitting" existing equipment and knowingly put its employees at risk for injury. For defendant's actions, plaintiffs allege punitive damages.

## DEFENDANT RYDER SYSTEM, INC.'S MOTION FOR SUMMARY JUDGMENT

### A. AUTOMOTIVE CARRIER DIVISION AS RYDER'S AGENT

Defendant moves for summary judgment on the issue of whether

2

the Automotive Carrier Division (ACD) is an   ent of Ryder System, Inc.   The Automotive Carrier Division is a pool of managers who head each of Ryder's wholly-owned subsidiary companies, one of which is plaintiff's employer, CCI.   Defendant alleges that no genuine issues of material fact exist, and that the Automotive Carrier is not Ryder's agent for negligence purposes.

Where the facts are not in dispute, the Colorado courts have held that the existence of an agency relationship is an issue properly determined on summary judgment.  <u>Stortroen v. Beneficial Finance Co.</u>, 736 P.2d 391, 395 (Colo. 1987).   Where the parties dispute the facts, the issue must be considered by the trier of fact.  <u>Id</u>.  Colorado follows the following definition of agency:

> "'[a]gency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.'"

Restatement (Second) of Agency §1(1) (1957), <u>Id.</u>   An agency relationship generally requires consent and conduct of the principal and its agent.   An agency relationship may exist, however, even if the parties do not call it an agency, and even if the parties do not intend for legal consequences to flow from their relationship. <u>Id</u>.

Consent by a principal may be demonstrated by written or verbal agreement.  Such is express authority.  Or, the principal may demonstrate that the agent has authority to act on his behalf. This type of authority is implied authority.  Third, where third parties understand that an agency relationship exists between agent

and principal, an agent is said to have apparent authority to act.
Johnson v. Chilcott, 658 F.Supp. 1213, 1219 (Colo. 1987). At the
very least, however, consent to an agency relationship can be
implied by conduct, even when the parties disavow the existence of
an agency relationship. Id.

The Restatement definition implies that a threshold level of
control--the ability to control, and not the act of controlling--
is fundamental. The parent "must have the right to control the
day-to-day work of the alleged agent." (emphasis added) Restatement
(Second) of Agency §14; Beckenstein v. Potter & Carrier, Inc., 464
A.2d 6, 14 (Conn. 1983). The agency, however, must possess some
autonomy of action and not merely amount to the "alter ego" of the
principal. See rationale, Gerinoer v. Wildhorn Ranch, Inc., 706
F.Supp. 1442 (D.Colo. 1988). The court looks to the entire
relationship for evidence of control to determine whether a party
is an agent. Johnson v. Bechtel Associates Professional
Corporation, 717 F.2d 574, 579 (D.C. Cir. 1983).

## SUMMARY JUDGMENT

The court considers this motion under Fed.R.Civ.P. §56(c).
Summary judgment is proper where there is no genuine issue on
material fact and the moving party is entitled to judgment as a
matter of law. Fed.R.Civ.Proc. 56(c); Security Ins. Co. of
Hartford v. Wilson, 800 F.2d 232, 233 (10th Cir. 1986). In
reviewing a motion for summary judgment, the evidence must be
viewed in the light most favorable to the party opposing the
motion, and all doubts are resolved in favor of the existence of

triable issues of fact. World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir.), cert. denied, 474 U.S. 823 (1985); Ross v. Hilltop Rehabilitation Hosp., 676 F.Supp. 1528 (D. Colo. 1987). The only burden that the moving party carries is inform the court of the basis for the motion, and to point to those portions of the record it believes show a lack of material factual disputes. Celotex v. Catrett, 477 U.S. 317, 323 (1986). In response, the nonmoving party must do more than provide "some evidence" in order to resist a motion for summary judgment. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). In order to dispute the facts demonstrated by the evidence of the moving party, the nonmoving party must also offer evidence, and cannot rely on mere allegations. R-G Denver, Ltd. v. First City Holdings of Colorado, Inc., 879 F.2d 1469 (10th Cir. 1986).

Defendant Ryder alleges that it operates merely as a financial overseer of CCI, and that Ryder has no involvement in the day-to-day operations of its subsidiaries. Instead, Ryder appoints managers who make all decisions. The managers are charged with heading up various companies within the four divisions. CCI is part of the Automotive Carrier Division. The managers pool their responsibilities with regard to certain decisions as well, so that a horizontal management relationship exists among the four divisions within the company. Operations decisions are made at ACD by its Director, Terry Russell.

