

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

STEVEN D. DREYER and
ROBERTA M. DREYER,

            Plaintiffs,

v.

RYDER AUTOMOTIVE CARRIER GROUP, INC., RYDER AUTOMOTIVE OPERATIONS, INC. d/b/a DELAVAN, DELAVAN INDUSTRIES, INC., RYDER SYSTEM, INC., and RYDER AUTOMOTIVE CARRIER SERVICES, INC.,

            Defendants.

DECISION AND ORDER
98-CV-082A

FILED
FEB 0 5 2003
CLERK, US DISTRICT COURT, WDNY

This case was referred to Magistrate Judge Leslie G. Foschio, pursuant to 28 U.S.C. § 636(b)(1), on March 31, 1998. On July 31, 2001, plaintiffs filed a motion for partial summary judgment and to strike affirmative defenses. All the defendants except defendant Ryder System, Inc. ("RSI"), filed a motion for summary judgment on July 31, 2001. RSI filed a motion for summary judgment on August 1, 2001. All defendants filed a cross-motion for summary judgment on October 1, 2001.

On August 13, 2002, Magistrate Judge Foschio filed a Report and Recommendation, recommending that defendant RSI's motion for summary judgment be granted and that the motion for summary judgment of the remaining

1

defendants be denied without prejudice. The Magistrate Judge also recommended that plaintiffs' motion for partial summary judgment and to strike affirmative defenses also be denied and that defendants' cross-motion for summary judgment be denied.

Plaintiffs filed objections to the Report and Recommendation on August 29, 2002 and defendants filed a response thereto on October 9, 2002. Oral argument on the objections was held on October 15, 2002, at which time the Court directed the parties to submit additional briefing.

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a de novo determination of those portions of the Report and Recommendation to which objections have been made. Upon a de novo review of the Report and Recommendation, and after reviewing the submissions and hearing argument from the parties, the Court adopts all the proposed findings of the Report and Recommendation, except the recommendation that the Court grant RSI's motion for summary judgment.[1]

RSI argues that in order for plaintiffs to succeed against RSI in this case, they must pierce RSI's corporate veil, but have been unable to do so. To support its argument, RSI relies primarily on the case of Joiner v. Ryder System, Inc., 966 F. Supp. 1478 (C.D. Ill. 1996). In Joiner, the court held that plaintiffs

---

[1] Familiarity with the Report and Recommendation and the facts contained therein is presumed.

failed to raise a material issue of fact that RSI is the alter ego for the Automotive Carrier Division ("ACD"), a fact which RSI contends needs to be proved to pierce its corporate veil.

RSI misconstrues plaintiffs' argument. Plaintiffs do not rely on a veil piercing theory. Instead, plaintiffs argue that RSI is a joint tortfeasor with co-defendants, because RSI, either directly or through its agent ACD, was negligent and responsible for plaintiffs' injuries by virtue of its own actions. Towards that end, plaintiffs have presented evidence showing that RSI, either directly or through the ACD, prohibited defendant Delavan from making safety modifications to equipment, instructed Delavan how to run their business and conducted safety meetings to evaluate and study driver complaints. As such, plaintiffs contend that RSI was directly involved in the design, safety analysis and manufacturing process of the product in question.

The Joiner case is distinguishable from the instant case. The Joiner court expressly refused to consider the plaintiff's agency argument, finding that plaintiff waived that argument by not raising it. The court stated that:

> Joiner submits the decision of Sivula v. Ryder System Inc., No. 88-F-1877 (D.C. Colo. Oct. 26, 1989), and claims that it supports his position. Joiner is incorrect, however. In Sivula, the plaintiff argued that the ACD was the agent of RSI—there was no alter ego argument advanced. Here, Joiner advances no agency argument. Certainly, a corporation can be the agent of another corporation without being that corporation's alter ego.
>
> Joiner utilizes the word "agency" in a couple of places in his brief, but

3

he fails to develop an argument that the ACD (or any corporations therein) was the agent of RSI for any particular purpose.

Joiner, 966 F. Supp. at 1487 n.19 (citations omitted).

