## Page 1

```
 1   PETER J. TERZIAN, JR.
 2
 3
 4            UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF OHIO
 5                  WESTERN DIVISION
 6   ------------------------------------------
 7   DAVID FERGUSON, et al.,
 8            Plaintiffs,
 9        -vs-              File No. C-1-02-039
10   RYDER AUTOMOTIVE CARRIER SERVICES, INC.,
     et al.,
11
              Defendants.
12
     ------------------------------------------
13
14
15          Examination Before Trial of PETER
16   J. TERZIAN, JR., taken pursuant to Notice under the
17   Federal Rules of Civil Procedure and Agreement,
18   taken at the Roycroft Inn, 31 South Grove Street,
19   East Aurora, New York, taken on February 11, 2003,
20   commencing at 9:25 A.M., before MARTIN S. WRIGHT,
21   CSR, Notary Public.
22
23
```

## Page 2

```
                    INDEX TO WITNESSES

     Witness                   Examination By

              MR. KOUSTMER   MR. PAULUS
     PETER J. TERZIAN, JR.      102
                   126          130
```

## Page 3

```
 1   APPEARANCES:
 2   THOMAS R. KOUSTMER, ESQ.,
     7 West 7th Street, Suite 1800,
 3   Cincinnati, OH 45202.
     Appearing for the Plaintiffs.
 4
     LARSON & LARSON,
 5   BY: DAVID S. LARSON, ESQ.,
     1300 Tomahawk Creek Parkway, Suite 310,
 6   Leawood, KS 66211.
     Appearing for the Defendants Commercial
 7   Carriers, Inc. and Ryder Systems, Inc..
 8   TAFT, STETTINIUS & HOLLISTER
     BY: CRAIG R. PAULUS, ESQ.,
 9   425 Walnut Street, Suite 1800,
     Cincinnati, OH 45202.
10   Appearing for the Defendant Hanes Supply.
11
12        (Whereupon, the following stipulations were
13   entered into by all parties.)
14        It is hereby stipulated by and between
15   counsel for the respective parties that the oath of
16   the Referee is waived, that filing of the
17   transcript are waived, and that all objections,
18   except as to the form of the questions, are
19   reserved until the time of trial.
20   MR. KOUSTMER: Why don't we put on the record that Bob
21   Winter represents Allied and Allied Group and he
22   was told of this deposition, which is by agreement
23   and notice, and he was also noticed, and he told us
```

## Page 4

 1 that he chose not to come because he didn't think
 2 it related to his case. Is that correct,
 3 Gentlemen?
 4 MR. LARSON: That's my understanding.
 5 MR. PAULUS: That's my understanding.
 6 MR. LARSON: Before we start, I'd just simply wanted to
 7 state the -- what's actually obvious to everyone
 8 this is a request for Mr. Terzian's deposition
 9 individually and he's not being produced pursuant
10 to 30(b)6 although he does have and may certainly
11 could be the one who would be designated on
12 certain issues. But, to the extent that there are
13 questions asked of him where he may not be the
14 most knowledgeable, we simply want it understood
15 that he may not be the corporate representative,
16 but subject to that, you may inquire and find out
17 what he knows.
18 MR. KOUSTMER: Just for the record, he was the
19 corporate representative at the deposition of Mr.
20 Palerno.
21 MR. PAULUS: Palladino.
22 MR. LARSON: Palladino.
23 MR. PAULUS: And --

Page 13

1  primarily auto transport equipment.
2  Q. Then, in 1994, you go to Commercial Carriers,
3  right?
4  A. Yes, sir.
5  Q. And what were your duties there?
6  A. My duties changed there. I was -- I became General
7  Manager of the entire manufacturing operation.
8  Q. That's manufacturing auto transport equipment?
9  A. Yes, sir.
10 Q. And what is -- what is that, the trailers that the
11 cars are hauled on or what?
12 A. Yes, sir, it's the trailers and what we call the
13 head ramp. That's the part that goes over the
14 cab. It's also considered part of the trailer,
15 even though it's attached to the tractor.
16 Q. Okay. And how many of those did you produce at --
17 or were produced at Commercial Carriers, Inc.
18 between January 1 of '94 and September of '97?
19 A. Approximately 861.
20 Q. Okay. In 1997, they were bought out by Allied,
21 correct, or --
22 A. Yes, sir, sold.
23 Q. Sold to Allied?

