UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAVID FERGUSON, et al.                    :    File No. C-1-02-039
                                          :
                Plaintiffs,               :    Judge Weber
                                          :
vs.                                       :    Magistrate Judge Hogan
                                          :
RYDER AUTOMOTIVE CARRIER                  :
SERVICES, INC., et al.                    :    REPLY OF DEFENDANT HANES
                                          :    SUPPLY, INC.'S IN SUPPORT OF ITS
                Defendants.               :    MOTION FOR SUMMARY JUDGMENT

The disputes of fact raised by the Plaintiffs are not material to the grounds on which

Hanes Supply moved for summary judgment.  Moreover, some of the evidence on which

Plaintiffs rely is inadmissible and cannot be used to oppose a motion for summary judgment.

Most importantly, Plaintiffs do not – and cannot – dispute that Mr. Ferguson's employer knew

that the cable that allegedly injured him needed to be replaced and that Allied failed to replace

the cable after 99 opportunities to do so over a period of 18 months.  Accepting all facts in favor

of the Plaintiff's contentions, their claims still fail as a matter of law.


A.      Allied's negligence or intentional tort is the supervening cause of the Plaintiff's injuries.

        While causation questions are generally for the trier of fact, that it not universally so.

*Bruns v. Cooper Industries, Inc.*, 78 Ohio App.3d 428, 605 N.E.2d 396 (Ohio App. 1992)

(discussed in *Hanes Supply's Memorandum in Support*).  In *Bruns*, and employer negligently

provided a defective product to its employee and on these facts, the court held that the

employer's superceding act broke the chain of causation.

        This case is even more obvious.

W0058033.1

Here, the Plaintiffs claim that Allied **intentionally** provided a defective product to Mr. Ferguson. The Plaintiffs concede that Allied had a duty in regards to the cable and failed in that duty. It is undisputed that Allied perceived a danger from the cable and had a duty to correct that perceived danger 18 months prior to Mr. Ferguson's fall. It is undisputed that after the replacement program began, the truck was serviced 99 times by Allied's maintenance staff without the replacement being made. It is also undisputed that, "where after the negligent act a duty devolves on another person in reference to such act or condition which such person fails to perform, such failure is the proximate cause of the injury resulting from the act." *Cascone v. Herb Kay, Co.*, 6 Ohio St.3d 155, 159, 451 N.E.2d 815, 819 (1983)(citations omitted). No liability can attach to Hanes Supply after Allied failed in its duty to safeguard its employee, Mr. Ferguson, from the cable.

B.    The Plaintiffs' manufacturing defect claims must fail because the Plaintiffs have no evidence that the cable involved in Mr. Ferguson's accident did not meet its design specifications.

Plaintiffs have the burden of proving material deviations from design specifications, formula, or performance standards. O.R.C §§ 2307.73, 2307.74. Without the cable, the Plaintiffs cannot compare the cable to the specifications to show a defect.

The Plaintiffs' try to dodge this failure of proof by claiming that the cable did not meet its design specifications because it failed to last 10 years. But, a 10-year life span was never Hanes Supply's design specification. Only evidence that can be presented in admissible form at trial may be used to oppose a motion for summary judgment. *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir.1994). Plaintiffs rely on the testimony of Mr. Peter Terzian to claim that Hanes was told to make the cables last 10 years. Mr. Terzian does not have personal knowledge of what

Hanes was told because he wasn't in the meetings between Hanes Supply and Commercial Carriers' engineering staff. (Ex. A, Terzian depo. at 111). Simply, Mr. Terzian's testimony on this point is inadmissible. F.R.E. 602.

Inadmissible, unspoken "design specifications" cannot be imposed on Hanes Supply. Commercial Carriers may have included a component on its trucks that did not meet its design specifications. But, Hanes Supply never had – nor was it ever asked to have – the standard that the cables would last for 10 years. Plaintiffs' manufacturing defect claim against Hanes Supply fails as a matter of law.

C.    Plaintiff and his employer had all relevant information about the cables and, therefore, the Plaintiffs' warning claims must fail.

