UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| DAVID FERGUSON, et al., | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| vs. | )   Case No. C-1-02 039 |
| | )   (Judge Herman J. Weber) |
| | ) |
| COMMERCIAL CARRIERS, INC., et al., | )   **REPLY SUGGESTIONS IN SUPPORT** |
| | )   **OF COMMERCIAL CARRIERS, INC.** |
| | )   **MOTION FOR SUMMARY** |
| | )   **JUDGMENT** |
| | ) |
|     Defendants. | ) |

**INTRODUCTION**

    Although not relevant to CCI's motion for summary judgment, the Plaintiffs rely upon suspicion, misrepresentations and innuendo rather than facts. For example, in the very first sentence of their response, plaintiffs state that Commercial Carriers, Inc. is a subsidiary of co-defendant Allied Systems, Inc. This is incorrect. The testimony plaintiffs rely upon came from the witness, Peter J. Terzian, Jr., who is not competent to testify concerning the corporate relationships within the Allied Holding, Inc. family of companies. While currently a consultant for CCI, Mr. Terzian was an employee of Commercial Carriers, Inc. when the trailer involved in Mr. Ferguson's fall was manufactured. Likewise, defendant Allied Systems has not assumed the liability of any trailers built by CCI. CCI still exists and remains responsible for any liabilities arising out of the trailers it manufactured.

    It is through these misstatements of fact that plaintiffs imply that CCI:(a) had some

involvement in the discarding of the accident cable and (b) CCI stood to benefit by the unavailability of the cable. There is no evidence to support either claim. In fact, there is no evidence whatsoever that the employee who threw away the cable in question had any notion that a lawsuit might be filed against Allied Systems or any company affiliated with Allied Systems, nor is there any evidence that any of the Allied Systems employees who have been deposed out of the Moraine, Ohio terminal had any idea that CCI became a subsidiary of Allied Holdings (not Allied Systems) in 1997.

Plaintiffs then accuse defendant CCI of "willful and malicious conduct" without any reasonable evidentiary basis for said reckless accusation. This argument is designed to poison the Court's mind in hopes that it will overlook the relevant undisputed facts and applicable law that was set forth in CCI's motion. The Plaintiffs have devoted a significant portion of their response to the recitation of "facts" which they claim are in dispute. However, none of these facts are material to the issues raised in the defendant's motion.

The fact of the matter is that the accident cable is not available for inspection. (CCI Memo in Support of Motion for Summary Judgment, Allied Responses to Hanes Supply's First Set of Requests for Production of Documents, No. 2). The only cable inspected by the plaintiffs expert is of dubious origin. (Ferguson depo p. 26). There is no way that the plaintiffs can establish that the accident cable failed because the cable was galvanized. There is no way the plaintiffs can establish why any of the other six or seven broken cables failed. There is no factual basis to suggest that CCI is guilty of spoliation of evidence, or a conspiracy to spoliate, and no such claim has been asserted by plaintiff against CCI or the Allied defendants.

The majority of Plaintiff's response is a series of misstatements, misrepresentations,

incomplete sentences, unproven assertions, unsupported statements of law and quotations from Ohio courts which are taken out of context.

In an effort to address plaintiff's scatter-shot points in a cohesive manner, CCI will respond to each issue in the following order:

1. Spoliation of evidence and inability to demonstrate proximate cause

2. Failure to warn

3. Warranty issues

4. Intervening and superseding acts.

## NO SPOLIATION OCCURRED AND PLAINTIFF CANNOT ESTABLISH PROXIMATE CAUSE

Plaintiff leads its response with a series of untruths. As noted infra, plaintiff represents, incorrectly, that CCI is a subsidiary of Allied Systems. The fourth and fifth paragraphs accuse Allied Systems (and by some tenuous connection, CCI) of having a motive to and actually destroying evidence.

Allied Systems had no motive to eliminate the evidence, and certainly had no reason to do so on CCI's behalf. The plaintiff was injured at the workplace, and is receiving appropriate worker's compensation benefits, which are the proper remedy. Although Allied Systems shares a parent corporation with manufacturer-defendant CCI, Plaintiff demonstrates his inability to understand corporate relationships and the financial meaning of a "bottom line" when he suggests that Allied Systems destroyed the accident cable in order to protect the collective bottom line of affiliate companies. If it were the case that Allied Systems and CCI were

effectively the same company and they did share a bottom line, it would function in CCI's favor that the cable was found both to disprove liability and to limit any recovery to worker's compensation.

