UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAVID FERGUSON, et al.

            Plaintiff,

                                                            C-1-02-039

  -v-

RYDER AUTOMOTIVE, et al.                      Judge Weber

            Defendants.

---

PLAINTIFFS' RESPONSE TO THE MEMORANDUM OF DEFENDANTS ALLIED IN
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

      Defendants' Allied have responded to Plaintiffs' Motion For Summary Judgment by copying the facts alleged by Allied in their previously filed Motion For Summary Judgment filed on July 9, 2003. Plaintiffs have answered that Motion and shown many of the alleged facts to be false in Plaintiffs Answer to Defendants Allied Motion For Summary Judgment pleading No. 119, filed September 22, 2003. Plaintiffs incorporate that pleading herein and will not just rewrite same herein but respond specifically to the issues herein.

      First, Defendants Allied admit in this pleading that the Allied Defendants and Commercial Carriers, Inc., were affiliated companies in that each was owned by the same parent company, Allied Holding. Furthermore, deposition testimony is that Allied assumed the liabilities of all the trucks and cables that had been built by Commercial Carriers, Inc. (Terzain depo. P.67). Commercial Carriers changed to Allied sometime in 1997. (Palladino depo. P.13). There is some evidence that the Defendants Allied and the Defendant Commercial Carriers, Inc., have a joint defense agreement. (Affidavit of Thomas R. Koustmer filed 07/08/03, Exhibit No.

3, P.35).

Secondly, Defendant Commercial Carrier, Inc., has filed a Motion For Summary Judgment in this Court on July 9, 2003, Document 80 stating that because Plaintiffs can not produce the actual cable, Defendant Commercial Carriers, Inc., is entitled to summary judgment on proximate causation grounds. Commercial Carriers, Inc.,'s expert witness, Mr. Sauer, states:

> "It is my professional opinion within a reasonable degree of engineering certainty that with the evidence at hand and lack thereof, no definite conclusion can be formulated in this failure situation."

Mr. Sauer's conclusion is the absence of a failed part in conjunction with the poor photographic documentation of the failure makes an engineering analysis of this situation impossible to perform. Therefore, Defendants Allied have both protected themselves as well as protected Commercial Carriers, Inc. Commercial Carriers, Inc., now files a Motion For Summary Judgment based upon same.

Thirdly, the Defendants Allied continue to make the absurd assertion that the cable was destroyed so it would not be used again. How could you use a broken cable again? This is an absurd argument. Mr. Shively admitted that there is no danger of reusing a broken cable. (Shively depo. P.8).

Fourthly, the facts are clear that Defendants Allied had the cable and discarded same knowing litigation would ensue. Defendants Allied have stated in their Motion For Summary Judgment that they were aware of injuries and suits involving employees falling from these trucks. Furthermore, one month prior, Mr. Fay had fallen because of a broken cable. Mr. Weaver's testimony, even when changed by Allied, established possession of a cable by management. However, even though Plaintiffs requested cables from the beginning of this lawsuit, Defendants Allied always stated there were none available. However, later a union

steward produced one for Plaintiff. Mr. Weaver's testimony is as follows:

    A.    I was at a vendor. The next day I was briefed by Tom Heller that it happened. He said Mike Palladino was involved with the investigation and also the report. We have a first report of injury we make, okay? And that's where it was left at, with safety. This individual took care of the safety. And I'm not sure what they did the next day on it because I was never consulted about it.

    Q.    But you did ask Mr. Palladino at some point in time, where's the cable?

    A.    Yes. I asked him if he had the cable.

    Q.    And he said yes?

    A.    He said yes.

    Q.    Did you ever talk to him about that again?

    A.    Not about the cable, no.

    Q.    Did you ever talk to anyone else in the company or outside of the company about, where is the cable?

    A.    No.

    Q.    You never inquired to Mr. Palladino if he still has the cable?

    A.    No.

    Q.    Have you inquired of anyone else if they still have the cable?

    A.    No.

    Q.    Do you know where the cable is today?

    A.    No, I don't.

    Q.    And what was Mr. Palladino's position there at the time?

    A.    He was safety quality supervisor.

    Q.    Now, were you involved with replacing the broken cable on Mr. Ferguson -- the truck he was using that day?

    A.    No.

      Q.      Did you see the truck he was using that day?

      A.      No.

      Q.      After the fact?

      A.      No.

(Weaver depo at 10, 11).

