UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| DAVID FERGUSON, <u>ET</u> <u>AL</u>. : | |
| : | Case No. C-1-02-039 |
| **Plaintiffs** : | |
| : | Judge Herman J. Weber |
| v. : | |
| : | **MEMORANDUM OF** |
| RYDER AUTOMOTIVE CARRIER : | **DEFENDANTS ALLIED** |
| SERVICES, INC., <u>ET</u> <u>AL</u>. : | **SYSTEMS, LTD. AND ALLIED** |
| : | **AUTOMOTIVE GROUP, INC.** |
| **Defendants** : | **IN OPPOSITION TO** |
| : | **PLAINTIFFS' MOTION TO** |
| : | **QUASH THE AFFIDAVITS AND** |
| : | **WITNESS DISCLOSURES OF** |
| : | **SCOTT MACAULAY AND** |
| : | **LYNN BUCKHALT** |

**I.    INTRODUCTION.**

This memorandum is provided by defendants Allied Systems, Ltd. and Allied Automotive Group, Inc. (together, the "Allied Defendants") in opposition to the *Motion to Quash/Strike the Affidavits of Scott McCauley* [sic] *and Lynn Buckhult* [sic] *and the Defendants Allied 26A Disclosures filed September 22, 2003 and October 3, 2003* (the "Motion") of plaintiffs David Ferguson and Martha Ferguson (together, the "plaintiffs").  For the reasons set forth below, the Motion should be denied.

**II.    DISCUSSION.**

   **A.    Mr. Scott Macaulay.**

Mr. Scott Macaulay testified that is the Vice President and Treasurer of Allied Holdings, Inc., a Georgia corporation.  (Affidavit of Scott Macaulay, ¶1)  He further states that the Allied Defendants

and defendant Commercial Carriers, Inc. ("CCI") are affiliated in that each company is owned by the same ultimate parent company, Allied Holdings, Inc. (*Id*. ¶7)

Mr. Macaulay's testimony was necessitated by plaintiffs' unilateral and unauthorized expansion of their claims against the Allied Defendants. Prior to the filing of plaintiffs' motion for summary judgment against the Allied Defendants, the only claims asserted against them were Mr. Ferguson's *Blankenship* intentional tort claim and Mrs. Ferguson's derivative loss of consortium claim. (Docket #29, *Second Amended Complaint*, Counts V and VII) Within their summary judgment motion (Docket #76), plaintiffs first proposed asserting a spoliation of evidence claim against the Allied Defendants without leave of Court. Within that motion, plaintiffs argued that judgment should be entered against the Allied Defendants because they possess an evil motive intentionally to discard the broken cable that had been removed from Mr. Ferguson's truck since it would harm plaintiffs' products liability claims against CCI, and the Allied Defendants and CCI were related entities. (Docket # 76, *Plaintiffs' Motion for Summary Judgment Against Allied Systems, Inc.* [sic] *and Allied Automotive Group for Spoliation of Evidence*, filed July 9, 2003, at pages 7-11) Plaintiffs also argued in a subsequent brief (Docket #118) that this evil motive created a genuine issue of material fact precluding the grant of the Allied Defendants' own summary judgment motion (Docket #84). Plaintiffs presented their argument on the unpled spoliation claim, in part, through the affidavit of a previously undisclosed witness, Thomas R. Koustmer, Esq. (Docket #76), who attempts to inject an uncertified court order and a transcript of an oral argument. Those documents attempt to form the basis of plaintiffs' desperate effort to create: (i) needless confusion about the relationship between the Allied Defendants and CCI, and (ii) an issue of fact to preclude the grant of summary judgment in favor of the

Allied Defendants. Given the nature of plaintiffs' argument, their assertion of an unpled spoliation claim at the eleventh hour, and plaintiffs' counsel's injection of himself into the case as a witness for the purposes stated above, it was entirely appropriate for the Allied Defendants to supply the testimony of Mr. Macaulay to address conclusively their relationship to CCI, albeit on an out-of-time basis. There is no prejudice to plaintiffs or any other party by this presentation of evidence.

