



February 26, 2003

CORPORATE HEADQUARTERS:

3361 Executive Pkwy, Suite 102

Toledo, Ohio 43606

888/676-7898 • 419/578.5984

419/536.7056 (FAX)

Michael Honerlaw
Attorney at Law
Honerlaw and Honerlaw
9227 Winton Road
Cincinnati, Ohio 45231

RE: David E. Ferguson

Dear Mr. Honerlaw:

At your request, David Ferguson was interviewed and tested on February 25, 2003 for the purpose of assessing his loss of capacity to perform work and earn money, if any, as a result of an injury that occurred on September 7, 2000.

A standard vocational interview reveals Mr. Ferguson to be a 53-year-old semi-skilled worker who, in 1966, graduated from LaPorte High School in LaPorte, Indiana. From 1967 to 1969, Mr. Ferguson served with the United States Army in Viet Nam.

From 1970 to 1985, Mr. Ferguson worked for Dunlap Trucking in Fairfield, Ohio performing the duties of a Tractor Trailer Operator. The work was semi-skilled in nature and medium in terms of physical demand. Medium work requires a frequent lift, carry, push, pull of weight up to 25 pounds with a maximum lift, carry, push, pull of weight up to 50 pounds. In addition, the work required climbing, balancing, stooping, crouching, reaching, handling, fingering, talking, hearing, and seeing.

In 1985, Mr. Ferguson began working for Complete Auto Transit, later renamed Allied Systems, LTD, performing the duties of a Tractor Trailer Operator. He worked in this capacity up until the time of his injury on September 7, 2000.

On September 7, 2000, Mr. Ferguson was involved in a work-related accident when a safety cable broke causing him to fall 12 feet to the ground first striking his back on the truck. He was transported to Kettering Memorial Hospital, x-rayed, and referred to an orthopedic surgeon. He participated in

OFFICE LOCATIONS:

Cleveland, Columbus,

Detroit, Toledo

conservative treatment to include medication, physical therapy and steroid injections.

He has been diagnosed with "Acute and chronic left L5 radiculopathy as a result of facetal hypertrophy in neural entrapment at L5-S1". He is currently being treated with pain and anti-inflammatory medications.

Mr. Ferguson reports that he experiences "sharp back pains" in the low back region. At times, he must use a TENS unit to relieve pain. If he engages in too much physical activity, his back gets stiff and tight.

Sitting is tolerated for less than 20 minutes. His leg will fall asleep and he will need to keep shifting is weight.

He is able to walk a distance of approximately 100 yards on the family farm. Walking back uphill is very painful. While stepping down on his left foot, he experiences immediate pain.

He reports being able to stand, but he must lean on something for support.

Mr. Ferguson states that he experiences nearly constant numbness and tingling from his left toes up to his left hip. At times, the pain he experiences will take on a "burning" sensation. This occurs unpredictably. His leg tends to "fall asleep" all the time. He often loses his balance.

Mr. Ferguson reports periodic mood swings with sadness and irritability. He notes, "This thing has devastated us. No money, no property, no life". He has had to give up activities such as horseback riding, trap shooting, and archery.

In March 2001, Mr. Ferguson returned to Allied Systems, LTD with restrictions for light duty only. His duties involved office work, shuttle driver, and cleaning out cars. He was unable to work as a Tractor Trailer Operator and was laid off at least 2 times prior to November 2002, at which time he was told that there was no light duty work available. He has not returned to work since.

At the time of the interview, Mr. Ferguson was administered the Slosson Intelligence Test (SIT), a test of intelligence or general learning ability, and the Wide Range Achievement Test (WRAT3), a measure of word recognition and arithmetic achievement. The tests were administered to assess Mr. Ferguson's vocational potential.

