UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DAVID FERGUSON, et al. | : | File No. C-1-02-039 |
| | : | |
| Plaintiffs, | : | Judge Herman Weber |
| vs. | : | |
| | : | DEFENDANTS' JOINT REPLY IN |
| RYDER AUTOMOTIVE CARRIER | : | SUPPORT OF THEIR MOTION FOR |
| SERVICES, INC., et al. | : | AN ENTRY OF AN ORDER |
| | : | AMENDING THE SCHEDULING |
| Defendants | : | ORDER |

The Defendants will not burden the Court by detailing the misstatements in the Plaintiffs' Objection and Answer to Defendants' Motion to Amend the Scheduling Order. Likewise, the Defendants will not correct every transparent attempt by the Plaintiffs to use concessions and statements by his employer in a workers' compensation case against the product liability Defendants in this case.

The Defendants' most important point is conceded by the Plaintiffs, namely that "the medical condition of Mr. Ferguson . . . is on-going and has always been on-going." Plaintiffs' Objection and Answer, Doc. 153 at 2. The Plaintiff's doctors – who also happen to be his expert witnesses – continue to treat his ever-changing condition. For example, previously surgical intervention was not recommended for Mr. Ferguson's condition. Exhibit A, Ferguson depo. at 11-12. But now, "we need to get him in to see a spine surgeon as soon as we can." Exhibit B, Follow Up Note of Dr. Simons dated July 17, 2003. Whether the change from not "a surgical candidate" to "see a spine surgeon as soon as we can" is regarded as newly discovered evidence or not, it is a material change that affects the Defendants' ability to respond to the accusations

leveled against them. The Plaintiffs' expert witness/doctors apparently feel that Mr. Ferguson's condition has changed since discovery closed and that his condition will improve with surgery. Therefore, the change in the Plaintiff's condition and further changes likely to result from his surgery will greatly affect his claim for pain and suffering, even if he doesn't work again. Perhaps most importantly, the fact remains that discovery for this case closed almost a year before the trial now set for May, 2004.

The Defendants do not seek to reopen all discovery. Rather, as indicated in Defendants' Joint Motion, the purpose of their request is to discern the nature and scope of Mr. Ferguson's new disc tear and address Mr. Ferguson's changing medical condition. As Mr. Ferguson's doctors/experts continue to treat him, the testimony they will provide at trial will change. The Defendants should be permitted to keep abreast of those changes. Likewise, the Plaintiffs have expressed interest and concern in certain defense witnesses and a reopening of discovery will afford the opportunity to depose them.

The Plaintiffs do not articulate any actual prejudice from giving the Defendants updated medical discovery. Logically, only if Mr. Ferguson's condition is improving can the Plaintiffs show any prejudice. But, if that is the case, prejudice to the Defendants and the fact finding mission of the jury could not be more clear. The Plaintiffs nevertheless insist that the Defendants proceed to trial with stale evidence and without accounting for continuing medical developments that include a proposed surgery that may greatly improve Mr. Ferguson's condition.

Lastly, because it illustrates the flaws in the Plaintiffs' argument, one factual contention by the Plaintiffs does require comment. On page 7 of its Answer and Objection, the Plaintiffs claim that the Defendants knew about damage to the L4-L5 position of the Mr. Ferguson's spine

from his medical records, and attach "Exhibit 7" as proof of this fact. However, that exhibit is dated July 10, 2003 - well after the June 9, 2003 deadline for the Defendants to designate their experts. The MRI that exhibit references was taken after the close of discovery, is not in the Defendant's possession, and the Plaintiffs refuse to release it. It is the same MRI that Dr. Simons cites in his notes indicating that Mr. Ferguson needs to see a surgeon. See Exhibit B.

Obviously, as the Plaintiffs concede, Mr. Ferguson's on-going condition is in a state of flux. Given the unusually long lag time between the close of discovery and the start of trial in this case, as well as Mr. Ferguson's changing condition, updated discovery is warranted and the Defendants' Joint Motion for an Entry Amending the Scheduling Order should be granted.

