**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **DAVID FERGUSON, et al.,** | : | Case No.  C-1-02-039 |
| | : | |
| Plaintiffs, | : | Judge Herman J. Weber |
| | : | |
| v. | : | **PLAINTIFFS' MEMORANDUM IN** |
| | : | **OPPOSITION TO DEFENDANTS'** |
| **RYDER AUTOMOTIVE CARRIER** | : | **COMMERCIAL CARRIERS, INC., AND** |
| **SERVICES, INC., et al.,** | : | **RYDER SYSTEMS, INC., MOTION TO** |
| | : | **STRIKE EXPERT WITNESS WITH** |
| Defendants. | : | **SUPPORTING AFFIDAVIT OF** |
| | : | **GABRIEL ALEXANDER, P.E., AND** |
| | : | **EXHIBITS ATTACHED** |

Now comes Plaintiffs, by and through counsel, and submit the following Memorandum of Law in opposition to Defendants' Commercial Carriers, Inc., and Ryder Systems, Inc., Motion to Strike Expert Witness.  Said Motion is not well taken and must be overruled by this Court for the reasons set forth in the following Memorandum of Law.

    Respectfully submitted,


    s/ Michael J. Honerlaw (0034469)
    Honerlaw & Honerlaw Co., L.P.A.
    Attorney for Plaintiffs
    9227 Winton Road
    Cincinnati, OH  45231
    (513) 931-2200
    mike@honerlaw.com

    s/ Thomas R. Koustmer
    1800 Federated Building
    Seven West Seventh Street
    Cincinnati, OH  45202
    (513) 621-3616
    ktkoustmer@aol.com

**MEMORANDUM OF LAW**

On or about February 26, 2004, Defendants, Commercial Carriers, Inc. and Ryder Systems, Inc. filed the instant motion to strike the expert testimony of Plaintiffs' expert witness, Gabriel Alexander, P.E. Said motion for the most part seems to reiterate the arguments that were previously made by other co-defendants, Hanes Supply, Inc., Allied Systems, Ltd. and Allied Automotive Group, Inc. Said co-defendants previously filed motions seeking to exclude the testimony of Gabriel Alexander, P.E. Plaintiffs have already responded to said motions and those motions are now pending before the Court. There is very little new substantive argument in the instant motion filed by Defendants, Commercial Carriers, Inc. and Ryder Systems, Inc.

**INTRODUCTION**

Defendants begin their Memorandum by setting forth various alleged facts that they deem pertinent to the resolution of this issue. However, Plaintiffs take exception to a number of the alleged facts.

First of all, Defendants state that "The broken cable in question was not retained and is not available for inspection or testing." (Page 2) There is some dispute as to what occurred to the cable in question after Mr. Ferguson was injured. This Court has already ruled upon whether corrections made to the deposition of Mr. Weaver should be stricken. At the deposition, Mr. Weaver testified that Mike Paladino, an employee of Allied Automotive Group, Inc., had possession of the defective cable. In any event, the cable apparently has been destroyed in violation of Defendants, Allied Systems, Ltd. and Allied Automotive Group, Inc.'s own policies to retain said evidence in the case of known injuries. Due to the apparent destruction of this critical evidence, there are claims of spoliation of evidence pending before the Court.

2

Defendants argue that beginning in 1999 a few cables were discovered to be broken and that the "breakage was undetermined." (Page 2) From the evidence that has been gathered in this case, it appears that the reason for the breakage is clear that the cables became severely corroded and simply broke in two as a result of this process over an extended period of time. Defendants next argue that there were "capacity issues that limited the number of replacement cables that could be shipped to each terminal." (Page 2) Defendants argue that "demand exceeded supply." (Page 2-3) As Plaintiff was not injured until September 7, 2000, it appears that this supply and demand argument simply fails. William Hanes testified at his deposition that there were over 100 manufacturers that could have provided these cables and that they could have been produced in a very brief period of time.

## GABRIEL ALEXANDER, P.E. MEETS REQUIREMENTS OF FEDERAL RULE OF EVIDENCE 702

Defendants request that this Court disregard the totality of evidence offered by Plaintiffs' expert liability witness, Gabriel Alexander, P.E., arguing that Plaintiffs' expert is unqualified to testify. However, Defendants misinterpret *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and other case law interpreting Federal Rule of Evidence 702.

In *Daubert*, United States Supreme Court clarified the standard for admissibility of scientific expert testimony under Rule 702. Under *Daubert*, the trial court must, as a preliminary matter, determine whether the proper testimony is relevant and reliable. In making this determination, the court should consider the following non-exclusive factors:

1. Whether a theory or technique can be (and has been) tested;

2. Whether theory or technique has been subjected to peer review and publication;

      3.      The known or potential rate of error in using a particular scientific technique and the existence and maintenance of standards controlling the technique's operation; and

      4.      Whether the theory or technique has been generally accepted in the particular scientific field.

*Daubert,* 113 S.Ct. at 2796-2797.

