## LICENSE AND
## JOINT DEFENSE COOPERATION AGREEMENT

This Agreement is entered into this 30th day of September, 1997 by and between Ryder System, Inc. ("Ryder"), Commercial Carriers, Inc. ("CCI"), Manufacturing Holding Corp. ("Holding") and Allied Holdings, Inc. ("Allied"), (Ryder, CCI, Holding and Allied hereinafter collectively referred to as "the Parties").

WHEREAS, Ryder is the ultimate parent corporation of CCI;

WHEREAS, CCI has conducted certain operations and business involving the design, manufacture, repair and refurbishment of specialized automotive transportation equipment ("Trailer Manufacturing") as well as operating as a motor carrier in the transportation of motor vehicles ("Trucking");

WHEREAS, there are pending and threatened certain Trailer Claims (as such term and other capitalized terms used herein without definition are defined in the below described Acquisition Agreement) with respect to CCI and/or its predecessors;

WHEREAS, Allied, Ryder and their related entities have entered into an Acquisition Agreement as of August 20, 1997, whereby Allied would become the ultimate parent of CCI through a stock acquisition (the "Acquisition Agreement");

WHEREAS, under the Acquisition Agreement, Ryder was to refrain, in a manner mutually acceptable to Ryder and Allied, from conveying the Trailer Manufacturing operations of CCI to Allied or its affiliates;

WHEREAS, under the Acquisition Agreement an affiliate of Allied is to manage and control the handling of all litigation claims, settlement and settlement discussions relating to Trailer Claims;

WHEREAS, under the Acquisition Agreement Ryder is to make available any employees of Ryder and its affiliates with reasonable knowledge of matters relevant to Trailer Claims and is required to require any purchaser of the CCI Trailer Manufacturing assets or business to cooperate with defense of Trailer Claims and provide witnesses having knowledge or custody of matters relevant to the claim, at no cost or expense to Allied or its affiliates other than cost of travel;

WHEREAS, CCI has sold the business and assets of Trailer Manufacturing previously conducted by CCI ("CCI Manufacturing"), as set forth on Schedule A attached hereto (the "Trailer Manufacturing Business"), to Holding;

WHEREAS, under the Acquisition Agreement, Ryder is to receive certain indemnifications, as set forth therein, from Allied; and

WHEREAS, Allied and Ryder have entered into a letter agreement ("Letter") dated September 26, 1997 and in accordance therewith desire to enter into this Agreement;

WHEREAS, the Parties desire to provide for an effective joint defense mechanism between the Parties and'desire to eliminate any ambiguity created as between the Acquisition Agreement, the transfer to Holding, and the anticipated future sale of the Trailer Manufacturing Business;

NOW, THEREFORE, in consideration of the above and foregoing, the mutual agreements and covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree, notwithstanding anything to the contrary in any of the agreements, resolutions and other documents evidencing the sale of the Trailer Manufacturing Business from CCI to Holding (the "CCI Manufacturing Acquisition Documents") or the Acquisition Agreement, as follows:

1.    All information, documents and property, including but not limited to, intellectual property, business records, memoranda, drawings and materials ("Litigation Property") which is in the possession of insurance companies, claims agents, litigation consultants, attorneys or paralegals which concern or relate to the Trailer Claims are the property of CCI and have not been conveyed under the CCI Manufacturing Acquisition Documents. Notwithstanding the foregoing, the Litigation Property shall be used solely and exclusively for purposes of the investigation, evaluation, settlement, insurance, indemnification and defense (collectively, "Defense Activities") of Trailer Claims and shall not be used by Allied or its affiliates, including CCI, or their successors for any other purpose.