Russell, as ACD Director, oversees the operations of

plaintiff's geographic location. The ACD also exercises control over driver training and safety policies regarding its trucks, defendant argues that, because the ACD retains no employees or assets, it is not an entity at all, but merely a pool of individuals employed by Ryder's various subsidiaries. Whether and to what degree Russell's decisions are reviewed at Ryder remains unclear.

Ryder admits to having a relationship with its subsidiaries, however, including appointing directors, overseeing financial operations and approving all expenditures over $1 million. Ryder provides services to its subsidiaries, such as legal representation, advertising, and tax accounting. And, Ryder makes certain policies regarding issues such as drug testing, polygraph testing, and affirmative action. Ryder maintains, however, that this relationship is merely one of service to its subsidiaries, and not one of control. The pleadings do not adequately resolve this issue.

Significant issues of material fact still exist regarding the autonomy of ACD as an entity, and the nature of the relationship between ACD or CCI and Ryder. Reading the pleadings in the light most favorable to the plaintiffs, defendant fails to show that no genuine issue of material fact exists. Movant's motion for summary judgment is DENIED.

B. RYDER'S LIABILITY UNDER WORKMAN'S COMPENSATION STATUTE

Defendant argues in the alternative that plaintiffs attempt to create liability in the defendant through Colorado's Workman's

Compensation statute. C.R.S. §§-42-102.    Under the Workman's Compensation statute, employers are not liable for common law tort violations alleged by their employees.  The statute provides a legislative grant of immunity from common law liability and instead provides statutory remedies for employers' tort violations.  <u>Thomas v. Farnsworth Chambers Co.</u>, 286 F.2d 270 (10th Cir.) rev'g 183 F.Supp. 764 (D.Colo. 1960).  But, a parent corporation sued by an employee of a wholly-owned subsidiary is not an "employer" entitled to immunity from common law tort violations under the statute.  <u>Peterson v. Trailways, Inc.</u>, 555 F.Supp. 827 (D.Colo. 1983).

Defendant argues that ACD is plaintiff's employer, and, therefore, immune from common law tort liability.  Plaintiffs, however, do not sue ACD separately.  Whether Ryder, for purposes of the workman's compensation statute, can be characterized as ACD's parent company remains at issue.  As per the above discussion of the facts, significant issues exist as to the relationship between Ryder and ACD, even though plaintiff Sivula was clearly an employee of one.  Because the company relationships lack clarity, Ryder's derivative liability is not appropriate for summary judgment.  The motion for summary judgment on the Workman's Compensation issue is DENIED.

DEFENDANT RYDER'S MOTION TO DISMISS PUNITIVE DAMAGES CLAIM

Defendants move to dismiss plaintiffs' punitive damages claim under Fed.R.Civ.P. 12.  Because both of the parties submitted affidavits and other evidence, the court chooses to consider this motion under Fed.R.Civ.P. 56.

In Colorado, C.R.S. §13-21-102 governs punitive damages.[ ] The Colorado Supreme Court defines the phrase "wanton and reckless disregard" as follows: "'If, conscious of his conduct and the existing conditions, he [defendant] knew or should have known, that the injury would <u>probably</u> result, the requirements of the statute are met.'" <u>Alley v. Gubser Development</u>, 785 F.2d 849, 856 (10th Cir. 1986); see also, <u>Foster v. Redding</u>, 97 Colo. 4, 45 P.2d 940-41 (1945) (emphasis added).

Plaintiffs, in their response, provide evidence that Sivula's superiors knew that Mr. Sivula and at least one other driver was prone to crossing rails in order to unhook vehicles. Evidence also shows that ACD confronted the issue in grievance procedures. ACD has also determined that equipping vehicles with deck plates is a safety measure. ACD, however, chose to respond to safety concerns in two ways: 1) to train employees regarding safety measures; and 2) to provide employees with the choice of whether they wanted their vehicles equipped with deck plates that covered the entire vehicle. ACD chose not to mandate that all vehicle

---

' C.R.S. §13-21-102 provides, in pertinent part:

(1)(a) In all civil actions in which damages are assessed by a jury for a wrong done to the person or to personal or real property, any injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct, the jury, in addition to the actual damages sustained by such party, may award her reasonable exemplary damages. The amount of such reasonable exemplary damages shall not exceed an amount which is equal to the amount of the actual damages awarded to the injured party.