In the recent case of Milford v. Commercial Carriers, Inc., 210 F. Supp. 2d 987 (N.D. Ill. 2002), the court addressed the question expressly left unanswered by the court in Joiner.[2] The Milford court noted that there was sufficient evidence to keep RSI in the case based on RSI's own direct actions and conduct:

> Plaintiff also maintains that [RSI] was directly involved in designing the carriers. [RSI] formed a task force to investigate safety issues related to Delavan trailers and commissioned an ergonomics report on trailer injuries. [RSI] also centralized some design decisions by requiring that [the ACD] approve any modifications, including safety features. Such interventions in the design process arguably impose a duty on [RSI], independent of Delavan. To the extent the parent's actions affected the design . . . , it is responsible for that design . . . ."

Id. at 991. As in Milford, this Court finds that there is sufficient evidence to keep RSI in this case.

The Court further notes that summary judgment is inappropriate in this case, if for no other reason, because of RSI's confusing corporate structure. Other courts have echoed the holding in Milford, and have raised questions about the direct responsibility of RSI. In doing so, these courts too have expressed confusion about RSI's corporate structure.

---

[2]Milford was decided after the completion of briefing on RSI's motion for summary judgment, but before the Magistrate Judge's Report and Recommendation. The parties never brought the case to the Magistrate Judge's attention.

For example, in <u>Sivula</u>, the court held that "significant issues exist as to the relationship between [RSI] and ACD . . . . Because the company relationships lack clarity, [RSI]'s derivative liability is not appropriate for summary judgment." <u>Sivula</u>, slip op. at 7. In a similar case, <u>Torbit v. Ryder Systems, Inc.</u>, No. 4:00cv00618 JCH, slip op. at 6 (E.D. Mo. Aug. 22, 2001), the court found that "a genuine issue of material facts exists as to whether Defendant RSI used its control to perpetuate the violation of a statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights." The <u>Milford</u> court also noted that "[w]e are still unclear as to the exact structure [of RSI]. The descriptions in the briefs are ambiguous and, in parts, inconsistent." <u>Milford</u>, 210 F. Supp. 2d at 988 n.1.

In sum, for the reasons set forth in Magistrate Judge Foschio's Report and Recommendation, the Court denies: (1) the non-RSI defendants' motion for summary judgment; (2) the plaintiffs' motion for partial summary judgment and to strike affirmative defenses; and (3) the defendants' cross-motion for summary judgment. Further, for the reasons stated herein, the Court denies RSI's motion for summary judgment.

Counsel for the parties are hereby ordered to appear on February 28, 2003 at 9:00 a.m. for a meeting to set a trial date.

IT IS SO ORDERED.

_____
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: February 3, 2003

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Dreyer

                                                    Plaintiff(s)

    v.                                                                  1:98-cv-00082

Ryder Auto Carrier

                                                   Defendant(s)

---

PLEASE take notice of the entry of an ORDER filed on 2/5/03, of which the within is a copy, and entered 2/5/03 upon the official docket in this case. (Document No. 114 .)

Dated:   Buffalo, New York
         February 5, 2003

                                                  RODNEY C. EARLY, Clerk
                                                  U.S. District Court
                                                  Western District of New York
                                                  304 U.S. Courthouse
                                                  68 Court Street
                                                  Buffalo, New York 14202

Enclosure
TO:
    David P. Marcus, Esq.
    Dennis R. McCoy, Esq.
    David E. Larson, Esq.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

STEVEN D. DREYER and
ROBERTA M. DREYER

      Plaintiffs,

      Civil No.: 98-CV-0082A(F)

vs.

RYDER AUTOMOTIVE OPERATIONS, INC.,
d/b/a DELAVAN; DELAVAN INDUSTRIES, INC.,
RYDER AUTOMOTIVE CARRIER GROUP, INC.,
RYDER'S AUTOMOTIVE CARRIER DIVISION,
TRANSPORT SUPPORT, INC.,
and RYDER SYSTEM, INC.

      Defendants.

ORIGINAL
RECEIVED AND FILED
UNITED STATES DISTRICT COURT CLERK
WESTERN DISTRICT OF NEW YORK

NOV 1 2 2002
BY: DR

## PLAINTIFFS' REPLY TO DEFENDANTS' SUPPLEMENTAL RESPONSE MEMORANDUM

### PRELIMINARY STATEMENT

On October 15, 2002 this Court heard oral argument on plaintiff's objections to Magistrate Judge Foschio's grant of summary judgment to defendant RSI. At oral argument, the Court inquired as to the significance of dismissing RSI from the case. Defendants steadfastly denied that plaintiffs would suffer any prejudice if RSI were dismissed, since they asserted that GACS, Inc. has assumed the liabilities of the remaining defendants and is fully capable of paying any judgment on their behalf.