Page 14

1  A. Exactly. The --
2  Q. The assets or what, do you know?
3  A. I don't know.
4  Q. Okay. Do you know if Allied still owns that or has
5  Allied sold it to Ryder or someone else?
6  A. It's my understanding is Allied still owns what
7  they purchased.
8  Q. Okay. Now, for the last five years, you've been a
9  transportation consultant?
10 A. Yes, sir.
11 Q. What's a transportation consultant?
12 A. I provide information and assistance regarding
13 Delavan, RAOI d/b/a Delavan and Commercial
14 Carriers, Incorporated equipment.
15 Q. Who do you provide that to?
16 A. To anybody that would seek my services. Primarily,
17 I'm a corporate representative for CCI and GACS,
18 Incorporated.
19 Q. What's GACS? What's that stand for?
20 A. I truly don't know, sir.
21 Q. Okay. In that capacity, you testified many times,
22 my understanding?
23 A. I have, sir.

Page 15

1  Q. How many times have you testified before? Well,
2  let's strike that. How many times has your
3  deposition been taken as it relates to your
4  corporate capacity for those three companies you
5  mentioned?
6  A. Approximately 20 times, sir.
7  Q. Do you have a list of the times you've testified?
8  A. I do, sir, but I don't have it with me.
9  Q. And does the list contain the cases that you've
10 testified in the courts?
11 A. It does.
12 MR. KOUSTMER: Can I have you produce that or do you
13 want me to ask him what they are?
14 MR. LARSON: We can make it available to you. Just
15 remind me. I'll make a note here.
16 MR. KOUSTMER: Might be quicker than asking him for
17 this stuff. Okay.
18 BY MR. KOUSTMER:
19 Q. So you've testified approximately 20 times. How
20 many times have you testified that 20 times as an
21 expert witness?
22 A. I'm not sure, sir. I believe just once or twice.
23 Q. Has any court declined to recognize you as an

Page 16

1  expert witness?
2  A. No, sir, not to my -- not that I'm aware of.
3  Q. Have you testified -- strike that. The 20 times
4  you testified, those are depositions, correct?
5  A. Yes, sir, that's correct.
6  Q. What we're doing here today, correct?
7  A. Yes, sir, right.
8  Q. Have you ever testified in an actual courthouse?
9  A. I have.
10 Q. Okay. How many times have you done that?
11 A. I believe six, sir, Possibly seven, over the last
12 eight or nine years.
13 Q. Can you tell me what courts those were in, if you
14 remember the courts and the cases?
15 A. I'll do my best.
16 Q. Okay.
17 A. One was Inman, in Cook County, Chicago -- Illinois,
18 one was Hart in Jacksonville, Florida.
19 MR. LARSON: Duvall County.
20 THE WITNESS: Thank you. I couldn't remember. Duvall
21 County, yeah. One was Street in Kansas City.
22 MR. LARSON: That was Jackson County. I hope you don't
23 mind me helping you, Tom.

Page 65

1  Q. Okay. Did you try a thicker cable than a quarter
2     inch?
3  A. No, sir, the quarter inch had a 7,000 pound minimum
4     breaking test, and we thought that was more than
5     adequate for a human being.
6  Q. Okay.
7  A. A single human being, as far as that's concerned.
8  Q. And I'll just show you -- I'll show you Exhibit V
9     which was produced by Allied. It said for
10    replacement cables now they're using a quarter inch
11    nylon coated stainless steel.
12 A. Yes, sir.
13 Q. Was that an option that was given to you by Hanes
14    to use when you first put these on in 1994?
15 A. I don't really know. I really don't know if it was
16    an option or not.
17 Q. Okay. Was it mentioned by Hanes?
18 A. I -- again, I don't know that, sir.
19 Q. Okay. But you're saying that the decision to put
20    on what was put on the aircraft cable, vinyl
21    coated, galvanized was a decision made by Bill
22    Hanes?
23 A. That's correct. He was the expert. He or -- I