Though Plaintiffs claim that Hanes Supply failed to all pertinent information concerning the cables, this does not create a genuine dispute of material fact concerning the defective warning claims. What Hanes Supply did or did not warn Allied about it immaterial because Plaintiffs do not dispute that Mr. Ferguson's employer had knowledge of the danger posed by the aging, rusting cables. In fact, Plaintiffs' claims against Allied are based on Allied's knowledge of danger from the cables. **"It is futile to require that a manufacturer notify the employee of that which the responsible party, the employer, was already aware."** *Vermett v. Fred Christen & Sons Co.*, 138 Ohio App.3d 586, 741 N.E.2d 954 (Ohio App. 2000) (emphasis added). Plaintiffs' warning claims fail.[1]

---

[1]    Hanes Supply also notes that Plaintiffs support their defective warning claims with testimony by their expert witness, Mr. Gabriel Alexander. (See *Plaintiffs' Answer to Defendant Hanes Supply's Motion for Summary Judgment*, Doc. 113, at 15-16). Plaintiff's expert witness is not a fact witness competent to testify that warnings were not given. The Plaintiffs' expert did not review the entire record.

D.    Because the Plaintiffs cannot connect an alleged defective design to the cable's failure, <u>Hanes Supply is entitled to summary judgment on the Plaintiff's defective design claims.</u>

There is no direct evidence that a defect existed at the time the product left the manufacturer, and therefore, the Plaintiffs must establish "that the loss was caused by a defect and not other possibilities, although not all other possibilities need be eliminated." *State Farm Fire and Casualty Co. v. Chrysler Corp.*, 37 Ohio St.3d 1, 6, 523 N.E.2d 489, 493-494 (1998). The Plaintiffs have not eliminated any of the other explanations for the cable's failure.

Despite Plaintiffs' shattershot allegations of defect, there is no evidence to connect any defect to the breaking of the cable. At various points in their brief, Plaintiffs claim that the defect was the use of galvanized steel, the use of a yellow instead of a clear coating, and the use of a swaged stud instead of an eye-bolt. But, there is no connection shown in the record between these alleged defects and the actual cable's failure. Just as easily, the failure could have been caused or contributed to by improper installation, improper maintenance, abuse, misuse, overloading, shock loading, negligent repair, accident, tampering, or just age. The Plaintiffs do not eliminate any of these other potential causes. Their case is based on mere speculation.

E.    There is no admissible testimony to support Plaintiffs' claim that the cable assembly did <u>not conform to representations by Hanes Supply.</u>

Again, the Plaintiffs turn to the inadmissible testimony of Mr. Terzian to claim that Hanes Supply represented that the cable assembly would last 10 years. Mr. Terzian was not present at the meetings and does not have personal knowledge of what CCI's engineers told Hanes Supply. (Ex. A, Terzian depo. at 111). His testimony is inadmissible and cannot be used to oppose this motion for summary judgment. F.R.E. 602; *Wiley, supra.* O.R.C.§ 2307.77 requires that the Plaintiff show a representation. There was none.

W0058033.1

- 5 -

Respectfully submitted,

Craig R. Paulus (0074352)
Taft, Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957
513.381.2838
fax 513.381.0205
Trial Attorney for Defendant
Hanes Supply, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was electronically filed with the Southern District of Ohio on September 30, 2003. Notice of this filing will be sent automatically to the following parties by operation of the Court's electronic filing system.

Thomas Ralph Koustmer
1800 Federated Building
7 West Seventh Street
Cincinnati, OH 45202
513.621.3616
Attorney For Plaintiffs, David and Martha
Ferguson

David E. Larson
Larson & Larson PC
11300 Tomahawk Creek Parkway
Suite 310
Leawood, KS 66211
Attorney for Defendants, Ryder Automotive
Carrier Services, Inc.; Ryder System Inc.;
Delavan Industries, Inc.; Ryder Automotive
Operations, Inc.; Ryder Automotive Carrier
Group, Inc.; and Commercial Carriers, Inc.