Allied Systems did not assume the liabilities of CCI. Plaintiff is well aware that it was the policy at the time of the accident that all cables of the worn out type were to be destroyed so that they were not accidentally reused. (CCI Memo in Support of Motion for Summary Judgment, Weaver depo, "Wolf A", maintenance records, Allied Responses to Hanes Supply's First Set of Requests for Production of Documents, No. 2)

Allied Systems had no motive to destroy the cable, as workers compensation should have been the exclusive remedy. For the same reason Allied Systems had no reason to destroy the cable for benefit of CCI as: (1) No one anticipated litigation, (2) Allied Systems and CCI do not share a bottom line, and last (3) there is no evidence the accident cable was defective. There has been no attempt to deny Mr. Ferguson his rights and in fact he has obtained relief under the exclusive remedy of workers compensation.

Defendant CCI is not attempting to benefit from any alleged spoliation. However, the fact remains that the plaintiff is utterly unable to demonstrate the existence of proximate cause to support his case. As a matter of law summary judgment is appropriate when the plaintiff fails to establish proximate cause.

Plaintiff has provided no evidence on why the accident cable failed. Even if the Plaintiff could demonstrate a defect, there is no evidence that the defect was the cause of the accident cable failure. There is no way to know what stresses the accident cable was subjected to, and therefore no basis for comparison with any exemplar cable. The break in the exemplar studied

by expert Alexander and the break in the Ferguson cable are not at the same place, and there will never be any way to tell what different stresses the accident cable was subjected to.  Plaintiff suggests that the exemplar and the accident cable broke in the same place, which is a misstatement.  There is no cable to determine existence of any defect.  There is no way to tell why the cable failed.  There is no proof that a different design would have prevented the fall.  And there is no evidence that the accident cable was not properly maintained or what caused the break.  Any reference to exemplar cable is irrelevant because there is no way to know where it came from or how it separated

### ADEQUATE WARNINGS AND TRAINING REGARDING MAINTENANCE WERE PROVIDED

There were meetings on damaged cables and how employees should identify them, how employees should handle replacing worn cables and that they should be careful until such time as the cables were replaced.  Written notice was posted in an area with heavy employee traffic.  (Palladino depo p. 76).

There were instructions and warnings provided instructing employees to inspect cables for damage and to have damaged cables replaced.  Mr. Ferguson could inspect the cables to see A) If they were new design, and B) If there were any problems, rust, etc.  The statement that Ferguson, prior to his injury, was never told not to use the cables because they were failing is an outright misrepresentation.

Plaintiff represents that workers were never told not to use old cables.  This is not correct.  While neither CCI nor Hanes gave any warnings, Allied had several meetings and posted notice.  (Palladino p. 76).  The fact the Plaintiff stated in his Suggested Replies to CCI's Motion for

Summary Judgment: "The workers were told by Allied to continue to use the trucks even if the truck had old style cables. Defendant Allied has admitted that they would replace what cables they had replacements for when a truck was shopped and then return the truck to be used by the driver even if the old cables were on the truck. *Wolf depo. P.9, Shively depo. P.22, Weaver depo. P. 35.*" is evidence that this is an issue that was discussed and addressed at Allied. Defendant CCI did have meetings where warnings were issued and Palladino posted a warning after Thomas Fay's fall. (Palladino depo p.76).

Plaintiff asserts that it was not possible to distinguish between old and new replacement cables. However, the new cables were of a different design that was easily identifiable. Contrary to plaintiff's statement that Ferguson knew how to tell the difference, he testified that he knew three were replacement cables and one was an original. (Ferguson depo p. 35*)*

As the plaintiff shifts into legal arguments the simple issues become even murkier due to misstated holdings and selected quotations which are incomplete or out of context.

Plaintiff makes an untrue statement when he posits that Ferguson received "no warnings or instruction of any kind". ( Ferguson depo p. 34, 35, 36, 43). In support of its argument that CCI failed to warn and that the issue of proximate cause is in dispute and ought to be considered by a jury, plaintiff cites *Vernett v. Fred Christen and Son, Co.* 741 N.E. 2d 984 (Ohio App. 2000), a case originally cited in CCI's motion for summary judgment. In *Vernett* the court considered whether a press was defective due to inadequate warnings, and found that it was not. Plaintiff cites the Court as holding that "proximate cause is often a jury question". Plaintiff fails to include the second clause of the sentence, which in totem states: "While proximate cause is often a jury question, summary judgment is proper on this issue, when appellant has failed to meet his burden to produce evidence

to challenge unfavorable evidence already in the record." The Court in *Vernett* found that appellant failed to establish any proximate causation between the alleged lack of warning and the injury. The Court in this case should find the same. There is clear evidence of adequate warnings, and there is an utter failure to establish proximate cause between said failure to warn and the accident.