Now Mr. Weaver's description of the incident is the following on his signature sheet that he filed with the deposition:

> The day I got back, I had a casual conversation with Tom Heller and, in turn, he spoke to me about Mr. Ferguson falling off a truck. I asked him how it happened and he told me that a cable broke and that he had fallen through that. So, in turn, we talked a little about it. I asked how Ferguson was, etc. And I also asked him where the old cable was at. Mr. Heller said that he was not sure, but he thought Mike Palladino had it. I left it at that, because generally when something would happen like that, Mike Palladino, being the safety man would impound that and hold it pending an investigation. Later on (<u>it might have been 1-2 weeks later</u>), Mike called and asked me some questions about cables and the policies on whether we were changing them and how often we were getting to change them, etc. I then asked Mike if he had the cable to Ferguson's truck. He said, "<u>Well, I've got a cable</u>." That is all that was said. I did not ask anymore, since I figured it was in investigation and it wasn't any of my business. (Emphasis added)

Mr. Palladino was the person who was the Supervisor and took the first report of injury from Mr. Ferguson. Mr. Palladino was Safety Supervisor on the date of the injury September 7, 2000, and investigated same. (Palladino depo at P.16). Mr. Palladino was aware and also had investigated an injury to a Thomas Fay on August 8, 2000, in which the same type cable broke causing injury. (Palladino depo. At P.17). Despite same, there is no cable. Mr. Palladino destroyed the cable or someone from Allied destroyed the cable. There was a cable by either explanation of Mr. Weaver. Where is it? Destroyed to protect Commercial Carriers, Inc., and Allied.

Now, Allied knowing this evidence, decides to change Mr. Shively's testimony by

Affidavit filed September 23, 2003 stating that he did not know of the corporate relationship between Allied and Commercial Carriers, Inc., and he disposed of the cable. However, Mr. Shively testified in his deposition taken February 20, 2003:

> Q. Do you know what happened to the broken cable that was involved in Mr. Ferguson's injury?
>
> A. No, sir.

(Shively depo. P. 8).

However, Mr. Palladino, Safety Supervisor, by his own testimony, admitted to knowing Allieds corporate structure. Mr. Palladino testified that Commercial Carriers, Inc., changed to Allied sometime in 1997. (Palladino depo. P. 13). Mr. Palladino knew of other broken cables and of the injuries to Mr. Fay and Mr. Ferguson. (Palladino depo. Pp. 22 and 23). Mr. Palladino is the one who now cannot account for the cable.

Allied argues without reasoning that the cable was destroyed in the ordinary course of business because the Allied maintenance personnel were instructed to cut up and discard old cables so they could not be reused. (Allied Memorandum P. 10). However, Allied supposed innocent justification does not hold up under scrutiny. Mr. Shively, Allied Maintenance, has admitted that there is no chance of using a broken cable. (Shively depo. P. 8). The Allied company policy applicable is to retain all parts involved in an accident, even if it's just worker's compensation. (Weaver depo P. 9). Neither Mr. Palladino nor Allied has provided any justification for deviation from Allied's own company policy. The only plausible reason is to protect the admitted parent company of both Allied and Commercial Carriers, Inc., because a loss to Commercial Carrier, Inc.'s bottom line is the same as a loss to Allied's bottom line. (Terzain depo. Pp. 68 and 69). Now Commercial Carrier, Inc., files a Motion For Summary Judgment on the theory that the cable can not be produced. These are the true facts.

The Defendants Allied have made a habit of trying to change testimony late or produce evidence late. Defendants Allied actions only support Plaintiff's Motion concerning the destruction of this evidence. For the record, Plaintiff's counsel has from the beginning of this litigation requested in discovery any similar cables or this cable. This was not Defendants counsel's idea but a valid discovery request. Defendants Allied have repeatedly provided information late or not at all. For example, Allied just filed a 26A Disclosure on September 22, 2003, ten months late and five months after discovery cut-off and two months after Motions For Summary Judgment were filed. The time limit per the Scheduling Order for 26A disclosure was November 8, 2002, almost a year ago. The discovery cut-off was in April, 2003. Plaintiffs have repeatedly requested in Interrogatories for names of relevant witnesses. Now, after even the Motion For Summary Judgment deadline, Defendants Allied make a new 26A disclosure. Defendants Allied have repeatedly been involved with this type of discovery abuse.

During discovery depositions, Defendants Allied would walk into depositions with documents which should have previously been produced. Defendants Allied have tried to change their employees sworn testimony taken at depositions. In fact, co-Defendant Hanes has filed a <u>Motion to Strike the Errata of Allied employee William Weaver</u>. Plaintiff would concur in the reasoning of Defendant Hanes as to same.

Now, Defendants Allied attempt to change the testimony of Allied employee Richard Shively by Affidavit filed September 23, 2003. This is five months after discovery cut-off and eights months after Mr. Shively's deposition. Plaintiff objects to same. Mr. Shively testified to the opposite in his deposition taken February 20, 2003. He specifically testified:

> Q. Do you know what happened to the broken cable that was involved in Mr. Ferguson's injury?
>
> A. No, sir.