Plaintiffs argue that the Allied Defendants should have read their counsel's mind and known that Mr. Macaulay's testimony might have been relevant by February 2003, when CCI's consultant, Mr. Peter J. Terzian, Jr., supposedly testified that the Allied Defendants assumed the liability for all trailers that had been previously manufactured by CCI. (Motion at 2-3) However, Mr. Macaulay does not address whether or not the Allied Defendants assumed those liabilities. His testimony addresses the relationship between the Allied Defendants and CCI.

Second, when Mr. Terzian's deposition testimony is read as a whole, it is evident that he did <u>not</u> say that the Allied Defendants assumed CCI's liabilities. Mr. Terzian clearly stated that CCI was responsible for its own liabilities arising from its tractor manufacturing activities:

Q. That Commercial Carriers, Inc. is still in existence?

A. Yes, sir.

Q. Correct? And its liabilities, if I understand, were assumed by – have been assumed by Allied Holding, Inc.?

A. They – there's a limited partnership in Allied something, okay? **But CCI is still responsible for the trailers they built, if that answers your question.** (Terzian dep. 72) (emphasis added)

Finally, Mr. Terzian's opinion with regard to whether or not the Allied Defendants assumed CCI's liability should be inadmissible at trial. In order for plaintiffs to show that the Allied Defendants, Allied Holdings, Inc. or any other entity assumed CCI's liabilities, plaintiffs must satisfy the statute of frauds with regard to the enforcement of promises to answer for the debts of another that are not in a writing signed by the party to be charged. *See generally* R.C. §1335.05. Any opinion or unsubstantiated belief that the Allied Defendants assumed CCI's liabilities is proof of nothing, and did not place them on notice that a witness like Mr. Macaulay needed to be disclosed with regard to the topic of their relationship with CCI.

### B. Ms. Lynn Buckhalt.

Ms. Buckhalt was the general manager of Allied Parts Connection, Inc. ("APC") from 1999 to 2001. (Affidavit of Lynn Buckhalt, ¶1) She states, among other things, that APC was the Allied Defendants sole source of supply of repair parts throughout that period. (*Id*. ¶2) **She also states that the new, nylon coated, stainless steel replacement cables that looked somewhat similar to the cables being replaced were <u>first</u> shipped to the Allied Defendants by APC no earlier than October 2000 – one month after Mr. Ferguson's alleged accident.** (*Id*. ¶¶4-6 and Exh. A thereto) Ms. Buckhalt's testimony naturally debunks Mr. Ferguson's argument that he thought that the cable on his truck that broke (the other three being of the eye-bolt type of replacement cable) was of the new, nylon coated, stainless steel type -- and not the old type that he was repeatedly told to watch out for and have replaced.

Mr. Ferguson knew or should have known that the cable that broke was of the old style variety, based upon his experience and training. However, his own negligence in conducting the pre-trip inspection of his truck is germane to the negligence and product liability claims he asserts against the other defendants in this case. Nevertheless, the Allied Defendants disclosed Lynn Buckhalt as soon as they became aware that the testimony from the appropriate person at APC might be relevant.

In any event, there is no undue prejudice from the disclosure because the substance of her testimony was already made known to all parties. Defendant Hanes Supply, Inc. ("Hanes Supply") caused subpoenas to be issued to both Sycamore Parts and Logistics, Inc., which is APC's successor, and also to the parts supplier discussed by Ms. Buckhalt within her affidavit, C.C. Sharrow. Hanes Supply's subpoenas sought, among other things, copies of all purchase orders and invoices for goods sold, supplied or shipped to the Allied Defendants or, in C.C. Sharrow's subpoena, to Sycamore prior to November 2000. Counsel for Hanes Supply stated that plaintiffs were aware of those subpoenas and received copies of all documents that were produced. Remarkably, C.C. Sharrow's invoices reveal that none of the new, nylon coated, stainless steel replacement cables that bore a resemblance to the old style cables were shipped to the Allied Defendants until one month after Mr. Ferguson's alleged accident. The substance of Ms. Buckhalt's testimony is clearly discernable from the review of C.C. Sharrow's invoices, there is no undue prejudice to plaintiffs and there is no reason to strike her testimony.