On the SIT, Mr. Ferguson obtained an IQ score of 115 and a percentile ranking of 82%. He is above average in terms of intelligence or general

DEC-19-2003 FRI 04:50 PM HONERLAW & HONERLAW     FAX NO. 5132322003     P. 04
Case 1:02-cv-00039-HJW-TSB   Document 153-3   Filed 12/23/2003   Page 3 of 4

3

learning ability as measured by the SIT. On the reading sub-test of the WRAT3, he obtained a standard score of 102 and a percentile ranking of 55%. On the arithmetic sub-test, he obtained a standard score of 52 and a percentile ranking of .09%. Scores obtained on the reading and arithmetic sub-tests of the WRAT3 reveal that he is average in terms of his reading achievement and below average in terms of his arithmetic achievement as measured by the WRAT3.

In assessing Mr. Ferguson's present capacity to perform work, the medical reports of Martin L. McTighe, M.D. (September 29, 2000 to July 10, 2001), John M. Roberts, V, M.D. (January 2, 2001 to November 11, 2001) and Mitchell E. Simons, M.D. (November 29, 2001 to October 10, 2002) were reviewed.

With consideration given to the information gathered during the interview with Mr. Ferguson, it is my opinion that, as a result of injury, Mr. Ferguson's vocational profile is now one of a variety of semi-skilled work that is sedentary in terms of physical demand and requires no more than an above average degree of intelligence. In addition, he should seek occupations that would allow for frequent alternate sit/stand while working in a sedentary position.

Moreover, he is unable to perform the full range of duties required of him and thus meets the U.S. Department of Commerce definition of having an occupational disability. Specifically, there is a limitation in terms of the amount of work he can perform as a result of physical impairment.

Additionally, the government notes that those who meet this definition can expect to have reduced work life.

An individual's power to earn money is a function of their capacity to perform work. Capacity to perform work is predicated upon a series of measurable factors identified by the U.S. Department of Labor as worker trait characteristics. The traits and characteristics associated with the performance of specific occupations include both physical and intellectual attributes. Physical attributes are defined as the "physical demands" of a particular occupation, and intellectual attributes are referred to as "aptitudes." Aptitude refers to an individual's potential or capacity to learn. One aptitude that is both measurable and predictable is intelligence or general learning ability, defined as "the ability to 'catch on' or understand instructions and underlying principles." It is the ability to reason and make judgments.

In assessing Mr. Ferguson's post-injury capacity to perform work and earn money, a computerized analysis of over 12,000 separate occupational titles contained in the <u>Dictionary Of Occupational Titles</u> was conducted. Each occupational title was then cross-referenced by the physical demands,

DEC-19-03 FRI 05:00 PM HONERLAW & HONERLAW FAX NO. 15139312229 P. 02
Case 1:03-cv-00039-HBM Document 153-3 Filed 12/23/2003 Page 4 of 4

4

working conditions, and the intelligence level or general learning ability required to perform each occupation satisfactorily. Each occupational category is cross-referenced by the number of workers in the Ohio Labor Market and the median 1998 National earnings for workers within each occupational category. The U.S. Department of Labor, Bureau of Labor Statistics, and the U.S. Department of Labor, Employment, and Training Administration provide data used in the analysis.

It is my opinion that Mr. Ferguson's pre-injury capacity to earn money is best represented by the actual earnings that accrued to him as a Tractor Trailer Operator for Allied Systems, LTD.

His lifetime loss of power to earn money is the difference between his present expected earnings, based on his capacity to perform work, and the earnings that would have accrued to him as a Tractor Trailer Operator.

As a result of injury, Mr. Ferguson's present vocational profile is now one of a variety of semi-skilled work that is sedentary in terms of physical demand and requires no more than an above average degree of intelligence. In addition, he should seek occupations that would allow for frequent alternate sit/stand while working in a sedentary position.

A computerized occupational analysis reveals that such work constitutes 4.03% of the jobs existing in his local labor market. Jobs, which Mr. Ferguson retains the capacity to perform, do not exist in significant numbers in his local, state, or national economies.

Therefore, based on Mr. Ferguson's current age (53-vocationally advancing), his physical/exertional restrictions, and lack of access to the jobs in his local labor market, it is my opinion that Mr. Ferguson is competitively unemployable.

Please advise if further information is desired.

Sincerely,

Rod W. Durgin, Ph.D.
Vocational Assessments, Inc.

RWD/asv
Enclosure