Respectfully Submitted,

*/s/ Robert A. Winter, Jr. by Craig Paulus per email authorization*
Robert A. Winter, Jr.
Hemmer Spoor Pangburn DeFrank PLLC
250 Grandview Drive, Suite 200
Ft. Mitchell, KY 41017
859.344.1188
Attorney For Defendants, Allied Systems and Allied Automotive Group

*/s/ K. Roger Schoeni by Craig Paulus per email authorization*
K. Roger Schoeni
Kohnen & Patton
PNC Center, Suite 800
201 E. Fifth Street
Cincinnati, OH 45202
513.381.0656
Trial Attorney For Defendants, Ryder Automotive Carrier Services, Inc.; Ryder System Inc.; Delavan Industries, Inc.; Ryder Automotive Operations, Inc.; Ryder Automotive Carrier Group, Inc.; and Commercial Carriers, Inc.

Of counsel:

David E. Larson
Larson & Larson PC
11300 Tomahawk Creek Parkway, Suite 310
Leawood, KS 66211

*[signature: Craig R Paulus]*

Craig R Paulus (0074352)
TAFT, STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957
513.381.2838
513.381.0205 (fax)
Trial Attorney for Hanes Supply, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing has been sent electronically through the Court's ECF/CMS system to the following on this 5th day of ~~December, 2003~~: *(January), 2004.*

Thomas Ralph Koustmer
1800 Federated Building
7 West Seventh Street
Cincinnati, OH 45202
513.621.3616
Attorney For Plaintiffs, David and Martha Ferguson

Michael J. Honerlaw
Honerlaw and Honerlaw Co. L.P.A.
9227 Winton Road
Cincinnati, OH 45231
Attorney For Plaintiffs, David and Martha Ferguson

*[signature: Craig R Paulus]*

W0105350.1

# EXHIBIT A

1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION

- - - - - - - - - - - - - - -

DAVID FERGUSON, et al.,   :
                          :
                          :
        Plaintiffs,       :
    vs.                   :   Case No. C-1-02 039
                          : (Judge Herman J. Weber)
RYDER SYSTEM, INC., et    :
al.,                      :
                          :
        Defendants.       :

- - - - - - - - - - - - - - -

Deposition of DAVID EDWARD FERGUSON, plaintiff herein, called by the defendants for cross-examination, pursuant to the Federal Rules of Civil Procedure, taken before me, Wendy L. Welsh, a Registered Diplomat Reporter and Notary Public in and for the State of Ohio, at the offices of Kohnen & Patton, 1400 Carew Tower, Cincinnati, Ohio, on Thursday, November 21, 2002, at 1:18 a.m.

D FER Ferguson, et al. vs. Ryder Systems, et al.
November 11, 2002
Case 1:02-cv-00039-HJW    Document 155    Filed 01/05/2004    Page 7 of 9
DAVID EDWARD FERGUSON

Page 10

1  A. It's related to the pain control.
2  Q. How effective is the regimen that you're
3  under now as far as pain management is concerned?
4  A. The new regimen I'm under, it is better.
5  It's considerably better than what it was before I
6  went on it, but I still have a lot of pain.
7  Q. I take it that your pain levels ebb and
8  flow a little bit based upon the level of activity
9  that you do, would that be correct? Get worse and
10 get better depending on how much you're moving
11 around?
12 A. Well, no, sir. Usually the level of pain
13 is more consistent with the medication, what time I
14 take what medication. If I take the morphine,
15 naturally I'm going to have a better morning than I
16 have a night.
17 Q. So as the medicine starts to wear off is
18 when you start to feel a little bit more sensitivity
19 to the pain?
20 A. Sure.
21 Q. Just as we're sitting here today during
22 the previous deposition and this one, on a scale of
23 one to ten how would you rate your pain?
24 A. Five to six.