In delineating these factors, the Supreme Court noted, "the inquiry envisioned by Rule 702 is . . . a flexible one. Its overarching subject is the scientific validity – and thus the evidentiary relevance and reliability of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 2797.

Moreover, the Sixth Circuit states, "*Daubert* sets out a "flexible" and more lenient test that favors the admission of any scientifically valid expert testimony." *United States v. Bonds*, 12 F.3d 540 (1993).

Upon remand of *Daubert*, the court added that expert testimony "based directly on legitimate, pre-existing research unrelated to the litigation provides the most persuasive basis for concluding that the opinions expressed were 'derived by the scientific method'." *Daubert II*, 43 F.3d at 1317.

Defendants attached Gabriel Alexander, P.E.'s report as it pertains to his findings in this matter to its motion. Said report clearly establishes sound reasoning and scientific evidence to substantiate the conclusions made by Gabriel Alexander, P.E. As a result, Gabriel Alexander, P.E.'s testimony cannot be excluded in this matter.

## GABRIEL ALEXANDER, P.E. HAS THE SPECIALIZED TRAINING AND EXPERIENCE TO TESTIFY IN THIS MATTER

Defendants next argue that Gabriel Alexander, P.E. lacks specialized training and experience and, therefore, his testimony should be excluded. This was the same argument set forth by co-defendant, Hanes Supply, Inc. As was noted in Plaintiffs' Memorandum in Opposition to Defendant, Hanes Supply Inc.'s motion to exclude the testimony of Plaintiffs' expert witness, Gabriel Alexander, P.E. is well educated and well qualified to testify in this matter. *See* Affidavit of Gabriel Alexander, P.E. attached hereto and marked Exhibit 1. He has testified in a number of truck related cases throughout state and federal courts in this country. His CV has previously been submitted to Defendants and this Court. Defendants take issue with Gabriel Alexander, P.E. testifying concerning wire rope and his opinion that the galvanized wire rope was not the appropriate cable to be used. However, Gabriel Alexander, P.E.'s opinion is consistent with all of the evidence submitted to this Court. Specifically, the evidence indicates that the safety cables were to last the life of the truck which would be approximately ten years. The cables in question began failing in 1999 when they were only put into the stream of commerce in 1994. Therefore, the galvanized safety cables were failing in less than half the time that was anticipated. Gabriel Alexander, P.E. testified that stainless steel cables should have been used under these circumstances. His testimony is completely consistent with the testimony provided by William C. Hanes of Hanes Supply, Inc. He, too, testified that stainless steel cables would have been the appropriate cable to have been used to prevent the corrosion that ultimately caused the failure of the defective safety cables. Gabriel Alexander, P.E. came to the same

conclusion that William C. Hanes came to based upon his own training and expertise. As a result, the testimony must be allowed.

### GABRIEL ALEXANDER, P.E. HAD SUFFICIENT FACTS AND DATA TO RENDER AN EXPERT OPINION

Defendants next argue that there are insufficient facts or data upon which Mr. Alexander could base any expert opinion. They base this on the fact that Defendants destroyed the cable in question prior to it being examined by Plaintiffs' expert witness. However, this assertion is untrue.

On the very day that the Plaintiff sustained his severe injuries, photographs were taken of the actual cable that failed while it was still attached to the truck that the Plaintiff was operating. Close up photographs depict the corrosion that was apparent on the failed cable. Gabriel Alexander, P.E. had an opportunity to examine the photographs at great length. He also had the opportunity to examine an exemplar cable that Plaintiffs secured. It is respectfully submitted that the exemplar cable and the photographs taken of the actual failed cable that caused Plaintiff's injuries, are extremely similar. This will be a question for the jury to ultimately decide. Defendants argue that there is a great difference between the exemplar cable and the photographs. If that is the case, they may present the evidence to a jury and let the jury decide what is more believable.

Obviously, Defendants should not be allowed to escape liability by simply having the evidence destroyed in violation of their own policies. Plaintiffs have provided their liability expert with the best evidence that is available in this case (i.e., photographs taken of the failed

cable) and he has been able to render conclusions based upon those photographs as well as examination of the exemplar cable and other well-established scientific information.

### GABRIEL ALEXANDER, P.E. APPLIED RELIABLE PRINCIPLES AND METHODS TO SUPPORT HIS CONCLUSIONS

Defendants next argue that Mr. Alexander failed to apply reliable principles and methods in basing his testimony in this matter. The Affidavit of Gabriel Alexander, P.E. attached hereto demonstrates that this clearly is not the case. Said Affidavit clearly sets forth the reliable principles and methods that were used by Mr. Alexander to support his analysis of the failed cable. Defendants clearly have taken a number of statements out of context in an attempt to otherwise confuse the issues. The Affidavit of Gabriel Alexander clearly establishes that he is well qualified and his testimony firmly grounded in scientific evidence. As a result, it would be improper to attempt to exclude his testimony as the Defendants have argued.