2.    With respect to trailers which were manufactured by CCI or its predecessors on or before September 30, 1997, all business records, sales records, invoices, manufacturing records, all manufacturing blueprints, all C.A.D. drawings, all engineering history files (including but not limited to shipping goals, loan manuals, test load results/reports, model configurations, engineering meeting notes, miscellaneous meeting notes and engineering change notices) and all technical service bulletins with respect thereto (collectively "Resource Materials"), shall remain within the ownership, dominion, custody and control of Holding upon the Closing but shall be subject to a fully paid, non-exclusive, non-terminable and irrevocable license granted to CCI and its assigns for the sole and exclusive purpose of use in Defense Activities concerning present or future Trailer Claims. CCI, Allied and their affiliates and subsidiaries, as well as their successors and assigns, shall have future full access to the foregoing materials set forth in this paragraph at reasonable times and upon reasonable notice or upon two hours notice (to the extent practicable with the use of Holding's best efforts) in the event that exigencies of litigation or investigation require same, and their employees and consultants may enter upon the premises of Holding upon such notice, and have full access to the foregoing materials and documents and have the right to make copies of same, all for the sole and exclusive purpose of investigating or defending any Trailer Claims or losses related thereto. In addition, within sixty (60) days hereof, Allied will identify which of the foregoing documents it desires to have copied for its permanent possession, solely and exclusively for the purposes described herein, and Holding will cause such copies to be delivered to Allied within thirty (30) days thereafter. Any other property, whether tangible or intangible, in documentary or electronic form, which may be used or useful in the defense of

0162386.06                                    2

Trailer Claims which is within the possession, dominion or control of Holding or Ryder, shall be subject to access, inspection and copying by the employees or agents of CCI or Allied, or their respective affiliates, upon the preceding notice requirements, provided the use thereof is confined solely and exclusively to the investigation, defense or settlement of present or future Trailer Claims. Each of the Parties shall be responsible for all of its out-of-pocket costs in connection with this paragraph, other than out-of-pocket costs to third parties with respect to copying of information, which out-of-pocket copying costs shall be shared equally by Ryder and Allied. Holding shall maintain the integrity and safety of the materials described herein, and, subject to paragraph 4 below, shall not sanction, suffer or permit their inspection by anyone other than the Parties hereto without Allied's prior written consent.

3.      All Litigation Property located on the premises of any CCI terminal or CCI Manufacturing within the metropolitan Buffalo, New York area which are labelled or otherwise commonly known as "Product Liability" files shall be jointly owned by Allied and Holding. The original copies thereof shall be delivered to Allied and shall be used by it and its affiliates solely and exclusively for Defense Activities relating to Trailer Claims. Holding shall be provided with copies thereof, at the expense of Ryder, by November 30, 1997 and shall use same solely and exclusively for the purpose of Trailer Manufacturing.

4.      All of the Parties hereto agree and acknowledge that all information of any kind, whether written or oral, tangible or intangible, or whether in documentary or electronic form, which concerns, relates to or arises from present or future trailer claims, the defense thereof, or the design or manufacture of any trailers by CCI or its predecessors on or before September 30, 1997, shall be deemed confidential and shall not be disclosed by any Party to any non-party for any reason whatsoever except if and to the extent legal process mandates same. In the event that any Party hereto receives legal process purporting to compel the disclosure of any of the foregoing information, it shall promptly notify the other Parties in writing thereof, shall seek to limit the production of such information to the extent permissible, and, at the other Party's request, shall seek protective orders preserving the confidentiality of any of the materials so disclosed pursuant to legal process. The Party desiring the protective order shall pay the reasonable costs of obtaining such protective order, and all Parties will cooperate with all other Parties in seeking such protective orders or other limitations.

5.      Any information or documents in the possession or control of the Trucking division of CCI or of other Ryder subsidiaries or affiliates, such as owner's manuals, maintenance records, shop reports, driver reports, repair notices or records, notices, bulletins, and other documents used or useful by them in the ordinary course of operation, maintenance or upkeep of trailers manufactured by CCI or its predecessors on or before September 30, 1997 shall remain owned by such division or entity and shall not be conveyed to Holding.

6.      Holding shall advise Allied no less frequently than quarterly of the location and domicile of Resource Materials. It shall provide Allied with sixty (60) days prior written notice of any proposed sale, transfer, relocation, or destruction of Resource Materials and shall not sell, transfer, relocate or destroy the Resource Materials, or any portion thereof, without Allied's written consent, such consent not to be unreasonably withheld or denied. In the event of any proposed destruction of Resource Materials, or any portion thereof, Allied may require Holding

0162386.06                                3



to deliver same to Allied in lieu of their destruction with Allied paying the reasonable cost thereof. Ryder and Holding agree that, upon the reasonable request of Allied, they will provide to Allied the services of those of their employees, if any, having knowledge of matters relevant to Trailer Claims, or the defense thereof, for the purpose of meetings, testimony, depositions, or investigation, at no cost to Allied or its affiliates, other than costs of travel.