(b) As used in this section, "willful and wanton conduct" means conduct purposefully committed which the actor recklessly without regard to consequences, or of the rights and safety of others, particularly the plaintiff.

roofs should be covered completely with deck plates.    Defendant
has not shown adequately that no genuine material issue of fact
exists.    Plaintiffs raise issues that bear directly on whether
defendant knew, given the company's policy regarding deck plates,
that accidents would probably occur.    Reading the pleadings in the
light most favorable to the nonmovant, this court DENIES movant's
motion to dismiss plaintiff's punitive damages claim.

## DEFENDANT RYDER'S MOTION TO BIFURCATE

Defendant moves to bifurcate the trial, alleging that two
distinct issues involved in this case require separate trials.
Defendant urges the court to separate the agency issue from the
negligence issue, because the agency issue is allegedly largely
legal in nature and is best tried to a judge in a separate trial.

While agency issue may be a difficult legal issue, the favored
approach allows issues to be tried simultaneously.  See, Advisory
Committee note to the 1966 Amendment to Rule 42(b); Wright and
Miller, Fed. Prac. and Proc.: §2388, at 279.  A single trial "tends
to lessen the delay, expense and inconvenience to all concerned,
and the courts have emphasized that separate trials should not be
ordered unless such a disposition is clearly necessary." Wolens
v. F.W. Woolworth Co., 29 Fed.R.Serv.2d 1521, N.D. Hill. (1980).

Discovery indicates that the issues in this case overlap
significantly, particularly with regard to liability and damages.
Because plaintiff has requested a jury trial, separate trials would
would  create  undue  delays  in  assessing  damages.    Given  the
development of both the pleadings and discovery, the entire trial

9

should require no more than three days of court time. Defendant Ryder's Motion to Bifurcate is DENIED.

## ORDER

In accordance with the foregoing, it is hereby ordered that Defendant Ryder System, Inc.'s:

1) Motion for Summary Judgment is DENIED;

2) Motion to Dismiss Punitive Damage Claim is DENIED;

3) Motion to Bifurcate is DENIED.

DATED this _26_ day of October, 1989 at DENVER, COLORADO.

BY THE COURT:

Sherman G. Finesilver, Chief Judge
United States District Court

JAMES R. MANSPEAKER, CLERK            DISTRICT OF COLORADO

ROOM C 145
UNITED STATES COURTHOUSE
1929 STOUT STREET
DENVER, COLORADO 80294
PHONE (303) 844-3433
FTS 564-3433

Oct. 27, 1989

Bruce J. Kaye, Esq.
LEVENTHAL & BOGUE, P.C.
600 Cherry Tower
950 S. Cherry Street
Denver, CO  80222

Edward H. Widmann, Esq.
HALL & EVANS
1200 – 17th St., #1700
Denver, CO  80202

RE:   88-F-1877, JOHN SIVULA, et al. v. RYDER SYSTEM, INC.

Enclosed Please find a copy of_____ORDER_____

_____DATED  Oct. 26, 1989 .

entered by Chief Judge Sherman G. Finesilver in the referenced matter.

JAMES R. MANSPEAKER, CLERK

BY: _N. Hatcher_____
Deputy Clerk

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FILED

AUG 2 2 2001

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

RONALD C. and SUSAN TORBIT,

Plaintiffs,

vs.

RYDER SYSTEMS, INC., *et al.*,

Defendants.

)
)
)
)
)
)
)
)
)

Case No. 4:00CV00618 JCH

## MEMORANDUM AND ORDER

This matter arises on Defendant Ryder System, Inc.'s ("RSI") Motion for Summary Judgment (Docket # 86). This matter is fully briefed and ready for disposition.

## SUMMARY JUDGMENT STANDARDS

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at

247. The nonmoving party may not rest upon mere allegations or denials of his pleading. <u>Anderson</u>, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. <u>Id</u>. at 255. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. <u>Id</u>. at 249.