The Court also addressed the recent decision from the Federal District Court for the Northern District of Illinois, <u>Milford v. Commercial Carriers, et al.</u>, 210 F.Supp.2d 987 (N.D.Ill 2002) and the prior decision of <u>Joiner v. Ryder System, Inc.</u>, 966 F.Supp. 1478 (C.D.Ill. 1996),

and ordered defendants to submit a supplemental Memorandum addressing why they assert the *Milford* decision is not determinative of the instant motion.

Defendants complied with this Court's instruction by submitting a Supplemental Response Memorandum dated November 4, 2002. In its Memorandum, defendants do not attack the reasoning of *Milford*, but instead contend only that the *Joiner* decision was "better reasoned". Defendants further repeat their mantra that plaintiffs may only succeed against defendant RSI on a piercing the corporate veil theory.

For the reasons that follow, plaintiffs contend that the *Milford* decision is controlling and that the Court in *Joiner* expressly did not address the issue present in the case before the Court in *Milford* and now before this Court. Further, plaintiffs contend that dismissal of RSI from this lawsuit threatens to leave plaintiffs without a remedy to collect on any judgment or settlement made in this case involving severe injury to plaintiffs.

## ARGUMENT

### I. THE DISTRICT COURT'S DECISION IN *MILFORD* IS CONTROLLING

Defendants continue to insist, incorrectly, that plaintiffs, in order to succeed, must pierce RSI's corporate veil. They then rely on *Joiner* for the proposition that RSI should be dismissed from the case since that Court held that plaintiffs failed to raise a material issue of fact that RSI is the alter ego for the Automotive Carrier Division ("ACD"), a fact which needs to be proved to pierce a corporate veil.

Plaintiffs in the instant case, however, do *not* rely on a veil piercing theory. To the contrary, plaintiffs have from the inception of this motion argued that RSI is a joint tortfeasor with co-defendants since RSI was *directly negligent and responsible for plaintiff's injuries by*

2

*virtue of its own actions.* Towards that end, plaintiffs have shown that RSI, through the ACD, prohibited Delavan from making safety modifications to equipment (Ex. A to reply affidavit of David P. Marcus, Esq., sworn to October 1, 2001), instructed Delavan how to run their business (Ex. D to reply affidavit of David P. Marcus, Esq., sworn to October 1, 2001) and conducted safety meetings to evaluate and study driver complaints (Ex. G to reply affidavit of David P. Marcus, Esq., sworn to October 1, 2001) As such, plaintiffs contend that defendant RSI acted on its own behalf and was directly involved in the design, safety analysis and manufacturing process of the product in question.

The plaintiff in *Joiner*, contrary to plaintiff in the instant case, relied on a veil piercing theory. The *Joiner* Court *expressly refused to consider RSI's direct liability* as to plaintiff, finding that plaintiff waived that argument by not raising it. It went on to hold only that plaintiff failed to present sufficient evidence to pierce the corporate veil. The relevant discussion is found at footnote 19 of the Joiner decision, wherein the Court noted that:

> "Joiner submits the decision of *Sivula v. Ryder System Inc.*, No. 88-F-1877 (D.C. Colo. Oct. 26, 1989) and claims that it supports his position. Joiner is incorrect, however. *In Sivula, the plaintiff argued that the ACD was the agent of RSI—there was no alter ego argument advanced.* Here, Joiner advances no agency argument. Certainly, a corporation can be the agent of another corporation without being that corporation's alter ego. Joiner utilizes the word "agency" in a couple of places in his brief, but he fails to develop an argument that the ACD (or any corporations therein) was the agent of RSI for any particular purpose...." (citations omitted) (emphasis added).