Page 66

1     don't know whether it was him or the fellow with
2     him or whatever, but Hanes Supply made the decision
3     as to what to put on, and we went along with it
4     because we felt they were the experts.
5  Q. Okay. Did Commercial Carriers, Inc. at the time
6     have engineers on staff?
7  A. Oh, yes, sir.
8  Q. Okay. They could have evaluated what material to
9     use?
10 A. Yes, sir.
11 Q. Who was the head of the engineering -- I don't want
12    to presume you had a department, but who was the
13    head of the engineering?
14 A. We did. It was Mike Bevilacqua.
15 Q. Is he still in this area? Do you know where he
16    worked?
17 A. He's -- I believe he's --
18 Q. You already said him?
19 A. Yes, sir he's over.
20 MR. KOUSTMER: Dave, can we take a break so I can use
21    the rest room?
22 MR. LARSON: Sure, I got to do the same thing.
23    (Short Recess Taken)

Page 67

1  BY MR. KOUSTMER:
2  Q. When we first started you said Commercial Carriers,
3     Inc. was -- the assets were sold to Allied. I want
4     to be sure of the name of it.
5  A. I didn't say.
6  Q. Oh?
7  A. I was talking about the manufacturing segment. The
8     assets of the manufacturing segment were sold to
9     another entity. The car haul operation was sold to
10    Allied.
11 Q. Oh, okay.
12 A. I'm sorry if I misstated it.
13 Q. I misunderstood. Okay. Who were the manufacturing
14    assets sold to?
15 A. They were transferred to Manufacturing Holding
16    Corporation.
17 Q. Is that the name of the company?
18 A. Yes, sir.
19 Q. And who assumed the liabilities?
20 A. Allied assumed the liabilities of all the trailers
21    that had been built by CCI.
22 Q. Is there a document to that effect or --
23 A. I'm sure there is, sir. I don't have it.

Page 68

1  Q. You don't. Do you know which Allied assumed all
2     the liabilities?
3  A. No, sir, I don't. I know there's several Allied
4     entities. I don't know.
5  MR. LARSON: Actually CCI still exists, and they're --
6     they respond to their own, but GACS is the company
7     that he referred to earlier that assumed the
8     liabilities of the prior Delavan operations. But
9     that doesn't apply here because this was the
10    Commercial Carrier's manufactured tractor trailer.
11 MR. KOUSTMER: I understand that from when we first got
12    involved in this suit.
13 MR. LARSON: Yeah.
14 MR. KOUSTMER: But you're saying -- what I'm trying to
15    get at is Commercial Carrier's, Inc. still
16    exists?
17 MR. LARSON: Yes.
18 THE WITNESS: Yes.
19 MR. KOUSTMER: But their liabilities haven't been sold?
20 MR. LARSON: My understanding is that they still exist
21    as a subsidiary of -- I believe it's Allied
22    Holdings is the parent. Is that right, Pete?
23 THE WITNESS: It's Allied Systems, Limited.

Page 69

1 MR. LARSON: Allied Systems, Limited is the car
2  carrying company.
3 THE WITNESS: Oh, I'm sorry. I'm not -- I'm
4  speculating. I don't really know. I don't know.
5 BY MR. KOUSTMER:
6 Q. Okay. So they're a subsidiary of Allied Systems or
7  Allied Holding?
8 A. Yes, sir. That's correct.
9 MR. LARSON: Allied Systems is the -- the name in which
10  they haul cars. Their -- their terminals and
11  their company operations are Allied Systems,
12  Limited, which is a subsidiary of Allied Holdings,
13  Incorporated, AHI.
14 MR. KOUSTMER: Allied -- what did you -- Allied
15  Holdings, Inc., is that what you said?
16 MR. LARSON: Uh-huh. That's the parent.
17 MR. KOUSTMER: Okay. Are they owned by Ryder?
18 MR. LARSON: No.
19 BY MR. KOUSTMER:
20 Q. Ryder Systems, Inc., have you ever worked for them?
21 A. No, sir.
22 Q. Okay. Have you ever done any consulting for them?
23 A. No, sir.