Kenneth Roger Schoeni
Kohnen & Patton
441 Vine Street
Suite 1400
Cincinnati, OH 45202
513.381.0656
Attorney For Defendants, Ryder Automotive
Carrier Services, Inc.; Ryder System Inc.;
Delavan Industries, Inc.; Ryder Automotive
Operations, Inc.; Ryder Automotive Carrier
Group, Inc.; and Commercial Carriers, Inc.

Michael J. Honerlaw
Honerlaw and Honerlaw Co. L.P.A.
9227 Winton Road
Cincinnati, OH 45231
Attorney For Plaintiffs, David and Martha
Ferguson

Served by Regular Mail:

Robert Albert Winter, Jr.
Hemmer Spoor Pangburn DeFrank PLLC
250 Grandview Drive
Suite 200
Ft. Mitchell, KY 41017
859.344.1188
Attorney For Defendants, Allied Systems and Allied Automotive Group

_____

Exhibit A.

W0058033.1

Page 1

1    PETER J. TERZIAN, JR.

2

3

4              UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF OHIO
5                    WESTERN DIVISION

6    ------------------------------------------

7    DAVID FERGUSON, et al.,

8                Plaintiffs,

9         -vs-              File No. C-1-02-039

10   RYDER AUTOMOTIVE CARRIER SERVICES, INC.,
     et al.,
11
                Defendants.
12
     ------------------------------------------
13

14

15              Examination Before Trial of PETER

16   J. TERZIAN, JR., taken pursuant to Notice under the

17   Federal Rules of Civil Procedure and Agreement,

18   taken at the Roycroft Inn, 31 South Grove Street,

19   East Aurora, New York, taken on February 11, 2003,

20   commencing at 9:25 A.M., before MARTIN S. WRIGHT,

21   CSR, Notary Public.

22

23

Page 2

1              INDEX TO WITNESSES

2

3    Witness              Examination By

4

5         MR. KOUSTMER  MR. PAULUS

6    PETER J. TERZIAN, JR.        502

7                   126    130

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Page 3

1    APPEARANCES:

2    THOMAS R. KOUSTMER, ESQ.,
     7 West 7th Street, Suite 1800,
3    Cincinnati, OH 45202,
     Appearing for the Plaintiffs.

4

     LARSON & LARSON,
5    BY: DAVID E. LARSON, ESQ.,
     1300 Tomahawk Creek Parkway, Suite 310,
6    Leawood, KS 66211,
     Appearing for the Defendants Commercial
7    Carriers, Inc. and Ryder Systems, Inc..

8    TAFT, STETTINIUS & HOLLISTER,
     BY: CRAIG R. PAULUS, ESQ.,
9    425 Walnut Street, Suite 1800,
     Cincinnati, OH 45202,
10   Appearing for the Defendant Hanes Supply.

11

12        (Whereupon, the following stipulations were

13   entered into by all parties.)

14        It is hereby stipulated by and between

15   counsel for the respective parties that the oath of

16   the Referee is waived, that filing of the

17   transcript are waived, and that all objections,

18   except as to the form of the questions, are

19   reserved until the time of trial.

20   MR. KOUSTMER: Why don't we put on the record that Bob

21   Winter represents Allied and Allied Group and he

22   was told of this deposition, which is by agreement

23   and notice, and he was also noticed, and he told us

Page 4

1    that he chose not to come because he didn't think

2    it related to his case.  Is that correct,

3    Gentlemen?

4    MR. LARSON:  That's my understanding.

5    MR. PAULUS:  That's my understanding.

6    MR. LARSON:  Before we start, I'd just simply wanted to

7    state the -- what's actually obvious to everyone

8    this is a request for Mr. Terzian's deposition

9    individually and he's not being produced pursuant

10   to 30(b)6 although he does have and may certainly

11   could be the one who would be designated on

12   certain issues.  But, to the extent that there are

13   questions asked of him where he may not be the

14   most knowledgeable, we simply want it understood

15   that he may not be the corporate representative,

16   but subject to that, you may inquire and find out

17   what he knows.

18   MR. KOUSTMER: Just for the record, he was the

19   corporate representative at the deposition of Mr.