## BREACH OF IMPLIED WARRANTY

The breach of implied warranty claim ought to be defeated as a matter of law because when plaintiff was injured he had been warned that the cables were problematic and had been provided with an opportunity to remedy the situation.

## INTERVENING CAUSE PRECLUDES CCI FROM LIABILITY

Plaintiff last addresses the defense argument of intervening and superseding causation. Plaintiff's expert witness testifies that "but for Allied's negligence, Ferguson's accident would never have happened." (Alexander Report p. 33). Despite this, Plaintiff argues that the defense of intervening cause precludes summary judgment as a matter of law, positing that whether or not intervening cause exists is an issue to be determined by the trier of fact. In *Volter[1] v. C. Schmidt Company, Inc.,* 598 N.E. 2d 35 (Ohio App. 1991)*,* the court's analysis of "intervening acts" begins by acknowledging the difference between intervening acts as they relate to negligence claims, and intervening acts as they relate to strict liability. The court held that the defense of intervening causation may be invoked to avoid strict liability in a product liability case where the intervening cause is unforeseeable and is the proximate cause of the damage. Citing *R.H. Macy v. Otis,* 554 N.E.2d 1313 (Ohio1990), the court said if the act of a third party completely eliminated and hence made irrelevant the effect of the manufacturer's original act or omission, then the manufacturer is not liable. The Court went on to say (with regard to employer OSHA violations as intervening acts) that evidence of an employer's OSHA violations cannot be excluded from fact finders

---

[1]Plaintiff incorrectly cites to *Valter v. Schmidt.*

considerations. The Court indicated that an employers intentional tort does not always relieve manufacturer of strict liability as a matter of law. The *Volter* Court was unable to determine that an intentional tort had been committed. As a question of material fact remained, the case was remanded. *Volter* does not hold that there is no legal theory of intervening act, and it does not hold that an intentional tort or act committed by an employer can not be an intervening act.

Plaintiff cites *Leibreich v. A.J. Refrigeration, Inc.*, 617 N.E.2d 1068 (1993)[2], as approving a jury instruction on intervening cause, in a case where summary judgment had been granted for the manufacturer of a refrigerated truck. The truck driver left the truck running in order to keep the refrigerator cool. While the truck was unattended, the emergency brake failed and the truck struck several pedestrians. The manufacturer maintained that the truck driver's acts were unforeseeable, intervening and superceding causes, relieving the manufacturer of liability. The Court held that because the truck was intended to be used delivering flowers in hot weather, in the hilly Cincinnati area, and that a 40 degree temperature needed to be maintained, and therefore the truck needed to be running at all times, and the driver would be required to leave the truck to make deliveries, that some reasonable minds might conclude that it was foreseeable that the driver would leave the engine running when he left the truck to make a delivery.

For the analysis of Leibreich to be applicable and dispositive, the first question would be: is it foreseeable that when cables began to wear, that Allied Systems would fail to replace them? The question does not really need to be reached, because Allied Systems did in fact implement a program to replace the cables. The question becomes, was Allied Systems negligent, or in the alternative, did they commit an intentional tort, by failing to replace them more rapidly, or by failing

---

[2]It is unclear what relevance this jury instruction has to the instant case.

to remove the truck with old cables from service until the cables were replaced? Either way, the intervening cause

and/or omission of Allied Systems is the issue, and the burden of liability shifts from CCI, even if an alleged defect existed.

Plaintiff cites *Bleh v. Biro*, 756 N.E.2d 121 (Ohio App. 2001) for the proposition that use of an intervening superceding cause defense is precluded if the harm of the third party is within the scope of risk created by the original actions/conduct. Plaintiff argues that CCI created the risk in the instant case. However, Plaintiff has no way of proving this. Plaintiff cannot demonstrate what caused the failure of the accident cable. There is no evidence that the evidence cable was defective, which begs the "scope of risk" question.

In *Bleh*, the minor plaintiff's hand was partially amputated in a meat grinder. A product liability action was brought against the manufacturer of the grinder. This case is an excellent example of a situation where an injury alone is not proof of manufacturer liability. The plaintiff in *Bleh* was using a meat grinder under his father's supervision. Plaintiff failed to unplug the grinder while reassembling it. He accidentally leaned on the activation switch, causing it to activate and amputate most of his left hand. One of plaintiff's assignments of error was that the Trial Court erred in instructing the jury in superceding or intervening cause, because the failure to unplug the grinder was foreseeable and therefore not an intervening cause. An intervening cause was described by the court as "more typically, for example an intentional tort where a third party causes the harm, and that harm is not within the scope of the risk created by the original actors conduct." *Id.* at 441.