(Shively depo. P. 8).

Further, Defendants Allied although repeatedly requested to produce any examplar cable, said none existed. However, Plaintiff was provided an examplar by the union steward. After discovery cut-off, Allied then miraculously allegedly finds four examplars. Defendants Allied, three months after discovery cut-off, two months after Plaintiff's expert was deposed and right before Motions For Summary Judgment were to be filed suddenly finds some cables. Plaintiff, through a union steward, had found examplar cables a year prior.

Furthermore, Mr. Terzain of Commercial Carrier, Inc., back in February, 2003, claimed these type cables are still on trucks in Buffalo. (Terzain depo. P. 90).

These actions only support the fact that Defendants Allied will do whatever is necessary with evidence to win this case. Plaintiff should not be forced to redo its case (ie. depositions, reports, etc.) after discovery cut-off and Motions cut-off and expert witness depositions because Defendants Allied purposefully has not followed their own retention rules and the discovery rules of this Court. These actions by Defendants Allied show willfulness.

ARGUMENT

The Plaintiffs have submitted facts to this Court that can not with reason be denied by Defendants Allied despite their attempts to change the testimony of witnesses after the fact.

The case cited by the Defendant does not state that Plaintiff must plead spoliation of evidence specifically *Mortyork v. Moore* (6th Dist. 2000 W.L. 123417). Rather, spoliation of evidence can be a remedy on discovery abuses or on the facts. Plaintiff has shown that pending or probable litigation involving the Plaintiff existed. Defendant admits to workers compensation litigation which can include VSSR violation or safety violation which increase workers compensation benefits. These are included in "pending or probable litigation." The cable would

be relevant to a VSSR claim.  Defendants admit this litigation was probable.  After all, Mr. Fay fell one week prior due to a broken cable and Mr. Palladino was aware of breaking cables.  Further, Defendant has admitted that many lawsuits exist involving falls from these trailers (ie. "the most dangerous occupation").

      Plaintiffs have shown willful destruction of evidence by Mr. Palladino either of this very cable or <u>a cable</u> and that this destruction was designed to disrupt Plaintiffs' case.  Commercial Carrier, Inc., has moved for summary judgment because of the destroyed cable and/or lack of photographs of same.  Commercial Carriers, Inc., and Defendants Allied admittedly have the same parent company Allied Holdings.  The destruction of this evidence has disrupted Plaintiffs' case and made it more difficult for Plaintiffs.  All of which has proximately caused Plaintiffs' injury.

      Therefore, this Plaintiff Ferguson has met every one of the elements, namely: "(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts."  *Smith v. Howard Johnson Co*. (1993), 67 Ohio St.3d 28, 29, 615 N.E.2d 1037, 1038.  *In Sheets v. Norfolk Corp.*, 671 N.E.2d 1364 1370 (1996).

      WHEREFORE, the Plaintiffs Mr. and Mrs. Ferguson move this Court to grant their Motion For Summary Judgment filed herein.

      Respectfully submitted,

_____
Thomas R. Koustmer   (0008410)
1800 Federated Building
7 West Seventh Street

        Cincinnati, Ohio 45202
        (513) 621-3616

        _____
        Michael J. Honerlaw (0034469)
        Honerlaw & Honerlaw Co., LPA
        9227 Winton Road
        Cincinnati, Ohio 45231
        (513) 931-2200

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served electronically to the following this _____ day of October, 2003:

Kenneth Robert Schoeni
Kohnen & Patton
201 E. Fifth Street
Cincinnati, Ohio 45202
(513) 381-0656
Attorney for Defendants, Ryder System Inc;
and Commercial Carriers, Inc.

David E. Larson
Larson & Larson PC
11300 Tomahawk Creek Parkway, Suite 310
Leawood, KS 66211
Attorney for Defendants Ryder System Inc.,
And Commercial Carriers, Inc.

Robert Albert Winter, Jr.
Hemmer Spoor Pangburn DeFrank & Kasson PLLC
250 Grandview Dr., Suite 200
Ft. Mitchell, KY 41017
(859) 344-1188
Attorney for Defendants, Allied Systems and
Allied Automotive Group

Craig R. Paulus, Esq.
Taft, Stettinius & Hollister LLP
PNC Center
201 E. Fifth St., Suite 800
Cincinnati, Ohio 45202-3957
Attorney for Defendant Hanes Supply, Inc.

                                                _____
                                                Thomas R. Koustmer
                                                Attorney for Plaintiff