As an aside, Hanes Supply did not disclose any employees of APC or C.C. Sharrow as possible witnesses in the case. Hanes Supply was the party in the best position to do so, since it perceived a need to issue subpoenas to obtain invoices concerning the supply of replacement cables to

the Allied Defendants. It apparently dealt with those entities to obtain compliance therewith and may have became acquainted with their personnel during that process.

Plaintiffs argue that they are unduly prejudiced by not having the opportunity to depose Mr. McCauley and Ms. Buckhalt during discovery. As set forth above, that is not the fault of the Allied Defendants. In any event, since the Court has set the trial of this action for its May 2004 term, the Allied Defendants do not object to a brief enlargement of discovery to enable plaintiffs to depose those two witnesses.

### C.  Miscellaneous.

Plaintiffs renew their diatribe of alleged discovery abuses by the Allied Defendants in an apparent attack upon their disclosures and affidavits of Mr. Macaulay and Ms. Buckhalt. Each claim of abuse is without substance.

First, plaintiffs' counsel states that the undersigned "would walk into depositions with documents which should have been previously produced." (Motion at 1) No specific instances are recited. A review of deposition transcripts and the record reveals no instance where plaintiffs' counsel objected to the Allied Defendants' alleged untimely production of documents. The undersigned cannot recall an instance where documents were produced immediately prior to a deposition. It is not possible to respond to that accusation without additional specifics and a showing of undue prejudice to plaintiffs.[1]

---

[1] The Allied Defendants' research reveals that the only time the record shows that documents or other materials were first produced immediately prior to a deposition was plaintiffs' production of two cables that are being

Plaintiffs repeat the argument that the maintenance manager of the Moraine terminal, Mr. William C. Weaver, supposedly wrongfully changed the substance of his deposition testimony by way of errata sheets. (Motion at 1-2) The Allied Defendants have conclusively shown in prior memoranda (Docket #91 and 92, among others), that Fed. R. Civ. P. 30(e) authorizes deponents to change the substance of their testimony in that manner. As a practical matter, there is no reason for complaint about the errata sheet change, since Mr. Weaver: (i) gave plaintiffs and Hanes Supply notice on a pre-trial basis that his deposition testimony was incorrect, and (ii) supplied them with corrected testimony. He subsequently stated the reason for making that change within his Affidavit. That method of compliance with Rule 30(e) is completely consistent with the procedures set forth in *United States v. Piqua Engineering, Inc.*, 152 F.R.D. 565, 566-567 (S.D. Ohio 1993), except that Mr. Weaver supplied the reason for his change prior to having been ordered to do so.

Plaintiffs' counsel also rehashes the refreshed testimony of Mr. Richard H. Shively, the maintenance mechanic at the Moraine terminal that replaced the broken cable on Mr. Ferguson's tractor the day after the alleged accident, by arguing that Mr. Shively's refreshed memory by a review of the truck's maintenance records is somehow improper. (Motion at 2) However, plaintiffs' counsel only has himself to blame for the conduct of he now complains.

Mr. Shively stated during his deposition that he could not recall repairing the truck after Mr. Ferguson allegedly sustained his fall because he had replaced many cables on a lot of trucks in complying with Mr. Taggart's directive:

---

palmed off as being of the type that were being replaced by the Allied Defendants under John Taggart's directive. That production occurred on November 21, 2002, immediately prior to the deposition of Mike Palladino. (Palladino dep. 5-7)

> Q. Okay. And that [Mr. Ferguson's fall] occurred on September 7th of 2000. Did you have anything to do with fixing the truck after he fell off it?
>
> A. I couldn't recall that. I did so many of them.
>
> Q. Would you recall around that period of time replacing a cable that was broken?
>
> A. Like I said, sir, I replaced a lot of cables. There was a campaign going on. We did them all of the time. I don't remember truck numbers or dates. I really don't. (Shively dep. 7)