Page 11

1  Q. And where is the pain located?
2  A. Lower lumbar region.
3  Q. Are you having any problems into either
4  leg?
5  A. My left leg, it goes numb on me.
6  Q. Is there any pain there or is it just the
7  numbness?
8  A. Just the numbness.
9  Q. I think I saw in your records a few
10 occasions where you had actually fallen because of
11 some numbness in your leg.
12 A. My leg, I -- on several occasions I've
13 lost the use of my leg. I fell and broke my right
14 toe on my right foot, my big toe on my right foot.
15 And I put a gash in my left leg on the second
16 occasion it happened.
17 Q. Due to falls?
18 A. Yes, sir.
19 Q. Have any of your treating doctors
20 indicated that you would benefit from surgery?
21 A. Dr. Roberts told me that I wasn't a
22 candidate at the time, that he would like to try the
23 pain management because he told me that the type of
24 surgery he would do I would be back within a year to

Page 12

1  repeat the surgery. And I told him that surgery was
2  not an option for me, that I'd like to try the pain
3  management so I could go back to work. And that's
4  what me and him agreed on and that's when I started
5  the pain management.
6  Q. Have you been back to Dr. Roberts since
7  you started on the pain management protocol?
8  A. No, sir, I haven't. No, sir.
9  Q. But I understand correctly that although
10 the pain management regime you're under now is an
11 improvement over what you had you're still not to
12 the level where you think you can go back to work as
13 a car hauler?
14 A. I couldn't do the heavy car hauling,
15 lifting, no, sir, I couldn't, I don't believe, I
16 couldn't --
17 Q. How about driving a truck, but not being
18 involved with the cargo, is that something that you
19 would be suited for at this point?
20 A. That part, sir, I don't know. I would
21 have -- I can't sit for no four or five hours
22 without having to get up, nothing like that.
23 Q. Have you discussed that possibility with
24 Dr. Simons or any of the other doctors about other

Page 13

1  types of work that you might be able to do provided
2  you could stand up and stretch and that sort of
3  thing?
4  A. The only thing I've discussed with them,
5  sir, is the fact that I want to go back to work at
6  my job at Allied hauling cars to get my time in with
7  the Teamsters.
8  Q. By getting your time in, to get to your
9  retirement level?
10 A. Yes, sir.
11 Q. How much more do you need to do that?
12 A. I need six years.
13 Q. Do you currently have a Workers'
14 Compensation claim pending, or has that been
15 resolved?
16 A. I'm -- they give me a check each -- well,
17 they haven't gave me a check in a while, but they
18 were giving me a check.
19 Q. Okay.
20 A. But I haven't received anything in a
21 while.
22 Q. Has there been any final disposition
23 insofar as a permanent rating on your back or
24 anything like that?

# EXHIBIT B

FERGUSON, DAVID
7/17/03

FOLLOW-UP DR. SIMONS

Mr. Ferguson is here for follow-up. He continues to have trouble with pain in his back and leg and actually it has gotten worse lately. The MRI shows actually a tear in his disc and that is something we need to address because obviously it is due to the sciatica problem and the sprain/strain situation that is all work related. This trouble with the radicular symptoms and work related condition needs to be treated with 2 more epidural steroid injections, which we will of course guide fluoroscopically and also there are some facet nerves involved again that need to be addressed and this will help control his pain. In the meantime we need to get him in to see a spine surgeon as soon as we can. We are going to increase his Kadian to 50 mgs. a day and change his Norco over to Actiq sticks, which will be at 400 micgs. We will get a kidney and liver profile to check his blood chemistry to make sure everything is going okay there and make sure there are no adverse effects from the work related medications. We will see him back for follow-up in a month and hopefully by then we have the epidural authorized and done. He understands the risks of steroid use and the epidurals as well.
Mitchell E. Simons, M.D./ns