### GABRIEL ALEXANDER, P.E.'S OPINION WILL ASSIST THE TRIER OF FACT

Careful reading of the report of Gabriel Alexander, P.E. (copy of which was filed with the Defendant's Motion) clearly demonstrates that his opinion will clarify matters and make things easily understood by the trier of fact. The report submitted by Gabriel Alexander, P.E. demonstrates that he will base his testimony upon well-reasoned adequately supported facts that are in the record of this case.

### DEFENDANTS SHOULD NOT BENEFIT FROM INTENTIONAL DESTRUCTION OF EVIDENCE

Defendant CCI and Ryder continue to assert that because the actual cable was improperly destroyed by Defendant Allied that Plaintiff then cannot have an expert. As previously briefed

by Plaintiff and Defendant Hanes, Defendant Allied's destruction of the evidence can be inferred to be a deliberate attempt to protect itself from suit. Plaintiff has filed a Motion For Summary Judgment on the spoliation of evidence. Defendant Hanes amended their Answer to claim a spoliation of evidence against Defendant Allied. Incidently, Mr. Hanes, owner of Defendant Hanes, agrees with Plaintiff's expert that the cables were not designed for a 10-year life span and would rust out. (Hanes depo. Pp. 71, 72 previously filed). Mr. Hanes stated that stainless steel is a better choice, more corrosion resistant. (Hanes depo. P. 70). Mr. Hanes stated that the material used in the cable, galvanized aircraft cable, was not suitable for a 10-year life span. (Hanes depo. P. 71). That stainless steel was a more appropriate material for those safety cables in question. (Hanes depo. P. 72). Furthermore, the area that did break was in fact susceptible to corrosion at the threaded stud and vinyl coating. (Hanes depo. P. 73). All of these opinions are the same opinions of Plaintiff's expert, Gabriel Alexander. (Attached Affidavit of Gabriel Alexander, Exhibit 1).

 Furthermore, Allied's destruction of evidence can also be inferred to CCI and Ryder because CCI's parent is Defendant Allied. CCI was a wholly owned subsidiary of Ryder.

 Therefore, Defendant Allied's who is a parent company of CCI, destruction of evidence is an attempt to protect CCI and itself from liability in this matter. This has been briefed on previous Motions before this Court.

 As indicated by Plaintiff's Exhibit 2, attached hereto, "Defendant Ryder is the ultimate parent of Defendant Commercial Carriers, Inc." Whereas, Defendant Allied then became the ultimate parent of Defendant Commercial Carriers, Inc., and Defendant Allied is to "manage control all litigation claims, settlement and settlement discussions relating to trailer claims."

(Exhibit 2 attached). Therefore, the destruction of the cable by Allied is a direct benefit to Allied and Ryder and CCI and for CCI and Ryder to claim Plaintiff's expert cannot testify because of the destruction is disingenuous at best. The same insurance policy applied to Defendant Allied, Defendant CCI and Defendant Ryder. (Exhibit 3 attached). Furthermore, Allied assumed the liabilities of CCI for lawsuits stemming out of the manufacture of the trailers. (Exhibit 4, Terzain depo. P. 118 filed 11/15/03 attached).

The action of Allied's destruction of the evidence can be imputed to CCI and Ryder. CCI and Ryder cannot claim because of the destruction of evidence that Plaintiff's expert should not be able to testify.

## CONCLUSION

The testimony of Gabriel Alexander, P.E. is helpful, reliable and relevant. His testimony corroborates the testimony of the President of Defendant, Hanes Supply, Inc., wherein both agree that galvanized cable was inappropriate under the facts of this case. Both witnesses indicate that stainless steel cables should have been used. Gabriel Alexander, P.E.'s testimony will inform the jury and allow them to make a knowledgeable and appropriate verdict in this matter. As a result, his testimony must be allowed and Defendants' motion to strike his testimony should be overruled.

Respectfully submitted,

s/ Michael J. Honerlaw (0034469)
Honerlaw & Honerlaw Co., L.P.A.
Attorney for Plaintiffs
9227 Winton Road
Cincinnati, OH 45231
(513) 931-2200
mike@honerlaw.com

          s/ Thomas R. Koustmer
          1800 Federated Building
          Seven West Seventh Street
          Cincinnati, OH  45202
          (513) 621-3616
          ktkoustmer@aol.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing has been served upon Robert A. Winter, Jr., Esq., Hemmer Spoor Pangburn DeFrank, 250 Grandview Drive, Suite 200, Ft. Mitchell, KY 41017, Craig R. Paulus, Esq., Taft, Stettinius & Hollister, 425 Walnut Street, Suite 1800, Cincinnati, OH  45202 and David E. Larson, Esq., Larson & Larson, 11300 Tomahawk Creek Pkway, Suite 310, Leawood, KS  66211 by electronic transmission on the _____ day of March, 2004.

          s/ Michael J. Honerlaw (0034469)
          Honerlaw & Honerlaw Co., L.P.A.
          Attorney for Plaintiffs