7.    Upon the occurrence of an Event of Default by Holding, Allied shall have the right to enter upon the premises of Holding and make copies, at their own expense, of all Resource Materials for the sole and exclusive purpose of use in Defense Activities concerning present or future Trailer Claims. An Event of Default shall consist of: (a) a declaration of insolvency, act of bankruptcy, or filing for protection from creditors under state or federal law; or (b) the filing of an involuntary petition for bankruptcy which is not dismissed within 30 days thereof; or (c) a foreclosure, attachment or levy upon the assets of Holding; or (d) a breach of this Agreement by Holding which is not remedied within ten (10) business days after written notice. Ryder and Holding agree to promptly notify Allied in writing of the occurrence of an Event of Default.

8.    This Agreement shall not be subordinate to the security interest of any secured party of Holding, and Holding shall obtain the prior written consent of any secured party prior to the execution of this Agreement in a written form reasonably satisfactory to CCI and Allied.

9.    Ryder, in consultation with Allied, will engage in and attempt to sell the Trailer Manufacturing Business to a party other than Holding or otherwise liquidate such Trailer Manufacturing Business prior to December 31, 1997, any such sale or liquidation to be subject to Allied's approval. Ryder agrees that it will not sell or transfer the ownership or control of Holding to any other person, entity or party without Allied's prior written consent. Holding agrees that it will not sell, lease, convey or encumber any of its assets except upon the prior written approval of Allied.

10.    In consideration of the licenses granted herein, on or before December 31, 1997, Allied will pay Ryder, in immediately available funds, a license fee equal to $1.00 plus the difference, if any, between $6,150,000 and the gross proceeds received by Ryder and Holding from any sale or liquidation of the Trailer Manufacturing Business. Upon payment of such license fee, at the option of Allied, any portion of the Trailer Manufacturing Business not previously sold or liquidated by Ryder or Holding will be conveyed to Allied or its designee. No transfer of ownership or control of Holding and no transfer of any material assets of Holding comprising any portion of Resource Materials shall be made without the purchaser or transferee thereof expressly acknowledging that they are bound by and subject to the terms of this Agreement.

11.    In the event that, during the continuance of a CCI Insolvency Event, Allied fails to adequately defend, indemnify and hold Ryder harmless from and against the Trailer Claims or losses related thereto, Allied and CCI will, upon reasonable prior notice, provide Ryder and its affiliates, successors and assigns access to the Litigation Property for the sole and exclusive purpose of Ryder making copies thereof, at Ryder's expense. A CCI Insolvency Event shall consist of any of the following with respect to CCI: (a) a declaration of insolvency, act of

bankruptcy, or filing for protection from creditors under state or federal law; or (b) the filing of an involuntary petition for bankruptcy which is not dismissed within 30 days thereof; or (c) a foreclosure, attachment or levy upon the assets of CCI. Allied and CCI agree to promptly notify Ryder in writing of the occurrence of a CCI Insolvency Event or of the sale or destruction of Litigation Property.

12.    This Agreement, together with the Acquisition Agreement, constitutes the entire understanding and agreement between the Parties with respect to the subject matter hereof, supersedes all prior or written agreements or memoranda with respect thereto, and except as provided herein, may not be terminated, waived, or modified in any respect except by written instrument executed by the parties affected thereby. This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and assigns. This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original or all of which together shall be deemed to be a single instrument. In the event any provision or portion of this Agreement is deemed to be invalid or unenforceable, in whole or in part, for any reason whatsoever, the remainder hereof shall not be invalidated or rendered unenforceable or otherwise adversely affected, and the Parties shall agree to negotiate in good faith with respect to the subject matter of the provisions declared to be invalid or unenforceable so as to agree upon new provisions carrying forward their intent in a valid and enforceable manner.

RYDER SYSTEM, INC

By: _____
Title:_____

MANUFACTURING HOLDING CORP.

By:_____
Title:_____

COMMERCIAL CARRIERS, INC.

By: _____
Title:_____

ALLIED HOLDINGS, INC.

By:_____
Title:_____

0162386.06                                5