## BACKGROUND

On October 23, 1998, Plaintiff Ronald C. Torbitt was unloading automobiles from the tractor-trailer truck he was employed to drive. (Complaint, Count I, ¶8). Mr. Torbit alleges that he sustained injuries while operating a trailer and rachet system, manufactured by Defendants GACS, Incorporated and C.F. Bender Company respectively. (Complaint, Count I, ¶12). Mr. Torbit states that he was injured "when he was attempting to use the rachet system... to untie an automobile." (<u>Id</u>.). The rachet system on Mr. Torbit's trailer at the time of his injury was a conventional, manually-operated rachet which did not have a quick-release mechanism. (Complaint, Count I, ¶ 11(g)).

Mr. Torbit and his wife Susan Torbit brought suit on March 1, 2000, in the Circuit Court of St. Louis against five defendants: (1) Ryder System, Inc.; (2) GACS, Incorporated, f/k/a Delavan Industries, Inc., f/k/a Ryder Automotive Group Services, Inc., f/k/a Ryder Automotive Carrier Services, Inc.; (3) Ryder Automotive Carrier Division; (4) General Motors Corporation; and (5) C.F. Bender Company. (Complaint, Count I, ¶¶ 2-7). Defendants removed the action to federal court

---

[1] Defendant RSI, directly or through its subsidiaries, owned Ryder Automotive Operations. Inc., ("RAOI") and Ryder Automotive Carrier Group, Inc., ("RACG"). (Defendant's Statement of Uncontroverted Facts, ¶ 4). On August 1, 1996, RACG was renamed Ryder Automotive Carrier Services, INC. ("RACS"). On February 26, 1998, RAOI merged with RACS to become GACS, Inc. ("GACS"). (Defendant's Memo in Support, Attached Exh. I, ¶ 8). As of December 31, 1991,

on April 13, 2000. (Docket # 1). Mr. Torbit brought separate claims against Defendant RSI for strict liability, negligence, and breach of implied warranty. (Complaint, Counts IX, X, and XI). Ms. Torbit brought claims for loss of consortium paralleling her husband's claims. (Complaint, Counts XII, XIII, and XIV). In its Motion for Summary Judgment, Defendant RSI asserts that Plaintiffs cannot establish a basis for holding RSI liable under a piercing the corporate veil theory and requests the Court dismiss Claims IX-XIV.

### DISCUSSION

A district court, sitting in diversity, must follow the choice of law approach prevailing in the state in which it sits. Birnstill v. Home Sav. of Am., 907 F.2d 795, 797 (8th Cir.1990). For tort claims, Missouri courts apply the "most significant relationship test as defined in the Restatement. Galvin v. McGillev Memorial Chapels, 746 S.W.2d 588, 590 (Mo.Ct.App.1987). Although Defendant RSI raised the choice of law issue, the parties failed to brief this issue fully. In addition, Defendant RSI concedes that Florida law and Missouri law are "essentially the same" with respect to alter ego liability and piercing the corporate veil. (Defendant's Memo in Support, p. 6, n. 2). Therefore, the Court will not address the choice of law issue and will simply apply the state law in which it sits.

In general, a plaintiff injured by a corporation can only look to recover from that corporate entity. The corporate structure protects shareholders and parent corporations from liability. An exception to the rule is that a plaintiff may "pierce the corporate veil" to reach the assets of one or more of the shareholders or parent corporations whose conduct has created the liability. Radaszewski

---

Delavan Industries, Inc., ("Delavan") merged with RAOI but continued doing business as Delavan until December 31, 1993. (Id. at ¶ 9). On January 1, 1994, the plant assets were sold to Commercial Carriers, Inc. ("CCI"). In 1998, the plant was sold to Delavan Industries, Inc., a Texas corporation not affiliated with RSI. (Id.).

v. Telecom Corp., 981 F.2d 305, 306 (8th Cir.1992). In Missouri, a tripartite test is applied to determine if and when the corporate veil may be pierced. The Missouri Supreme Court states:

To "pierce the corporate veil," one must show:

(1)     Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

(2)     Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and

(3)     The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

66, Inc. v. Crestwood Commons Redevelopment Corp., 998 S.W.2d 32, 40 (Mo. banc 1999), citing Collet v. American Nat'l Stores, Inc., 708 S.W.2d 273, 284 (Mo.Ct.App.1986). Defendant RSI asserts in its Motion for Summary Judgment that Plaintiffs can not establish the first and second elements of this tripartite test.