In *Milford*, the District Court for the Northern District of Illinois addressed the question expressly left unanswered by the District Court in *Joiner*. The *Milford* Court noted that there was sufficient evidence to keep RSI in the case based on RSI's own *direct actions and conduct:*

> "[p]laintiff also maintains that Ryder was *directly involved* in designing the carriers. Ryder formed a task force to investigate safety issues related to Delavan trailers and commissioned an ergonomics report on trailer injuries. Ryder also centralized some design decisions by requiring that its

3

>Automotive Carrier Division (ACD) approve any modifications, including safety features. Such interventions in the design process arguably *impose a duty on Ryder, independent of Delavan. To the extent the parent's actions affected that design, it is responsible for that design...*" *Milford*, 210 F.Supp2d at 991 (*emphasis added*).

Defendants suggest that the Court in *Milford* relies on the decision in *Kleweis v. Transport Support*, 972 F.Supp. 494 (E.D.Mo. 1997). While the *Milford* Court does cite *Kleweis*, they do so only with regard to the veil piercing argument, which they address separately, *Milford*, 210 F.Supp.2d 987 at 992.

Other Courts have echoed the holding in *Milford*, and have raised questions about the direct responsibility of defendant RSI. In doing so, these Courts have notably expressed confusion about Ryder's corporate structure.

For example, in *Sivula v. Ryder System, Inc.*, cited by the Court in *Milford*, Chief Judge Finesilver, presiding in the United States District Court for the District of Colorado, held that "significant issues exist as to the relationship between Ryder and ACD... Because the company relationships lack clarity, Ryder's derivative liability is not appropriate for summary judgment." (*see Sivula*, Ex. A at p. 7). In a similar case venued in the United States District Court for the Eastern District of Missouri, *Torbit v. Ryder Systems Inc.*, District Judge Hamilton found that "a genuine issue of material fact exists as to whether Defendant RSI used its control to perpetuate the violation of a statutory or other positive legal duty or dishonest and unjust act in contravention of plaintiff's legal rights" (*see Torbit*, Ex. B at p. 6). The *Milford* Court itself noted that "[w]e are still unclear as to the exact structure [of Ryder]. The descriptions in the briefs are ambiguous and, in parts, inconsistent." 210 F.Supp.2d at 988, n.1.

Defendant contended at oral argument that they were aware of no authority which would render a parent company liable for its own actions (Transcript of Oral Argument, October 15,

4

2002, Ex. C, p. 40). This principle is self-evident, and was addressed by the Courts in *Milford*, *Sivula* and *Torbit*. Further authority for this position can be found in the Supreme Court decision of *United States v. Bestfoods*, 524 U.S. 51, 64-5, 118 S.Ct. 1876, 1886-87, 141 L.Ed.2d 43 (1998), which addressed these principles of law in the context of a CERCLA action.

In finding for plaintiffs, this Court need look no further than *Milford*, which addressed the very issue before this Court. That issue—defendant RSI's direct responsibility (acting through its agent ACD)—was *not* addressed by the *Joiner* Court, which considered only the effort to pierce RSI's corporate veil by proving they were the alter ego of their subsidiaries. On the issue of RSI's direct liability, the *Milford* decision, with support from the District Court decisions in *Sivula* and *Torbit*, stand uncontested, and defendants cite *no* authority to the contrary.

## II.   DISMISSAL OF RSI THREATENS TO RENDER A JUDGMENT BY PLAINTIFF UNCOLLECTIBLE

At oral argument, defense counsel represented to this Court that GACS, Inc. "do[es] have assets" and that "there has not been a single instance ever where either judgment has gone unsatisfied or a settlement has not been paid" (Ex. C, p. 38). Plaintiffs believe that neither of these representations is true.

### A.   GACS, Inc. is deeply insolvent

Defendants stated that GACS, Inc. was self-insured in the amount of one million dollars (Ex. C, p. 23). As such, their solvency is especially relevant to the question of collectibility of any judgment against them.

GACS Inc. is a named defendant in a case captioned *Churchville v. GACS, Inc, et. al*, venued in the Circuit Court for the Fourth Judicial Circuit in Duval County Florida. Plaintiffs in that case served Interrogatories on GACS, Inc. seeking their net worth. On March 14, 2001, defendants responded to those interrogatories by stating that GACS, Inc.'s "net worth is

<10,375,390> as of 12/31/00". The interrogatory answer, sworn to by Melissa Schmidt, Assistant Secretary of GACS, Inc., states that the aforesaid negative net worth value was calculated in accordance with Generally Accepted Accounting Principles (see Supplemental Interrogatory and affidavit, attached at Ex. D)[1].