Page 70

1 Q. Okay. Did they own Commercial Carriers, Inc. or
2  have a holding in it?
3 A. They were a -- Commercial Carriers was a subsidiary
4  of Ryder Automotive Carrier Services, which was a
5  subsidiary of Ryder Automotive, which was a
6  subsidiary of Ryder Service -- Ryder Systems,
7  Inc..
8 Q. You think I got it. From my -- from what you've
9  told me, Commercial Carriers, Inc. was a subsidiary
10  of?
11 A. RACS, Ryder Automotive Carrier Services.
12 Q. Okay.
13 A. Which was --
14 Q. Which was a subsidiary of Ryder Systems, Inc.?
15 A. That's correct. Yes, sir.
16 Q. Okay. I -- at the time, '94, '95 when --
17 A. That's correct, yes.
18 Q. -- we're involved with fitting these trucks with
19  cables?
20 A. Well, no, no, no. Let me -- let me be more
21  specific.
22 Q. Okay.
23 A. Ryder Automotive Carrier Services never came into

Page 71

1  existence until 1996. CCI was a subsidiary of
2  RAOI, which was a subsidiary of RACG. RACG changed
3  its name in 1996 to RACS. I just wanted to be
4  specific because you mentioned '94, '95 and there
5  was no RACS in '94 '95.
6 Q. Okay. So that's -- the name was changed?
7 A. Yes, sir. In 1996.
8 Q. Okay. But, Ryder Systems, Inc., they were all a
9  subsidiary of Ryder Systems, Inc.?
10 A. Well, Ryder systems, RACG, Ryder Automotive Carrier
11  Group was a subsidiary of Ryder System, Inc..
12  Ryder Automotive Operations, Inc. was a subsidiary
13  of Ryder Automotive Carrier Group. CCI was a
14  subsidiary of Ryder Automotive Operations Inc.
15 Q. And it goes up to the Ryder systems, Inc.?
16 A. Yes, sir.
17 MR. LARSON: The ultimate parent through that period of
18  time up until '97 was Ryder System, Inc..
19 BY MR. KOUSTMER:
20 Q. Okay. Back with Commercial -- and I'm just a
21  simple boy from the hills so, bear with me.
22 A. Oh, oh, I don't believe that.
23 Q. I had to get that line out. I got it out last

Page 72

1  time.
2 MR. LARSON: I was waiting for it.
3 BY MR. KOUSTMER:
4 Q. We could all be simple boys from the hills, can't
5  we?
6 A. I'm a simple boy from the hills, really.
7 Q. That Commercial Carriers, Inc. is still in
8  existence?
9 A. Yes, sir.
10 Q. Correct? And its liabilities, if I understand,
11  were assumed by -- have been assumed by Allied
12  Holding, Inc.?
13 A. They -- there's a limited partnership in Allied
14  something, okay? But CCI is still responsible for
15  the trailers they built, if that answers your
16  question.
17 MR. LARSON: Off the record
18  (Discussion off the record.)
19 BY MR. KOUSTMER:
20 Q. And how much -- is the income from your consulting
21  company derived from your work with the Allied
22  group, Ryder, CCI, all of those companies that are
23  together?

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DISTRICT

DAVID FERGUSON, et al.          )
                                )
    Plaintiffs,                 )
                                )
vs.                             )    Case No: C-1-02-039
                                )    Judge Herman Weber
RYDER AUTOMOTIVE CARRIER        )
SERVICES, et al.,               )
                                )
    Defendants.                 )

**ANSWERS AND OBJECTIONS OF DEFENDANTS
ALLIED AUTOMOTIVE GROUP, INC. AND ALLIED SYSTEMS, LTD.
TO DEFENDANT HANES SUPPLY, INC.'S FIRST SET OF INTERROGATORIES**

COME NOW Defendants Allied Automotive Group, Inc. and Allied Systems, Ltd. (together, the "Defendants") and make the following answers to Defendant Hanes Supply, Inc.'s First Set of Interrogatories to these Defendants (the "Discovery Requests").

1. Defendants object to any attempt to make their answers, responses and objections to these Discovery Requests continuing in nature. Defendants acknowledge their obligation to supplement their answers, responses and objections to the Discovery Requests in accordance with Fed. R. Civ. P. 26(e) or as otherwise ordered by the Court.