20   Palerno.

21   MR. PAULUS:  Palladino.

22   MR. LARSON:  Palladino.

23   MR. PAULUS:  And --

Page 109

1    the buck, but Mr. Lempke would probably be better
2    to ask that question.
3  Q. Okay. I'm asking because one of the documents that
4    I think's contained in Exhibit BB --
5  MR. KOUSTMER: We'll find it for you.
6  MR. PAULUS: You marked DD, CC -- BB, CC and DD.
7  MR. KOUSTMER: Yeah.
8  MR. PAULUS: Can I have all that stuff?
9  MR. KOUSTMER: BB.
10 MR. PAULUS: Thank you.
11 BY MR. PAULUS:
12 Q. Excuse me. Plaintiffs' Exhibit DD is an order
13    for -- if you look on the second page, it gives
14    additional detail?
15 A. Okay.
16 Q. Order for -- it's records of a shipment from Hanes
17    to CCI -- or, excuse me, Ryder Automotive
18    Operations for turn buckle cables that are a
19    hundred and five inches long. Did you have any
20    applications that would have used that besides the
21    hand cable?
22 A. Oh, yes, sir. Yeah. If you'll notice the date on
23    this invoice it's 3/93.

Page 110

1  Q. Mm hmm.
2  A. We weren't putting hand cables -- safety cables on
3    at that time. It wasn't until a year later after
4    we became CCI. This -- I'm quite positive, and I
5    think Mr. Lempke can tell you better than I can.
6  Q. Okay.
7  A. But it was probably for the -- a different
8    application.
9  Q. Okay.
10 A. You know, as I said, we made different types of
11    trailers. You know, before CCI.
12 Q. When -- when did CCI -- when did Ryder Automotive
13    Operations Delavan become CCI? Again, you've
14    already --
15 A. January 1st, 1994.
16 Q. Is that when Mr. Fortuna started working there?
17 A. That's correct. This is -- this is something we
18    purchased from Hanes that had nothing to do with
19    safety cables.
20 Q. Okay.
21 A. Yeah.
22 Q. Did Mr. Fortuna -- I hope I am pronouncing that
23    correctly -- Mr. Fortuna ever meet with Bill Hanes,

Page 111

1    to your knowledge?
2  A. Not that I'm aware of, sir, no.
3  Q. You mentioned that you met him. How many times did
4    you meet him?
5  A. I believe I met him at least once. I don't -- I
6    remember we had him in there or we had an
7    engineering meeting about the cables, and I believe
8    he came. And with another person.
9  Q. Were you there?
10 A. Oh, yes.
11 Q. At the meeting?
12 A. No, I did not attend the meeting, no.
13 Q. You did not attend the meeting?
14 A. No.
15 Q. How many people -- did you have an Engineering
16    Department at CCI?
17 A. Oh, yes, sir.
18 Q. How many people were in that department?
19 A. Well, it -- it varied depending on the activities,
20    but anywhere from four to eight. There's a
21    couple --
22 Q. Do you remember any of those people's names?
23 A. Yes, sir. Marty Hudi, Mike Bevilacqua, Mike

Page 112

1    Parker, Terry Mahaffey, M-a-h-a-f-f-e-y, Jim Keane,
2    that's K-e-a-n-e, Keane. And we had some
3    temporaries, sir, that we used to hire from EGC or
4    some -- some local temporary engineering firm.
5    When we were busy with -- we did temporaries. I
6    don't really remember their name.
7  Q. What was the name of the firm, the temporary
8    engineering firm?
9  A. ECG or EGC. Mr. Lempke, again, would know that, I
10    think. He used them a lot.
11 Q. Are they a local company?
12 A. Yes, sir.
13 Q. Are they still around?
14 A. I truthfully don't know.
15 Q. What about a Mr. Hill?
16 A. John Hill, but John Hill came later. Well, I guess
17    the time frame is the important thing. I think Mr.
18    Hill started around the beginning of 1995 --
19 Q. Mm hmm.
20 A. -- which would have been after we started with the
21    cables, but I'm not --
22 Q. You mentioned Mike Parker?
23 A. Yes.

Peter J. Terzian, Jr.                    Page 109 - Page 112