The Court found this to be harmless error, as there was no evidence, like in the instant case, that the original product was defective. Plaintiff Ferguson is unable to show that the original product was defective. Even if the Plaintiff could prove that, it is not within the "scope of risk" that Allied would fail, after having adequate notice, to replace worn cables.

Plaintiff goes on to argue without support or evidence, that there was in fact a defect. Plaintiff is unable to prove this, as the accident cable, is in fact, gone, and Plaintiff's expert has done no testing. Further, the Plaintiff cannot, in fact, demonstrate that any alleged defect existed at the time it left CCI's hands. Plaintiff presents its own definition of an intervening cause, to which CCI is unable to respond, as plaintiff fails to cite to any law. That "some Courts" have characterized a superceding cause as a "sole cause" of an injury is incorrect and without legal support. Even if this definition was supported by any authority[3], the sole cause of the accident was Allied's failure to replace the worn cables, and that failure is sufficient to break any chain of causation if there were an original defect at all.

Plaintiff suggests that *Bruns v Cooper*[4], 605 N.E.2d 395 (Ohio 1992), which held that the act of an employer providing a defective worn hammer sans the appropriate warning superceded the manufacturer's negligence is not good law.

In *Bruns* a worker brought a product liability action against the manufacturer of a hammer, after the hammer chipped and injured the worker. The Court of Common Pleas granted a summary judgment for the manufacturer. The Court of Appeals affirmed that the act of the employer was an intervening and superceding act, relieving the manufacturer of liabilities and that plaintiff failed to demonstrate a defect in the product at the time it left the manufacturer.

Plaintiff in this case suggests that *Bruns* is no longer good law. *Bruns* has not been overturned, abrogated or disagreed with by any other state or federal courts. Much like this case, in *Bruns*, the plaintiff was injured when using a worn piece of equipment. The warning had been

---

[3]Defendant CCI is unable to find any authority for an intervening cause to be the "sole cause" of an injury.

[4]Plaintiff incorrectly cites repeatedly to *Burns v. Cooper*.

13

obliterated by time, and not replaced by his employer. There was no evidence a defect existed at the time the hammer was manufactured. The Court acknowledged that the wear and tear on the warning label should have been foreseeable to the manufacturer, and suggested that the manufacturer may have been negligent in not using a more durable form of warning. The Court said that

> to establish liability under that theory, Bruns also needed to show that the lack of warning was the proximate cause of the accident and resulting injury. Under that theory of causation, however, the act of the employer, in providing the plaintiff with the hammer in a defective condition is also an active and efficient cause of the accident. While we cannot find the employer's act negligent as a matter of law, if [the manufacturer] was negligent under the plaintiff's theory, so was his employer. Any such negligence on the part of the employer is not, however, reasonably foreseeable by [the manufacturer]. The employer's act, therefore, supercedes the negligence of [the manufacturer] alleged by Bruns and as a bar to [the manufacturer's] liability to Bruns for injuries which its antecedent negligence may have been a substantial factor in bringing about

*Id.* at 400.

*Bruns* establishes that negligence on the part of an employer is not foreseeable by a manufacturer, and is therefore "outside the scope of risk", and "sufficient to break the chain of causation between an allegedly defectively designed product and plaintiff's injuries.

## CONCLUSION

For all of the foregoing reasons, CCI's motion for summary judgment should be granted.

DATED:   October 1, 2003

Respectfully submitted,

**LARSON & LARSON, P.C.**

/s/ David E. Larson
David E. Larson – Mo. Bar #27146
11300 Tomahawk Creek Parkway, Suite 310
Leawood, Kansas 66211
Telephone:   (913) 253-3100
Telefax:   (913) 253-3109
Email address: dlarson@larsonlaw.biz

and

**KOHNEN & PATTON**

Roger Schoeni
441 Vine Street, #1400
Cincinnati, Ohio 45202
Telephone:   (513) 381-0656
Facsimile:   (513) 381-5823

**ATTORNEYS FOR DEFENDANT
    RYDER SYSTEM, INC.**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 1st day of October, 2003, he electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties and that he also served the foregoing via United States Mail, first class postage prepaid to:

Thomas R. Koustmer
1800 Federated Building
7 West Seventh Street
Cincinnati, Ohio 45202

Michael J. Honorlaw
Honerlaw and Honerlaw Co, L.P.A.
9227 Winton Road
Cincinnati, Ohio 45202

Robert A. Winter, Jr.
Suite 200, 250 Grandview Drive
Ft. Mitchell, KY 41017

Craig R. Paulus
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202 - 3957

                                                    /s/ David E. Larson
                                                    Attorney for CCI