Plaintiffs' counsel took the depositions of two other maintenance personnel besides Mr. Shively on February 20, 2003 -- Messrs. Frederick L. Wolf and William C. Weaver. Approximately six months prior to that deposition, the Allied Defendants produced copies of the maintenance records for the tractor at issue as a part of their initial Fed. R. Civ. P. 26(a)(1) pre-discovery disclosures. (Docket #31, *Pre-Discovery Disclosures of Defendants Allied Systems, Ltd. and Allied Automotive Group*, filed August 6, 2002, at page 2) All parties either deposed or had the opportunity to depose Messrs. Weaver, Wolf and Shively about those maintenance records and the activities that occurred to the tractor on September 8, 2000. Mr. Wolf was examined on those records by both Hanes Supply and plaintiffs (Wolf dep. 38-40 and 44 and Exh. A thereto), as was Mr. Weaver by Hanes Supply only (Weaver dep. 44-45 and Wolf Exh. A thereto)

For whatever reason, plaintiffs' counsel decided not to present those maintenance records to Mr. Shirley in an effort to refresh his memory about the repair activities that took place on the truck on September 8, 2000. Had Mr. Shirley been presented with and examined on those records, his memory would have been refreshed and he would have provided the testimony presently found within his affidavit. Of course, it is entirely proper to refresh a witness' memory with a document. Fed. R. Evid.

612. Plaintiffs' counsel's deposition examination procedures are matters of litigation tactics for which the Allied Defendants cannot be responsible.

Plaintiffs' counsel continues to rant about the disposition of the broken cable the day after Mr. Ferguson's alleged accident. (Motion at 2) At the risk of repetition, Mr. Shively testified that it was his practice to dispose of all removed cables upon replacement, in accordance with Mr. Taggart's directive. That practice was uniformly applied. Mr. Ferguson's broken cable was treated in a manner no different from any other old style cable that had been removed by the Moraine terminal's maintenance personnel.

Finally, plaintiffs state that they repeatedly requested the Allied Defendants to produce exemplar cables. (Motion at 2) However, the Allied Defendants could unearth no requests made by plaintiffs under Fed. R. Civ. P. 34 for the production of old type cables. In any event, as soon as a set of old style cables became available, the Allied Defendants voluntarily notified all counsel of their discovery and availability for inspection, examination and non-destructive testing. Counsel for both plaintiffs and Hanes Supply inspected them. Further, upon request, the Allied Defendants transferred those cables to Hanes Supply for further examination. It is simply disingenuous for plaintiffs to argue that the Allied Defendants were too slow in producing cables where: (i) no request for production was ever made of them under Rule 34, and (ii) cables were found and produced at a time well after Mr. John Taggart had issued his directive in January or February 1999 to replace all old style cables as soon as possible within reason.

**IV.    CONCLUSION.**

For the reasons set forth above, the Motion should be denied in accordance with the terms of the *Order* tendered contemporaneously herewith.

                          S/Robert A. Winter, Jr.
                          Robert A. Winter, Jr. (0038673)
                          250 Grandview Drive, Suite 200
                          Ft. Mitchell, KY 41017
                          (859) 344-1188
                          (859) 578-3869 (fax)
                          Trial attorney for defendants
                          Allied Systems, Ltd. and
                          Allied Automotive Group, Inc.

## **CERTIFICATE OF SERVICE**

I certify that true and correct copies of the foregoing were served by either electronic transmission or by depositing the same into the United States Mails, first class postage prepaid, on this 31st day of October 2003, to:

Thomas R. Koustmer, Esq.
1800 Federated Building
7 West Seventh Street
Cincinnati, OH 45202

Michael J. Honerlaw, Esq.
Honerlaw and Honerlaw Co., L.P.A.
9227 Winton Road
Cincinnati, OH 45231

K. Roger Schoeni, Esq.
Kohnen & Patton LLP
PNC Center, Suite 800
201 East Fifth Street
Cincinnati, OH 45202

David E. Larson, Esq.
Larson & Larson PC
11300 Tomahawk Creek Parkway
Suite 310
Leawood, KS 66211

Craig R. Paulus, Esq.
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202

                                                                                S/ Robert A. Winter, Jr.
                                                                                Robert A. Winter, Jr.

s:\dma\allied\ferguson\pleadings\memorandum of defendants.wpd