1. Control. Missouri has adopted an eleven-factor balancing test to determine whether a defendant controls a corporation for purposes of piercing the corporate veil. See Collet, 708 S.W.2d at 284. Eleven factors are considered when determining whether a defendant parent corporation "controls" a subsidiary corporation:

(1)     The parent corporation owns all or most of the capital stock of the subsidiary;

(2)     The parent and subsidiary corporation have common directors or officers;

(3)     The parent corporation finances the subsidiary;

(4)     The parent corporation subscribes to all of the capital stock of the subsidiary or otherwise causes its incorporation;

(5)     The subsidiary has grossly inadequate capital;

(6)     The parent corporation pays the salaries and other expenses or losses of the

- 4 -

subsidiary;

(7)  The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation;

(8)  In the papers of the parent corporation or the statements of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibilities is referred to as the parent corporation's own;

(9)  The parent corporation uses the property of the subsidiary as its own;

(10)  The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation and the latter's interest; and

(11)  The formal legal requirements of the subsidiary are not observed.

Id.

In this case, it is undisputed that Defendant RSI owned 100% of Delavan's stock and that RSI and Delavan had common directors and officers. (Defendant's Reply Memo, p. 12). In addition, Plaintiffs have produced evidence asserting that Delavan's actions should be attributable to RSI because: (1) Ryder Automotive Carrier Division, as a division of RSI, approved the bonuses to be paid to Delavan's officers and directors; (2) RSI limited Delavan's sales to RSI subsidiaries; and (3) the RSI Corporate Strategy Counsel controlled Delavan's business activities. (Plaintiff's Memo in Opposition, pp. 16-17). Upon consideration, the Court finds that Plaintiffs have presented evidence on several of the eleven factors set forth above. Accordingly, the Court finds that a genuine issue of material facts exists as to whether RSI completely dominated and controlled the finances, policy, and business practices of the corporation with respect to the transaction in dispute.

2. Improper Purpose. To pierce the corporate veil, Plaintiffs must also show that the control exercised by Defendant RSI was "used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights." Defendant RSI asserts that there is no duty to control the conduct of a third

- 5 -

party unless a special relation exists and that no such relation exists between a parent corporation and its subsidiary. (Defendant's Memo in Support, p. 8 citing Restatement (Second) of Torts, § 315 (1965)). In response, Plaintiffs contend that Defendant RSI voluntarily assumed a positive legal duty to provide safe products and that it violated this duty by withholding injury reports from Delavan. Plaintiffs assert that these injury reports indicate that hundreds of drivers were injured each year while using Delavan trailers and ratchet systems. In its Reply, Defendant RSI contends that Delavan participated on the task force that generated the injury statistics and therefore had access to this information. Therefore, this Court finds that a genuine issue of material facts exists as to whether Defendant RSI used its control to perpetrate the violation of a statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights.

Accordingly,

IT IS HEREBY ORDERED that Defendant General Motors' Motion for Summary Judgement (Docket # 22) is DENIED.

Dated this ⟨22nd⟩ day of August, 2001.


                                        _____
                                        UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FILED

AUG 2 3 2001

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

RONALD C. and SUSAN TORBIT,          )
                                     )
        Plaintiffs,                  )
                                     )
    vs.                              )        Case No. 4:00CV00618 JCH
                                     )
RYDER SYSTEMS, INC., et al.,         )
                                     )
        Defendants.                  )

## MEMORANDUM AND ORDER

On August 22, 2001, the Court issued an order denying Defendant RSI's Motion for Summary Judgment (Docket # 101). The Order stated, "IT IS HEREBY ORDERED that Defendant General Motors' Motion for Summary Judgement (Docket # 22) is DENIED." The Order shall be amended to read, "IT IS HEREBY ORDERED that Defendant RSI's Motion for Summary Judgement (Docket # 86) is DENIED."

Accordingly,

IT IS HEREBY ORDERED that the Order dated August 22, 2001, shall be amended to read "IT IS HEREBY ORDERED that Defendant RSI's Motion for Summary Judgement (Docket # 86) is DENIED."

Dated this 23rd day of August, 2001.

_____
UNITED STATES DISTRICT JUDGE