Melissa Schmidt testified on August 24, 1998 in another case, captioned *Hansel v. Ryder Automotive, et. al.*, In that case, Ms. Schmidt acknowledged that GACS Inc. is simply a "shell corporation" with no employees[2]. Plaintiff counsel's cross-examination of Ms. Schmidt in relevant part transpired as follows:

> Q. (By Mr. Boyer) Does GACS have any employees?
> A: On or about 1/1/98 the employees of GACS were transferred to other Allied companies.
> Q: Does GACS have the ability to obtain information from the employees that were transferred to other entities within the Allied groups?
> A: GACS incorporated after 1/1/98 *was basically a shell corporation,* primarily a holding company...

(see Ex. E, p. 61.)

While plaintiffs do not purport to fully understand the corporate switching that has taken place within the Ryder entities, there is sufficient doubt raised as to whether GACS, Inc. is capable of satisfying a judgment against it. GACS is grossly insolvent, and maintains a self-insured retention of one million dollars. Further, having no employees and over ten million dollars in negative asset value, GACS appears to have no manner of earning any income or generating sufficient capital to prevent its collapse.

---

[1] Defense counsel in this case is also counsel for GACS, Inc., and is believed to be counsel of record in *Churchville*. (See Ex.F). As such, they presumably were involved in preparation of the interrogatory responses in *Churchville* and are aware of GACS, Inc.'s insolvency.

[2] The United States District Court for the Southern District of Illinois so held in *Gruber v. Ryder System, Inc., see* decision attached at Ex. G (holding that GACS "has no employees save its officers and directors..." *Id.* at p. 5). Ironically, defense counsel in *Gruber* apparently unsuccessfully claimed that GACS, Inc. cannot be compelled to produce documents in the possession of sister Ryder companies. Defendants' position in *Gruber* is inconsistent with representations made before this Court suggesting that GACS, Inc. is the real party in interest and that it has assumed the liabilities of the Ryder Group of Companies (Ex. C, p. 20).

### B.   GACS, Inc. has failed to satisfy judgments against it

Defense counsel has represented that there has not been any instances where such obligations by GACS, Inc. has not been paid. It was represented to this Court during oral argument that GACS, Inc. is "in the process of paying a judgment out of Missouri right now for a hundred thousand dollars." (Ex. C, p. 20). This assertion is contested by opposing counsel in that Missouri case.

Attached herein is the affidavit of Brian Wendler, Esq., an attorney practicing law in the State of Illinois. Mr. Wendler represented plaintiffs in the case of *Ford v. GACS, Inc.*, tried in the United States District Court for the Western District of Missouri. In attorney Wendler's affidavit attached herein at Ex. H, he recites that judgment was entered against GACS in 1999. He further swears that, despite exhaustion of all appeals in March 2002, and denial in May 2002 of a defense motion to deposit proceeds into the federal Court registry, GACS, Inc. (represented by the same defense counsel appearing in the instant case) has *neither posted a bond* (contrary to Court Order, see ¶ 6, Wendler affidavit) *nor paid the judgment* to date.

*           *           *

Serious questions have been raised regarding GACS, Inc.'s ability to pay a judgment or settlement in this case. In contrast, plaintiff believes that RSI is financially solvent and capable of answering in liability for plaintiff's damages. Further, since GACS is a newly formed corporation and is not financially solvent, plaintiff's efforts to support its claim for, and collect, punitive damages would be severely compromised.

There is ample evidence in the case to raise a question of fact as to whether RSI is directly liable for its own actions. The Courts in *Milford*, *Sivula* and *Torbit* so held. The decision of the Court in *Joiner* simply failed to find sufficient evidence to pierce the corporate veil. They

did not address RSI's direct liability, as that issue was not raised before the *Joiner* Court. As such, the decision in *Milford*, which did address RSI's direct liability, is precisely on point to the issues raised before this Court. Plaintiffs should have an opportunity to present their evidence against RSI to the jury for determination.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that this Court not confirm the R & R of Magistrate Judge Foschio and deny defendant RSI's motion for summary judgment.

DATED:   Buffalo, New York
         November 12, 2002

WEBSTER SZANYI LLP
Attorneys for Plaintiffs

By: *David P. Marcus*
    David P. Marcus, Esq.

1400 Liberty Building
Buffalo, New York 14202
(716) 842-2800