2. Defendants will provide no information and produce no documents that are within the attorney/client privilege, work product doctrine or other privilege.

3. Defendants object generally to these Discovery Requests to the extent they require them to provide lengthy explanations that can be explored through depositions.

4. Defendants object to the use of the term "hand cable" to describe the cable that is at issue in this case as unduly vague, inaccurate and prejudicial.

1. **Identify all persons answering, assisting in answering, or providing information or documents used in answering these Interrogatories or Hanes' First Set of Requests for the Production of Documents.**

   ANSWER: Defendants object to the requirement that it Identify all Persons who assisted in the preparation of the answers to each of these Interrogatories, since said information is within the work product doctrine. The Person answering these interrogatories on Defendants' behalf is Michael Palladino, P.O. Box 490160, Dayton, OH 45449.

2. **Identify all persons who have knowledge or information relating to the facts, circumstances, issues, allegations, and claims which are the subject of Your Second Amended Complaint, and provide a description and/or summary of the substance and extent of knowledge of information possessed by each such person.**

   ANSWER: Objection. Defendants did not file the Second Amended Complaint and, therefore, cannot meaningfully respond to this interrogatory. Subject to and without waiving said objection, see Defendants' Pre-Discovery Disclosure Response A.

3. **Identify each and every document withheld from production by You in response to Hanes' First Set of Requests for the Production of Documents, and for each such document identify the groups on which You withheld the document and provide sufficient information for the Court to assess Your claim of privilege.**

   ANSWER: Defense counsel is continuing to evaluate Defendants' responses to Hanes Supply's first set of interrogatories and first request for production. Defendants are unaware of any documents that are being withheld from production due to a claim of privilege. Upon asserting any such privilege, Defendants will forward an appropriate privilege log.

4. **Identify each and every person who has had possession of the Hand Cable from the time of the Accident to the present, including who has the Hand Cable now, and the times when each such person or entity had possession of the Hand Cable.**

   ANSWER: Subject to General Objection No. 4 above, upon information and belief, an unidentified member of the Moraine terminal's shop personnel retrieved the cable following the accident. Allied does not presently know of the ultimate disposition of the cable. More likely than not it was discarded shortly after the accident.

5. **State whether on Your behalf and/or at Your direction or the direction of Your counsel, any inspection, examination, testing and/or analysis of any kind has been performed on the Hand Cable. If the answer is "Yes" provide the following information:**

    (a)    the name and address and telephone number of the person or persons who performed such inspection, examination, testing and/or analysis;
    (b)    the type or types of inspection, examination, testing and/or analysis performed;
    (c)    the results of such inspection, examination, testing and/or analysis; and
    (d)    the names and addresses and telephone numbers of all those present during the performance of such inspection, examination, testing and/or analysis.

ANSWER: Subject to General Objection No. 4 above, no.

6. Identify each and every expert witness you expect to call at time of trial, and as to each set forth in detail:
    (a)    the subject matter upon which each expert is expected to testify;
    (b)    the substance of the facts and opinions to which the expert is expected to testify;
    (c)    a summary of the grounds for each opinion; and
    (d)    identify each document and/or other information reviewed or relied upon by each expert.

ANSWER: Defendants have not yet determined what expert witnesses they may call at trial.

7. Identify the party who designed the Hand Cable.

ANSWER: Subject to General Objection No. 4 above, Defendants lack knowledge about the requested information.

8. State whether the Trailer was repaired following the Accident and whether the Hand Cable has been replaced.

ANSWER: Subject to General Objection No. 4 above, yes, the cable was replaced on September 8, 2000.

## VERIFICATION

STATE OF OHIO              )
                           ) SS:
COUNTY OF MONTGOMERY       )

      Michael Palladino, the undersigned, being first duly sworn, on oath deposes and says that he is an Operations Supervisor of Allied Systems, Ltd., a Georgia limited partnership; that he has read the foregoing answers to interrogatories nos. 4, 5, 7 and 8 (together, the "Answers") by him subscribed and knows the contents thereof; that said answers were prepared with the assistance and advice of counsel and the assistance of representatives of the limited partnership upon which he has relied; that the answers set forth herein, subject to inadvertent or undiscovered errors, are based upon and, therefore, necessarily limited by the records and information still in existence, presently recollected and thus far discovered in the course of the preparation of these answers; that consequently Allied Systems, Ltd. and Allied Automotive Group, Inc. reserve the right to make any changes in the Answers if it appears at any time that omissions or errors have been made therein or that more accurate information is available; and that subject to the limitations set forth herein, the said Answers are true to the best of his knowledge, information and belief.

          _/s/ Mike Palladino_
Michael Palladino
Operations Supervisor
Allied Systems, Ltd.
P.O. Box 490160
Dayton, OH 45449


Subscribed and sworn to before me this 20TH day of November 2002.

          _/s/ Sherry J. Taylor_
Notary Public

My commission expires: MAR. 28, 2004

SHERRY J. TAYLOR, Notary Public
State of Ohio
My Commission Expires March 28, 2004

All objections to the Discovery Requests are interposed by the undersigned counsel for Defendants Allied Systems, Ltd. and Allied Automotive Group, Inc.

*[signature]*
Robert A. Winter, Jr. (0038673)
250 Grandview Drive, Suite 200
Ft. Mitchell, KY 41017
(859) 344-1188
(859) 578-3869 (fax)
Trial attorney for Defendants
Allied Systems, Ltd. and
Allied Automotive Group, Inc.

OF COUNSEL:

Hemmer Spoor Pangburn DeFrank PLLC
250 Grandview Drive, Suite 200
Ft. Mitchell, KY 41017
(859) 344-1188
(859) 578-3869 (fax)

## CERTIFICATE OF SERVICE

I certify that true and correct copies of the foregoing were served by depositing the same into the United States Mails, first class, postage prepaid, on this 18 day of November 2002, to:

Thomas R. Koustmer, Esq.
1800 Federated Building
7 West Seventh Street
Cincinnati, Ohio  45202

Michael J. Honerlaw, Esq.
Honerlaw and Honerlaw Co., L.P.A.
9227 Winton Road
Cincinnati, Ohio  45231

Craig R. Paulus, Esq.
Taft, Stettinius & Hollister, LLC
425 Walnut Street, Suite 1800
Cincinnati, Ohio  45202-3957

K. Roger Schoeni, Esq.
Kohnen & Patton
441 Vine Street, Suite 1400
Cincinnati, Ohio  45202

David E. Larson, Esq.
Larson & Larson, P.C.
11300 Tomahawk Creek Pkwy, Suite 310
Leewood, KS  66211

_____
Robert A. Winter, Jr.

6



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| DAVID FERGUSON, ET AL. | : |
| | : Case No. C-1-02-039 |
| Plaintiffs | : |
| | : Judge Herman Weber |
| v. | : |
| | : |
| RYDER AUTOMOTIVE CARRIER | : AFFIDAVIT OF |
| SERVICES, INC., ET AL. | : ROBERT A. WINTER, JR. |
| | : |
| Defendants | : |

Affiant Robert A. Winter, Jr., after having first been duly cautioned and sworn, deposes and states as follows:

1. My name is Robert A. Winter, Jr. I am the trial attorney for Allied Systems, Ltd. and Allied Automotive Group, Inc., two of the defendants in the above-captioned action (together, the "Allied Defendants"). I have personal knowledge of the facts contained within my affidavit.

2. I attended the depositions of William C. Weaver and Richard H. Shively in the above-captioned action on February 20, 2003.

3. On April 5, 2003, I received the signed signature page and completed errata sheet from Mr. Weaver with regard to his deposition transcript. On April 7, 2003, I mailed those documents to the court reporter and sent copies to all counsel of record. A true and accurate copy of my correspondence to the court reporter and counsel is attached to my Affidavit as Exhibit A.

4. Shortly thereafter, I received separate telephone calls from Craig Paulus, Esq., counsel for defendant Hanes Supply, Inc., and Thomas R. Koustmer, Esq., counsel for plaintiffs.

During those conversations, Mr. Paulus and Mr. Koustmer acknowledged receiving Exhibit A to my Affidavit and commented briefly upon the additional testimony provided by Mr. Weaver within his errata sheets. Neither of them requested an opportunity to reexamine Mr. Weaver with regard to the content of his errata sheets or otherwise. Had a request been made by counsel to me to reexamine Mr. Weaver on the content of his errata sheets, the request would have been granted.

5. Shortly after the onset of this case, it became apparent to me that the old type cable that supposedly failed on September 7, 2000, and allegedly injured plaintiff David Ferguson would not be located. The Allied Defendants attempted to obtain another old type cable but without success until the very end of May 2003. At that time, I was advised that some of the old type cables may have been located. They were shipped to me and I received them on June 6, 2003. On that date, I notified all counsel of record of their existence and arrival at my office by e-mail (Exhibit B to my Affidavit).

6. Thereafter, Messrs. Paulus, Koustmer and Honerlaw were granted access by us to view those cables. They have also been produced to Mr. Paulus. I am advised by Mr. Paulus that the cables are presently with authorized representatives of Hanes Supply, Inc. for the purpose of inspection.

7. After Mr. Paulus viewed the cables, he requested that the Allied Defendants voluntarily provide copies of the maintenance/repair records on the tractor from where the cables were retrieved. The Allied Defendants complied with his request and supplied copies to all counsel of the *Unit Detail History List* with regard to Unit No. 61078.

8. Further affiant sayeth naught.

_____
Robert A. Winter, Jr.

COMMONWEALTH OF KENTUCKY )
) SS:
COUNTY OF KENTON )

Sworn to before me and subscribed in my presence, a notary public for the state and county aforesaid this 8th day of August 2003, by Robert A. Winter, Jr. as his own free and voluntary act and deed.

_____
Notary Public — Rebecca Lynn White

My commission expires: 5-14-07

- 4 -

## CERTIFICATE OF SERVICE

I certify that true and correct copies of the foregoing were served by depositing the same into the United States Mails, first class postage prepaid, on this 15 day of August 2003, to:

Thomas R. Koustmer, Esq.
1800 Federated Building
7 West Seventh Street
Cincinnati, OH 45202

Michael J. Honerlaw, Esq.
Honerlaw and Honerlaw Co., L.P.A.
9227 Winton Road
Cincinnati, OH 45231

K. Roger Schoeni, Esq.
Kohnen & Patton LLP
PNC Center, Suite 800
201 East Fifth Street
Cincinnati, OH 45202

David E. Larson, Esq.
Larson & Larson PC
11300 Tomahawk Creek Parkway
Suite 310
Leawood, KS 66211

Craig R. Paulus, Esq.
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202

Robert A. Winter, Jr.

s:\dma\allied\ferguson\pleadings\winter affidavit.wpd



DEFENDANT'S EXHIBIT A

# HEMMER SPOOR PANGBURN DeFRANK PLLC

SUITE 200
250 GRANDVIEW DRIVE
FT. MITCHELL, KENTUCKY 41017
(859) 344-1188
Fax: (859) 578-3869

CINCINNATI, OHIO OFFICE
SUITE 624
8044 MONTGOMERY ROAD
CINCINNATI, OHIO 45236
(513) 794-1188
FAX: (513) 936-3746

April 7, 2003

Ms. Sherry Gregory
Ace Reporting Services
620 Cincinnati Club Building
30 Garfield Place
Cincinnati, OH 45202-4364

Re:   Ferguson v. Ryder Automotive Carrier Services, Inc., et al.
      United States District Court, Southern District of Ohio
      Civil Action No. C-1-02-039

Dear Ms. Gregory:

We are counsel to the Allied Defendants in the referenced litigation. We write as a partial follow up to your letter, dated March 10, 2003, pertaining to the deposition transcripts of Messrs Frederick L. Wolf, Richard H. Shively, William C. Weaver and Gary O. Chinn in the referenced litigation that were taken February 20, 2003.

We enclose Mr. William Weaver's original signature page 52 to his deposition transcript and two pages of errata sheets. Please call if you have any questions.

Very truly yours,

Robert A. Winter, Jr.

RAW/bld
Enclosure
cc:   Thomas R. Koustmer, Esq. (w/enc.)
      Michael J. Honerlaw, Esq. (w/enc.)
      K. Roger Schoeni, Esq. (w/enc.)
      David E. Larson, Esq. (w/enc.)
      Craig R. Paulus, Esq. (w/enc.)

52

MR. WINTER: Anything from anybody else? Okay, we're done. We don't waive signature.

*[Signature: William C. Weaver]*
WILLIAM C. WEAVER

- - -
DEPOSITION CONCLUDED AT 12:34 P.M.
- - -

ORIGINAL

TO THE REPORTER: I have read the entire transcript of my deposition taken on the _20_ day of _FEBRUARY_, 20_03_, or the same has been read to me. I request that the following changes be entered upon the record for the reasons indicated. I have signed my name to the signature page and authorized you to attach the following changes to the original transcript:

PAGE 1

| PAGE | LINE | CORRECTION |
|---|---|---|
| 9 | 12-24 | THE DAY I GOT BACK, I HAD A CASUAL |
| 10 | 1-22 | CONVERSATION WITH TOM HELLER AND, IN TURN, HE SPOKE TO ME ABOUT MR. FERGUSON FALLING OFF A TRUCK. I ASKED HIM HOW IT HAPPENED AND HE TOLD ME THAT A CABLE BROKE AND THAT HE HAD FALLEN THROUGH THAT. SO, IN TURN, WE TALKED A LITTLE MORE ABOUT IT. I ASKED HOW FERGUSON WAS, ETC. AND I ALSO ASKED HIM WHERE THE OLD CABLE WAS AT. MR. HELLER SAID THAT HE WAS NOT SURE, BUT HE THOUGHT MIKE PALLADINO HAD IT. I LEFT IT AT THAT, BECAUSE GENERALLY WHEN SOMETHING WOULD HAPPEN LIKE THAT, MIKE PALLADINO, BEING THE SAFETY MAN WOULD IMPOUND THAT AND HOLD IT PENDING AN INVESTIGATION. LATER ON (IT MIGHT HAVE BEEN 1-2 WEEKS LATER), MIKE CALLED AND ASKED ME SOME QUESTIONS ABOUT CABLES AND THE POLICIES ON WHETHER WE WERE CHANGING THEM AND HOW OFTEN WE WERE GETTING TO CHANGE THEM, ETC. I THEN ASKED MIKE IF HE HAD THE CABLE |

3-30-03

TO THE REPORTER: I have read the entire transcript of my deposition taken on the _____ day of _____, 20____, or the same has been read to me. I request that the following changes be entered upon the record for the reasons indicated. I have signed my name to the signature page and authorized you to attach the following changes to the original transcript:

PAGE 2

| PAGE | LINE | CORRECTION |
|---|---|---|
| 9 | 12-24 | TO FERGUSONS TRUCK. HE SAID, |
| 10 | 1-22 | "WELL, I'VE GOT A CABLE," THAT IS |
| CONTINUED | | ALL THAT WAS SAID. I DID NOT ASK |
| | | ANY MORE, SINCE I FIGURED IT WAS |
| | | IN INVESTIGATION AND IT WASN'T ANY |
| | | OF MY BUSINESS. |

DEFENDANT'S EXHIBIT B

**Robert Winter**

From: Robert Winter
Sent: Friday, June 06, 2003 10:34 AM
To: 'KTKoustmer@aol.com'; 'mike@honerlaw.com'; 'Paulus@taftlaw.com'; 'dlarson@larsonlaw.biz'; 'rschoeni@kohnenpatton.com'
Subject: Ferguson v. Allied

Gentlemen:

I am pleased to advise that, like Mr. George Foster, I have had old type cables arrive at my office. Specifically, four old style cables are at my office for your inspection at a mutually convenient date and time. The Allied Defendants will be supplementing their responses to various discovery requests to reflect this development in the near future. In the meantime, please allow this notice to suffice. Thank you.

Robert A. Winter, Jr.
Hemmer Spoor Pangburn DeFrank PLLC
250 Grandview Drive, Suite 200
Ft. Mitchell, KY 41017
(859) 344-1188
E-mail bwinter@hemmerlaw.com

1