UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


DAVID FERGUSON AND
MARTHA FERGUSON,

                Plaintiffs,

        v.                                   Case No. C-1-02-039


RYDER SYSTEM, INC., et al.,

                Defendants.


## ORDER

       Plaintiffs David Ferguson and Martha Ferguson bring this diversity action against defendants Ryder System, Inc. (Ryder), Commercial Carriers, Inc. (CCI), Hanes Supply, Inc. (Hanes), and Allied Systems, Inc. (Allied Systems) and Allied Automotive Group (Allied Automotive)  (doc. 29).[1] Hanes brings a cross-claim against the Allied defendants for spoilation of evidence (doc. 54).

       The case is before the Court upon the following motions: plaintiffs' motion for summary judgment against the Allied defendants (doc. 76);  defendant Hanes' motion for summary judgment on plaintiffs' claims against it (doc. 78); defendant CCI's motion for summary judgment (doc. 80); defendant Ryder's motion for summary judgment (doc. 82); the Allied

---

[1] The Order also refers to the latter two defendants collectively as the "Allied defendants". "Plaintiff" used in the singular in the Order refers to plaintiff David Ferguson.

1

defendants' motion for summary judgment (doc. 84); plaintiffs' motion to quash/strike affidavits (doc. 140); defendants' motion to amend the Scheduling Order (doc. 151); defendant Hanes' motion to strike errata (doc. 87); the Allied defendants' motion for extension of time (doc. 147); and the motions of defendants Hanes, the Allied defendants, CCI and Ryder to exclude the testimony of Gabriel Alexander (docs. 97, 136, 156).

## I. Introduction

This case arises out of injuries plaintiff allegedly sustained during the course and scope of his employment when a cable which plaintiff had grabbed for support while working on a trailer broke and plaintiff fell to the ground. Plaintiffs bring four claims for product liability under O.R.C. §§ 2307.74, 2307.75, 2307.76, 2307.77 and 2307.78 (Counts I-IV), one claim for intentional tort (Count V), a claim for damages (Count VI) and a claim for loss of consortium (Count VII).

Plaintiffs makes the following allegations in support of their claims: On or about September 7, 2000, plaintiff David Ferguson was performing his normal work duties as the driver of car-hauling tractor trailers for his employer Allied Automotive in Ohio. Plaintiff fell while he was operating a truck, head rack and trailer (trailer) manufactured by CCI and attempting to maneuver himself in an intended and/or foreseeable fashion, as a result of which he sustained severe and permanent injuries. Plaintiff claims that at the time of its manufacture and at all times material, the trailer was defective in various respects, the alleged defects including defects regarding lack of adequate footing, traction on the walkways, and hand holds; lack of instructions for conducting repairs to walkway surfaces; lack of warnings with regard to these defects; hand cables which should have been replaced but were not and which broke; and an express prohibition

limiting modifications to the trailer  (Count I).

Plaintiff also claims that defendants violated a duty to him to design, test and manufacture the trailer with due care for the safety of plaintiff and others similarly situated by committing one or more of several acts and/or omissions. The alleged acts and omissions include failing to perform modifications to the trailers, failing to adequately design the trailers with regard to traction for footing, failing to warn regarding the dangers inherent in maneuvering oneself while working on the trailer, failing to adequately instruct on the correct method of maneuvering, failing to instruct owners on the necessity of adding traction materials to the walkways, failing to design trailers with handholds, ignoring records of injuries and industry expert reports, and failing to replace worn or defective hand cables. Plaintiff also claims that defendants violated their duty to him by installing defective hand cables. (Count II).

Plaintiff further claims that defendants breached an implied warranty that the trailer was reasonably safe for its intended and/or foreseeable uses by placing into the stream of commerce a trailer which lacked adequate, nondefective handholds, adequate traction on the walkway surfaces, and adequate instructions to operators on the proper method of maneuvering their bodies while working on or about the trailer. Plaintiff further contends that defendants placed into the stream of commerce a trailer which was not reasonably safe for its intended and/or foreseeable uses insofar as the trailer was accompanied by express prohibitions to prevent owners of the trailers from making reasonably necessary modifications to the structure of the trailers to render them not unreasonably dangerous. (Count III).

For Count IV, plaintiff alleges that defendants were aware that the trailer could subject him and others similarly situated to an unreasonable risk of severe bodily harm and that the trailer

contained one or more of the aforementioned defects which posed such a risk; despite knowledge of such risks, defendants failed to modify the trailer design or to recall the trailers, forbade modifications by the owners, and withheld injury data and industry expert reports; and defendants failed to correct the defects and/or warn users of the defects in reckless disregard of plaintiff's health and well-being, thereby subjecting defendants to punitive damages under O.R.C. § 2307.80.

In support of his intentional tort claim, Count V, plaintiff alleges that his employer knew of a dangerous instrumentality or condition and that harm to plaintiff as a result thereof was a substantial certainty, his employer knowingly required plaintiff to unload vehicles knowing the hand cables were defective and prone to break, and plaintiff suffered severe injury as a result of a defective hand cable breaking.

In Counts VI and VII, plaintiffs claim that as a result of the violations they allege, plaintiff suffered severe injury to his back and nerves and lasting physical and mental injury and Martha Ferguson suffered the loss of services and consortium of her husband. Plaintiffs seek judgment in the amount of $1,000,000 for compensatory damages and $2,000,000 for punitive damages.

Defendant Hanes brings a cross-claim against the Allied defendants for spoilation of evidence based on Allied's alleged destruction of the broken cable.

## II. Motions for Summary Judgment

### A. Summary Judgment Standard

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action. This Court may only grant summary judgment as a matter of law when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact.

4

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)).  The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)).

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.  There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *Id.* at 249 (citing *Cities Serv.*,  391 U.S. at 288-289).  If the evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82, 84 (1967), or is not significantly probative, *Cities Serv.*, 391 U.S. at 290, judgment may be granted.  *Anderson*, 477 U.S. at 249.

### B. The Allied defendants' motion for summary judgment

The Allied defendants move for summary judgment on plaintiffs' claims for intentional tort and loss of consortium and on defendant Hanes' cross-claim for spoilation of evidence. Defendants claim that they are entitled to summary judgment on the intentional tort claim because that claim is barred by the exclusive remedy provision of the Ohio Workers' Compensation Act and their alleged acts and omissions do not rise to the level of culpability necessary to support an intentional tort claim under *Blankenship v. Cincinnati Milacron Chemicals, Inc.,* 69 Ohio St.2d 608, 433 N.E.2d 572 (1982) and its progeny. Defendants claim that because they are entitled to summary judgment on the intentional tort claim, they are likewise entitled to summary judgment

on the loss of consortium claim.

Plaintiff claims that despite defendants' representations in support of their motion, there is no evidence that the safety cable in question had not been replaced due to inadequate maintenance supply and record keeping procedures, but in fact the real reason the safety cable was not replaced is financial. Plaintiff asserts that Allied knew the cable was not replaced prior to plaintiff's injury, that another employee had been injured one month prior to plaintiff's accident, and that Allied's maintenance personnel had seen a number of other broken cables, thereby creating a substantial certainty of injury. Plaintiff claims that truck drivers were required to continue to perform dangerous duties by using the trailers with defective cables. Plaintiff relies on the testimony of Gabriel Alexander for the proposition that defendants should have replaced the safety cables within one month of January 1999, and plaintiff cites evidence that the needed number of cables could have been produced in January/February 1999. Plaintiff contends that he assumed the cables on his truck were safe. Plaintiff claims that Allied required him to work with the old style cables by failing to give an order to not allow trucks out until the old style cables had been replaced.

In reply, the Allied defendants contend that if one accepts plaintiff's position that the old style cables should have been replaced well before the date of plaintiff's accident, the most that can be inferred is that the Allied defendants were negligent. The Allied defendants also dispute several factual representations made by plaintiff, including his assertions that defendants knew cables were breaking, as opposed to simply corroding, in January/February 1999; that Allied's regional maintenance manager John Taggart ordered that the replacement cables be installed "immediately" as opposed to as soon as could possibly be done within reason; that there was no

6

remediation program in place; and that plaintiff would have been unable to inspect the trailer to determine if there was a problem with the cable. Defendants contend that there is no evidence that they required plaintiff to load the trailer knowing that it had an old style cable installed.

The parties do not dispute the following facts regarding plaintiffs' claims against the Allied defendants and defendant Hanes' cross-claim for spoilation of evidence against the Allied defendants:

1. The Allied defendants are in the business of transporting motor vehicles from the manufacturer's final assembly point to the designated shipping point. Tractors and trailers are used to haul the motor vehicles.

2. Plaintiffs and the Allied defendants agree that at all relevant times, plaintiff David Ferguson was employed by the Allied defendants as a tractor trailer operator, and plaintiff Martha Ferguson was his wife. Defendant Hanes disputes this.

3. Some of the tractors used by the Allied defendants in their business have two safety cables attached to two posts located atop the head ramp on each side of the tractor. The safety cables were put on the trucks to stop people from falling off.

4. In 1999 and 2000, the Allied defendants operated two terminals in the greater Dayton, Ohio area. One was located at Marion and the other at Moraine. Plaintiff operated out of the Moraine terminal at all pertinent times. The Allied defendants were in the process of merging the two terminals into Moraine by December 2000. At all pertinent times, the maintenance manager at Marion was Gordon Beal (deceased) and his counterpart at Moraine was William Weaver.

5. The superior of Mr. Beal and Mr. Weaver was the Allied defendants' regional

7

maintenance manager, John Taggart.

6        In late January or early February 1999, Mr. Taggart initiated a telephonic conference call with all the maintenance managers within his region, including Mr. Beal and Mr. Weaver. Mr. Taggart reported that the head ramp safety cables were rusting and directed that they must be replaced right away or as soon as possible within reason. Following Mr. Taggart's conference call, maintenance personnel were instructed not to inspect the cables but rather to replace them. The cables were to be replaced on all trucks.

7.       Thereafter, the Allied defendants began replacing head ramp safety cables on all tractor units on which they were installed. The cables were replaced upon availability of new cables. For whatever reason, not all of the tractors stationed at Marion had their old cables replaced between January 1999 and the date of plaintiff's accident.

8.       During 1999-2000, more than 1000 head ramp safety cables were ordered and/or installed. Most cables were replaced at the Moraine terminal when tractors were brought to the shop for either regular maintenance or to fix a driver's complaint or concern.

9.       There was a supply problem getting cables. All replacement cables came through Allied Parts Center, from which maintenance at Allied requisitions parts. Maintenance is not allowed to order parts from other suppliers.

10.      There was a problem with the old cables corroding where vinyl meets metal.

11.      The plastic on the old cables was painted yellow and the metal was not visible. The new cables have clear plastic coating.

9

12.    When operators brought their tractors into the shop for maintenance and there were insufficient numbers of replacement cables on hand, the maintenance personnel would replace the cables they could and send the truck out with no recall or notification to finish the job when new cables became available.

13.    At the time of plaintiff's accident, Mike Palladino was the safety supervisor at Moraine. Prior to holding that position, Mr. Palladino had been the safety supervisor at the Marion terminal. He recalled some instances of safety cable failures at the Marion terminal.

14.    Mr. Palladino stated that Marion's maintenance personnel had been replacing all old type cables with new ones.

15.    An Allied maintenance employee, Richard Shivley, personally saw six broken cables during an unspecified time frame.

16.    The trailer at issue had previously been stationed at the Marion terminal and had been transferred to Moraine around August 21, 2000. Prior to the trailer arriving at Moraine, three of the four head ramp safety cables had been replaced by Marion's maintenance department on or about May 8, 1999. The truck's maintenance records do not reflect that the fourth cable had been replaced.

17.    On August 8, 2000, Allied employee Thomas Fay was injured when a head ramp safety cable broke and he fell.

18.    Issues surrounding the head ramp safety cables had been the subject of several drivers' safety meetings. In late April 1999, plaintiff attended a safety meeting. The parties dispute what the drivers were told at the meeting.

19.    Another safety meeting was held on October 13, 1999, where the drivers were again told of the problems with the safety cables.

20.    Plaintiff attended a drivers' safety meeting about one year before Mr. Fay's fall where the attendees were warned about the head ramp safety cables being potentially dangerous due to breakage.

21.    Another safety meeting was held some time before Mr. Fay's accident where the issue of the safety cables was again discussed. At that meeting, the Allied defendants' safety supervisor indicated that the problem was being taken care of.

22.    The truck plaintiff was operating on the morning of September 7, 2000, was a spare unit and not the tractor he normally operated. That morning, plaintiff performed a walk-around inspection of his tractor and trailer. Had plaintiff found anything unsafe or defective about the truck, it was his practice to have the truck "shopped' with Mr. Weaver's maintenance department.

23.    Plaintiff is not hesitant to have his truck sent to the maintenance department when he believes that it is unsafe or defective, and he had "shopped" his truck on several occasions in the past when he found conditions thereon that were unsafe or defective.

24.    At approximately 10:35 a.m. on September 7, 2000, while performing his normal duties on the truck, plaintiff grabbed onto the lower of two head ramp safety cables. The cable broke, and plaintiff fell approximately ten feet to the asphalt pavement.

25.    Plaintiff claims to have sustained severe injuries to his low back as a result of the fall.

26.     Mike Palladino took responsibility to investigate plaintiff's accident. Mr. Palladino knew

        of the previous accident with Mr. Fay. In his report prepared immediately after plaintiff's

        accident, Mr. Palladino stated, "There has been an ongoing problem with these cables

        breaking. The Maintenance Dept. is inspecting and replacing as needed. Three cables

        appear new. The cable that failed was not new." He also stated in the report that the cause

        of the accident was fatigued cable on the head rack.

27.     Proper procedure at Allied is to hold a part of a truck that is involved in an accident.

28.     The Safety Director would make the decision to throw away broken cables that were the

        cause of an accident. The Maintenance Department would not make that decision.

29.     The whereabouts of the broken cable are unknown, and the Allied defendants have been

        unable to produce the cable.

29.     Plaintiff has received and is receiving medical and income benefits under the Ohio

        Workers' Compensation Act on behalf of the Allied defendants.

### 1. Intentional tort claim against the Allied defendants

In order to prove an intentional tort claim against an employer, the employee must prove:

(1) knowledge by the employer of the existence of a dangerous process, procedure,
instrumentality or condition within its business operation; (2) knowledge by the
employer that if the employee is subjected by his employment to such dangerous
process, procedure, instrumentality or condition, then harm to the employee will be
a substantial certainty; and (3) that the employer, under such circumstances, and
with such knowledge, did act to require the employee to continue to perform the
dangerous task.

*Fyffe v. Jeno's Inc.,* 59 Ohio St.3d 115, 570 N.E.2d 1108, syll. ¶ 1 (1991). The Court in *Fyffe*

explained the intent required to establish such a claim as follows:

> To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligent. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As a probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk -something short of substantial certainty - is not intent.

*Id.* at syll. ¶ 2.

Thus, in order to establish his claim, the employee must show that the employer specifically desired to injure the employee or knew that injury to an employee was substantially certain to result from the employer's act and, despite this knowledge, still proceeded. *Mitchell v. Lawson Milk Co.,* 40 Ohio St.3d 190, 193, 532 N.E.2d 753, 756 (1988). It is not enough that harm was likely to occur. *Jones v. VIP Development Co.,* 15 Ohio St.3d 90, 95, 472 N.E.2d 1046, 1051 (1984). Rather, the harm must have been substantially certain to occur. *Id.* The level of risk-exposure must be "so egregious as to constitute an intentional wrong." *Berge v. Columbus Community Cable Access,* 136 Ohio App.3d 281, 309, 736 N.E.2d 517, 536 (1999)(citing *Sanek v. Duracote Corp.,* 43 Ohio St.3d 169, 172, 539 N.E.2d 1114, 1117 (1989)). In addition, the condition complained of must be one which falls outside the inherent dangers of one's job. *Taulbee v. Adience, Inc., BMI Division,* 120 Ohio App.3d 11, 17-18, 696 N.E.2d 625, 629 (1997)(citations omitted).

The Court finds that the Allied defendants are entitled to summary judgment on plaintiff's intentional tort claim. The record clearly supports a finding that the Allied defendants had knowledge of a dangerous condition, i.e., corroding safety cables which could possibly break,

posing a risk of harm to drivers and potentially a high risk of harm. The evidence does not,

however, permit a finding that more than mere knowledge and appreciation of a risk existed in

this case. Accepting the facts alleged by plaintiffs as true, a reasonable juror could not find that

the Allied defendants knew that injury was certain or substantially certain to result from its failure

to replace one of the four safety cables on plaintiff's truck. There is no evidence that the Allied

defendants knew that the particular cable which broke was corroded and therefore posed a danger

to plaintiff. Moreover, there is no evidence that defendants required plaintiff to proceed despite

knowledge of the danger. To the contrary, plaintiff did not raise an objection to driving the truck

with the old cable, although he was clearly aware by virtue of the safety meetings that there was a

safety problem with the old cables. Thus, because a reasonable juror could not infer that

defendants knew of a dangerous condition which was substantially certain to result in harm to

plaintiff, and because there is no evidence that defendants required plaintiff to use the particular

truck in issue despite the fact that the truck contained one of the old style cables, the Allied

defendants are entitled to summary judgment on plaintiff's intentional tort claim.

### 2. Hanes' spoilation of evidence cross-claim against the Allied defendants

The Allied defendants claim that they are entitled to summary judgment on Hanes'

spoilation of evidence claim because first, the only reasonable inference to be drawn from the

facts is that the cable at issue was destroyed in the ordinary course of business and for the purpose

of insuring that it would not be reused. Second, the Allied defendants contend there is no credible

evidence that they could reasonably foresee in September 2000 that litigation would probably be

occurring with Hanes Supply, but only evidence that they could reasonably foresee that any

litigation would be between the Allied defendants and plaintiff with respect to a workers'

compensation claim.

In response, Hanes contends that the cable is crucial evidence for plaintiff's product liability claims against Hanes and CCI as well as Hanes' efforts to obtain indemnification and/or contribution. Hanes claims that because Allied destroyed the hand cable, it cannot identify the wire rope manufacturer. Hanes alleges that Allied knew of facts which would lead it to conclude litigation was likely, Allied had a motive to eliminate the evidence because it shares a parent corporation with CCI, and Allied without justification did not follow a policy which it had of retaining parts involved in accidents or injuries like plaintiff's. Hanes argues that a jury could infer that Allied's safety personnel had the cable and destroyed it when it became apparent that this piece of evidence was harmful to Allied. Hanes alleges that there are material disputed facts concerning who last had the cable and when the cable was destroyed.

Ohio recognizes a claim for spoilation of evidence. In order to establish such a claim, a party must prove "(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts." *Smith v. Howard Johnson Co., Inc.,* 67 Ohio St.3d 28, 29, 615 N.E.2d 1037, 1038 (1993). A claim for spoilation of evidence may be brought at the same time as the primary action, but such a claim is not necessarily barred if not presented at that time. *Davis v. Wal-Mart Stores, Inc.,* 93 Ohio St.3d 488, 491, 756 N.E.2d 657, 660 (2001). Rather, a spoilation of evidence claim may be brought even after the conclusion of the primary action if evidence of spoilation is not discovered during the pendency of the primary action. *Id.*

15

The Court finds that there are disputed questions of fact, including questions as to motive, underlying resolution of the spoilation of evidence cross-claim brought by Hanes against the Allied defendants. Accordingly, summary judgment on this claim is not appropriate.

### C. Plaintiffs' motion for summary judgment against the Allied defendants

Plaintiffs move for summary judgment on their claims against defendants Allied Systems and Allied Automotive on the ground of spoilation of evidence. Plaintiffs claim that these defendants improperly disposed of the cable in question following plaintiff's accident and plaintiffs are entitled to summary judgment against the Allied defendants based on the destruction of this evidence. The Allied defendants oppose summary judgment on the ground that plaintiffs have not presented a claim for spoilation of evidence in their second amended complaint. Defendants also contend that plaintiffs have not made out a prima facie case for spoilation of evidence.

Plaintiffs have not pled a claim for spoilation of evidence in the second amended complaint. Rather, plaintiffs apparently seek summary judgment on the other claims they have brought against the Allied defendants on the ground that those defendants destroyed the broken cable. The undisputed facts do not establish that the Allied defendants engaged in spoilation of evidence, and plaintiffs are not entitled to summary judgment on the claims which they have brought against the Allied defendants on this ground. If plaintiffs wish to pursue an independent claim for spoilation of evidence against the Allied defendants, plaintiffs should seek leave to amend the complaint to add such a claim forthwith. Alternatively, if plaintiffs seek a sanction against the Allied defendants for alleged spoilation of evidence, they should file a motion for sanctions which the Court will address after the facts have been fully developed at trial.

16

### D. CCI's motion for summary judgment

CCI moves for summary judgment on plaintiffs' claims against it. CCI argues that plaintiff cannot establish proximate cause because there is no way to determine the cause of the cable breakage as the cable is no longer available; plaintiff cannot establish strict liability and negligent failure to warn claims because both the Allied defendants and plaintiff were on notice that the old cables were being replaced and that workers should not use old cables, and plaintiff has admitted he would not have used a cable if he noticed it was of the older design; plaintiff's conclusory allegations of a breach of implied warranty by CCI are insufficient to defeat summary judgment; accepting as true plaintiff's allegations that the Allied defendants committed an intentional tort by requiring plaintiff to work despite their knowledge that the working conditions were substantially certain to cause injury to him, or even if the Allied defendants are guilty only of negligence in failing to replace the cable or placing a truck with an old cable on it in service, those facts prove that the Allied defendants' conduct was the proximate, intervening cause of any resulting injuries; and because plaintiff's claims fail as a matter of law, Martha Ferguson's claim for loss of consortium must likewise fail.

In opposition to CCI's motion, plaintiffs allege that CCI still exists as a subsidiary of Allied Systems. Plaintiffs contend that the Allied defendants' alleged destruction of the cable can be inferred to be a deliberate attempt to protect these defendants and CCI from suit. Plaintiffs claim that Allied employees were not instructed on how to care for or maintain cables and that the plastic coating on the old cables was painted yellow so that the metal or corrosion was not visible. Plaintiff contends that he was never told not to use cables because they were failing. Plaintiff alleges that there was a defect in the cable and in the design of the cable, and he has shown a

17

causal connection between the design defect and his injury.

On the failure to warn claims, plaintiff disputes CCI's assertion that workers were told not to use old cables and that one could discern between new cables and old cables by casual observation. Plaintiff also asserts that there were no warnings or instructions on proper maintenance and inspection of the cables. In support of the breach of implied warranty claim, plaintiff alleges that CCI gave implied and specific warranties that the safety cable in question would last ten years, which false representation is the proximate cause of his injury. Finally, plaintiff contends that under Ohio law, the Allied defendants' allegedly tortious conduct does not constitute an intervening cause because the harm was within the scope of the risk created by CCI's original conduct and Allied's conduct was not sufficient to break the chain of causation between the allegedly defectively designed cable and plaintiff's injuries.

In reply, CCI asserts that it is not a subsidiary of Allied Systems and denies that there is any evidence that it was involved in the destruction of the broken cable. CCI asserts that plaintiff cannot establish proximate cause because there is no evidence on why the cable failed, no evidence of a defect since there is no cable to examine, and no evidence that a defect was the cause of the failure. CCI denies that plaintiff was never told not to use old cables and contends that Allied had several meetings on the damaged cables, how employees should identify them and handle replacing worn cables, and how employees should be careful until such time as the cables were replaced. CCI also asserts that written notice was posted in an area with heavy employee traffic. CCI notes that plaintiff testified at his deposition that he knew three of the cables on the truck were replacement cables and one was an original cable. CCI contends that plaintiff's breach of implied warranty claims should fail as a matter of law because plaintiff had been warned that

the cables were problematic and he had been provided with an opportunity to remedy the situation before his accident. Finally, CCI reiterates its argument that the sole cause of the accident was Allied's failure to replace the worn cables, and that failure is sufficient to break the chain of causation if there was an original defect.

Plaintiff and CCI agree on the following facts relevant to plaintiffs' claims against CCI:

1.  Plaintiff David Ferguson was employed by defendants Allied Systems and Allied Automotive and its predecessors-in-interest as a driver of car-hauling tractor trailers.

2.  Plaintiff was injured on September 7, 2000, when a safety cable on the headramp of a trailer broke and he fell from the truck.

3.  The headramp is the cargo position above the passenger area of the truck.

4.  CCI alleges that the trailer David Ferguson was operating at the time of the alleged accident was a 1995 CCI, VIN # 4RCAB7048SH019823. The truck was manufactured by CCI in 1995. At that time, CCI was a Florida Corporation and a subsidiary of Ryder, which owned 100% of the stock of CCI.

5.  In approximately 1994, CCI's management decided to add safety cables to the headramp of its trucks for the purpose of reducing the likelihood of a fall from that location. Two rails were installed on each side of the headrack, one above the other.

6.  Allied Systems began replacing cables on trucks in either January or February of 1999. Three of the four cables on the truck from which plaintiff fell had been replaced.

7.    Prior to the accident, plaintiff had attended safety meetings at which the dangers of the

original cables were discussed. Plaintiff was aware of an injury reported by a driver due to

the breaking of a safety cable. This incident took place approximately one month prior to

plaintiff's fall.

8.    The Allied defendants have not been able to locate the cable involved in plaintiff's

accident.

### 1. Product liability claims against CCI

O.R.C. § 2307.75 provides, in pertinent part, as follows:

(A) Subject to divisions (D), (E), and (F) of this section, a product is defective in
design or formulation if either of the following applies:
(1) When it left the control of its manufacturer, the foreseeable risks associated
with its design or formulation as determined pursuant to division (B) of this
section exceeded the benefits associated with that design or formulation as
determined pursuant to division (C) of this section;
(2) It is more dangerous than an ordinary consumer would expect when used in an
intended or reasonably foreseeable manner.
(B) The foreseeable risks associated with the design or formulation of a product
shall be determined by considering factors including, but not limited to, the
following:
(1) The nature and magnitude of the risks of harm associated with that design or
formulation in light of the intended and reasonably foreseeable uses,
modifications, or alterations of the product;
(2) The likely awareness of product users, whether based on warnings, general
knowledge, or otherwise, of those risks of harm;
(3) The likelihood that that design or formulation would cause harm in light of the
intended and reasonably foreseeable uses, modifications, or alterations of the
product;
4) The extent to which that design or formulation conformed to any applicable
public or private product standard that was in effect when the product left the
control of its manufacturer.

C) The benefits associated with the design or formulation of a product shall be determined by considering factors including, but not limited to, the following:
(1) The intended or actual utility of the product, including any performance or safety advantages associated with that design or formulation;
(2) The technical and economic feasibility, when the product left the control of its manufacturer, of using an alternative design or formulation;
(3) The nature and magnitude of any foreseeable risks associated with such an alternative design or formulation.

In order to prove a design defect product liability claim, plaintiff must show that (1) there was a defect in the product manufactured and sold by the defendant, (2) the defect existed at the time the product left the defendant's control, and (3) the defect was the direct and proximate cause of the plaintiff's injuries or losses. *Atkins v. Gen. Motors Corp.,* 132 Ohio App.3d 556, 725 N.E.2d 727 (1999)(citing *State Farm Fire & Cas. Co. v. Chrysler Corp.,* 37 Ohio St.3d 1, 5-6, 523 N.E.2d 489, 493 (1988).

The facts concerning whether the cable that failed on plaintiff's truck was defective and whether the alleged defect was the proximate result of plaintiff's injury are disputed. CCI argues that there is no way for plaintiff's expert or anyone else to determine the cause of the failure because the cable involved in the accident is not available. CCI posits that the cable may have failed for reasons other than those related to the claimed defect. The Court agrees that it is not clear from the evidence presented on summary judgment what the cause of the cable failure was. It is likewise unclear whether plaintiff can ultimately establish that there was a defect which proximately caused his injury. It is for the jury to resolve these issues. Accordingly, CCI is not entitled to summary judgment on plaintiff's product liability claims.

## 2. Failure to warn claims against CCI

O.R.C. § 2307.76 provides, in pertinent part, as follows:

(A) Subject to divisions (B) and (C) of this section, a product is defective due to inadequate warning or instruction if either of the following applies:
(1) It is defective due to inadequate warning or instruction at the time of marketing if, when it left the control of its manufacturer, both of the following applied:
(a) The manufacturer knew or, in the exercise of reasonable care, should have known about a risk that is associated with the product and that allegedly caused harm for which the claimant seeks to recover compensatory damages;
(b) The manufacturer failed to provide the warning or instruction that a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that the product would cause harm of the type for which the claimant seeks to recover compensatory damages and in light of the likely seriousness of that harm.
(2) It is defective due to inadequate post-marketing warning or instruction if, at a relevant time after it left the control of its manufacturer, both of the following applied:
(a) The manufacturer knew or, in the exercise of reasonable care, should have known about a risk that is associated with the product and that allegedly caused harm for which the claimant seeks to recover compensatory damages;
(b) The manufacturer failed to provide the post-marketing warning or instruction that a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that the product would cause harm of the type for which the claimant seeks to recover compensatory damages and in light of the likely seriousness of that harm.
(B) A product is not defective due to lack of warning or instruction or inadequate warning or instruction as a result of the failure of its manufacturer to warn or instruct about an open and obvious risk or a risk that is a matter of common knowledge.

Thus, a product is defective due to inadequate warnings, either at the time of marketing or

after marketing, "if the manufacturer knew or should have known of a risk associated with the

product, but failed to provide adequate warning or instruction given the likelihood that the

product would cause harm of the type for which the claimant seeks to recover compensatory

damages and in light of the likely seriousness of that harm." ***Vermett v. Fred Christen & Sons***

***Company,*** 138 Ohio App.3d 586, 611, 741 N.E.2d 954, 972 (2000). "A warning is adequate if it

reasonably discloses all inherent risks, and if the product is safe when used as directed." ***Id.*** (quoting ***Phan v. Presrite Corp.,*** 100 Ohio App.3d 195, 200, 653 N.E.2d 708, 711 (1994).

A manufacturer is negligent when it knows of a latent defect which renders a product unsafe and fails to provide a warning. ***Id.*** (citing ***Temple v. Wean United, Inc.,*** 50 Ohio St.2d 317, 325, 364 N.E.2d 267, 272 (1977). In determining that the manufacturer in ***Temple*** was not liable for failing to warn an employee that a press was potentially dangerous without button guards which the employer knew it could purchase from the manufacturer and which would prevent the accidental depression of the press buttons, the Court in ***Temple*** stated that it would be "futile to require that [the manufacturer] notify the employee of that which the responsible party, the employer, was already aware." ***Temple,*** 50 Ohio St.2d at 325, 364 N.E.2d at 272.

CCI makes several factual allegations in support of its motion for summary judgment on plaintiff's failure to warn claims without citing to the record. Plaintiff disputes many of those allegations. Resolution of the disputed fact issues requires credibility determinations and weighing of the evidence, functions which the Court cannot perform in deciding whether summary judgment is appropriate. Accordingly, in light of the disputed issues of fact, the Court cannot say as a matter of law that defendants are entitled to summary judgment on plaintiff's failure to warn claims.

### 3. Breach of warranty

Plaintiff claims that CCI breached a warranty that the cable would last ten years. CCI contends that plaintiff's conclusory allegations of breach of implied warranty are insufficient to defeat summary judgment. There is evidence in the record to support plaintiff's claim of breach of implied warranty. Whether CCI gave such a warranty and whether that warranty was breached are

questions for the jury to resolve. Accordingly, CCI is not entitled to summary judgment on this claim.

### 4. Intervening cause

In a products liability case based on a theory of strict liability and in a negligence action, the defense of intervening causation may be invoked to avoid liability where the intervening cause is unforeseeable by the party who is guilty of the original negligence and the intervening cause is the proximate cause of the injury. *Mark v. Mellott Manufacturing Company, Inc.,* 106 Ohio App.3d 571, 666 N.E.2d 631, 645 (1995); *Leibreich v. A.J. Refrigeration, Inc.,* 67 Ohio St.3d 266, 269, 617 N.E.2d 1068 (1993). The causal connection of the first act of negligence is superseded by the second only if the intervening negligent act is both new (meaning that the second act of negligence could not reasonably have been foreseen) and independent (meaning there is no connection or relationship of cause and effect between the original and subsequent act of negligence). *Leibrich,* 67 Ohio St.2d at 1071-72. An intentional tort by an employer does not relieve a manufacturer's strict liability as a matter of law. See *Volter v. C. Schmidt Co., Inc.,* 74 Ohio App.3d 36, 39, 598 N.E.2d 35, 42 (1991).

CCI cites *Bruns v. Cooper Industries, Inc.,* 78 Ohio App.3d 428, 605 N.E.2d 396 (1992) for the proposition that if an employer supplies a defective product to its employees, the employer's acts are the superseding cause of any resulting injuries as a matter of law. *Bruns* does not set forth the blanket proposition urged by CCI. Rather, consistent with the above-cited cases, the Court in *Bruns* held that under the theory presented by the plaintiff in that case, the negligence alleged on the part of the employer (i.e., providing plaintiff a hammer on which the warning affixed by the manufacturer had been obliterated by wear) was not reasonably

24

foreseeable by the manufacturer and therefore superseded the latter's negligence.

In this case, whether plaintiff's employer committed an intervening negligent act which was both new and independent are questions of fact for the jury to resolve. The record does not permit a finding on these issues as a matter of law. Accordingly, CCI is not entitled to summary judgment on this ground or on any other ground it asserts.

### E. Motion for summary judgment by Ryder

Defendant Ryder, the parent corporation of CCI, is a holding company incorporated under the laws of the State of Florida which is engaged in the business of investing in and acquiring operating companies which earn revenues by selling to third party customers. Ryder contends that there is no genuine issue of material fact as to its alleged liability for the acts and omissions of its subsidiary CCI because it did not manufacture the trailer in question, plaintiffs fail to allege and cannot establish a basis for disregarding the corporate form and piercing the corporate veil under either Ohio or Florida law, and Ryder did not owe a duty to plaintiff with respect to the dissemination of information. In response, plaintiffs rely on decisions of other federal courts in lawsuits against Ryder in support of their position that there is sufficient evidence to keep Ryder in this case. Plaintiffs also generally allege that the corporate structure is meant to defeat plaintiffs' right to collect any judgment in this case and that CCI has no assets and as such is a shell from which plaintiffs cannot collect a judgment.

The parties have not addressed the issue of whether Ohio or Florida law applies to determine whether the corporate veil may be pierced as to Ryder and CCI, and the law of both states cited by Ryder does not appear to differ significantly. Accordingly, the Court will address the issue under the law of the State where it sits.

25

Under Ohio law, the corporate veil may be pierced and a parent held liable for the acts and omissions of a subsidiary where "(1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.* 67 Ohio St.3d 274, 289, 617 N.E.2d 1075, 1086 (1993).

Plaintiffs have not come forward with evidence to show that there is a genuine issue of material fact as to whether Ryder had sufficient control over CCI to permit the Court to pierce the corporate veil. Plaintiffs also have not come forward with evidence to show that Ryder exercised any such control in a manner so as to commit fraud or an illegal act or that Ryder's alleged control over CCI and alleged wrongdoing played any role in plaintiffs' injury or loss. Plaintiffs have made only conclusory allegations to bolster their theory of liability against Ryder without citing specific portions of the record which support their allegations. Plaintiffs' citations to the decisions of other courts based on evidence before those courts is not sufficient to satisfy plaintiffs' burden to present sufficient evidence to this Court to raise an issue as to whether the corporate veil should be pierced under the facts of this case. Because plaintiffs have failed to come forward with evidence to show that Ryder can be held liable for the acts and omissions of its subsidiary CCI, and because plaintiffs have not shown that Ryder itself committed an unlawful act which resulted in injury to plaintiffs, defendant Ryder is entitled to summary judgment on plaintiffs' claims against it.

**F. Defendant Hanes' motion for summary judgment**

Defendant Hanes moves for summary judgment on plaintiffs' claims against it on the grounds that plaintiffs have failed to establish several critical elements of their claims and the superseding negligence of plaintiff's employer absolves Hanes of any liability. Hanes asserts that it reserves the right to dispute that it made the cable assembly but does not do so for purposes of this motion. Hanes argues that plaintiff's manufacturing defect claim fails because there is no evidence that the cable assembly did not meet its design specifications; the defective warning claims fail because plaintiff and his employer were aware of the deterioration of the cables; the defective design claims fail because there is no proof that the cables were defective when they entered service; and plaintiff has shown no representations by Hanes and no reliance on a representation and has provided no explanation of how the product did not conform to some representation so as to support his failure to conform to representations claim.

Plaintiff contends that the safety cable placed into commerce by Hanes was the wrong design using the wrong material, galvanized steel. Plaintiff claims that the cable could not last ten years as required by CCI but only five or six years. Plaintiff contends that Hanes did not supply all relevant information about the cables to the Allied defendants. Plaintiff claims that defendant Hanes has not shown as a matter of law that the issue of intervening cause should be taken from the trier-of-fact. Plaintiff cites the testimony of the owner of Hanes, the expert Gabriel Alexander, and Allied employees in support of its position.

In reply, Hanes argues that plaintiff has no evidence that the cable involved in the accident did not meet design specifications and that it did not conform to representations by Hanes because the cable is missing and a 10-year life span was never the design specification. Hanes contends

27

that the deposition testimony of Peter Terzian cited by plaintiff on this point is inadmissible because Terzian was not in the meetings between Hanes and CCI's engineering staff and therefore does not have firsthand knowledge of what Hanes was told. Hanes also argues that the defective warning claims must fail because the Allied defendants had knowledge of the dangers posed by the aging, rusting cables. Hanes argues that the design defect claim must fail because plaintiff has not eliminated other potential causes of the breakage and the claim is based on mere speculation.

Much of the law governing plaintiff's product liability claims is set forth in Section II(D)(1) of this Order. As to plaintiff's claim of failure to conform to manufacturer's representations, O.R.C. § 2307.77 provides that,

> A product is defective if it did not conform, when it left the control of its manufacturer, to a representation made by that manufacturer. A product may be defective because it did not conform to a representation even though its manufacturer did not act fraudulently, recklessly, or negligently in making the representation.

For the reasons stated in connection with the above denial of CCI's motion for summary judgment, defendant Hanes is not entitled to summary judgment on the theory that negligence by the Allied defendants was an intervening cause of plaintiff's injury so as to relieve Hanes from liability as a matter of law. In addition, there are disputed questions of fact underlying resolution of plaintiff's claims of defective design, failure to meet design specifications, failure to conform to representations, and failure to warn claims under Ohio law, so that Hanes is likewise not entitled to summary judgment on these claims.

### III. Plaintiffs' motion to quash

Plaintiffs move the Court to quash the Allied defendants' Rule 26(a) disclosures and the corresponding affidavits of Scott McCauley and Lynn Buckholt filed September 22, 2003 and October 3, 2003, well past the November 8, 2002 deadline for Rule 26(a) disclosures and the April 2003 discovery cut-off. Defendants contend that the late disclosure of these witnesses was necessitated by plaintiffs' expansion of the case in their summary judgment motion to include a spoilation of evidence claim and by the need to rebut certain arguments made by plaintiffs. Defendants assert that they do not object to a brief enlargement of the discovery period to allow plaintiffs an opportunity to depose these two witnesses.

Defendants have offered a legitimate reason for the late disclosures. It does not appear from the record that defendants have acted in bad faith by making these particular disclosures. Plaintiffs will not be prejudiced by defendants' filing since the Court will grant them an opportunity to depose these witnesses and trial will not be delayed as a result. Therefore, the Court will not quash the late disclosures and affidavits.

### IV. Defendant Hanes' motion to strike errata

Defendant Hanes moves to strike the errata from the deposition of William Weaver, a maintenance supervisor for the Allied defendants, on the ground that the errata does not correct typographical errors but instead materially changes Mr. Weaver's testimony. Hanes asserts that immediately after the Weaver deposition, on March 11, 2003, it moved for leave to file a cross-claim for spoilation of evidence. Hanes contends that on March 30, 2003, Mr. Weaver provided an errata consisting of a long narrative which altogether changes his testimony pertinent to that claim (doc. 87, exh. E). Specifically, Hanes contends that Mr. Weaver's errata changes his testimony

from Mr. Palladino saying he had the cable involved in plaintiff's accident to Mr. Palladino saying he had some cable, but not necessarily the particular broken cable in issue. Hanes contends that the errata should be stricken since Mr. Weaver has provided no reason for the change as required by Fed. R. Civ. P. 30(e) and the timing of the revision is highly suspect. Hanes also contends that although Mr. Weaver's deposition was on February 2, 2003, defendants' counsel circulated the errata sheet without a reason for the changes on April 7, 2003, and did not provide an explanation for the changes until defendants served their memorandum in opposition to Hanes' motion on August 15, 2003. Hanes contends that even if the Court does not strike the errata, the original testimony must remain in the record.

In response, the Allied defendants contend that the reason Mr. Weaver provided the errata was because he realized upon review of the deposition transcript that his testimony was incorrect. Defendants contend that Rule 30(e) permits substantive changes to testimony and that such changes may be provided after the fact. Defendants argue that Hanes' complaint should not be heard since Hanes waited until after the discovery cut-off and the filing of summary judgment motions to complain about the errata.

Fed. R. Civ. P. 30(e) provides as follows:

If requested by the deponent or a party before completion of the deposition, the deponent shall have 30 days after being notified by the officer that the transcript or recording is available in which to review the transcript or recording and, if there are changes in form or substance, to sign a statement reciting such changes and the reasons given by the deponent for making them. The officer shall indicate in the certificate prescribed by subdivision (f)(1) whether any review was requested and, if so, shall append any changes made by the deponent during the period allowed.

Defendants have not complied with Rule 30(e). Mr. Weaver did not state the reasons for the change in his testimony within thirty days. Nonetheless, the Court declines to strike the errata at this point despite the Allied defendants' delay in proffering a reason for the change in Mr. Weaver's testimony. The Court finds that Hanes will not be prejudiced if the errata remains part of the record since the Court will allow the original deposition testimony to likewise stay in the record, and Hanes and the other parties will have an opportunity to question Mr. Weaver at trial regarding his original deposition testimony, the errata, and inconsistencies between the two. The Court therefore denies the motion to strike the errata.

### V. Defendants' joint motion to amend the scheduling order

On December 16, 2003, defendants jointly moved to amend the Scheduling Order to extend the discovery date to February 2, 2004, and the deadline for Rule 26(a)(2) expert disclosures as to damages to February 23, 2004. Defendants claim that more time is needed to conduct additional discovery regarding recently disclosed medical information on plaintiff's back condition and to obtain updated information on plaintiff's changing medical condition. Specifically, defendants assert that they require additional discovery to flush out the nature and scope of a disc tear disclosed in a report by plaintiff's pain management physician, Mitchell E. Simons, M.D., which plaintiffs recently provided to defendants.

Plaintiffs oppose defendants' motion. Plaintiffs assert they filed their Rule 26 disclosures on October 25, 2002, and plaintiff was deposed on November 21, 2002, at which time he gave his complete medical history. Plaintiffs also assert that medical records were exchanged prior to plaintiff's deposition and medical authorizations were provided to defendants. Plaintiffs note that defendants did not disclose any damages experts or obtain an independent medical examination

31

prior to expiration of the disclosure deadline. Plaintiffs deny that new evidence regarding plaintiff's medical condition has surfaced.

The discovery deadline in this case expired approximately one year ago, and defendants were required to file their expert reports by June 9, 2003. It is likely that changes in plaintiff's medical condition have occurred in the intervening months. The parties are entitled to update the information they have regarding plaintiff's medical condition and to obtain discovery regarding changes that have occurred since the close of the discovery deadline. Accordingly, the Court will grant an extension of time for the parties to complete additional discovery solely regarding changes in plaintiff's medical condition subsequent to the expiration of the discovery deadline.

### VI. Defendants' motions to exclude the testimony of Gabriel Alexander

All defendants have filed motions to exclude the testimony of the expert designated by plaintiffs, Gabriel Alexander. Defendants move to exclude the testimony on the ground that Mr. Alexander does not meet Fed. R. Civ. P. 702 standards because plaintiffs have failed to establish that Mr. Alexander is an expert relative to the issues upon which he is expected to testify and that his opinion provides accurate and complete scientific or technical data or information that would assist the trier-of-fact in this matter. Defendants claim that Mr. Alexander's testimony is not based on sufficient facts or data; his testimony is not the product of reliable principles and methods; and no reliable principles or methods have been applied by him to the facts of this case.

Fed. R. Civ. P. 702 provides that,

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or date, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Court is charged with the task of assessing whether the reasoning or methodology underlying proposed expert testimony is reliable and relevant. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592-93 (1993). The factors to be considered in making this determination include (1) whether the expert's technique or theory can be or has been tested; (2) whether the technique or theory has been subject to peer review and publication; (3) in the case of a particular scientific technique, the known or potential rate of error of the technique when applied and the existence and maintenance of standards controlling the technique's operation; and (4) whether the technique or theory has been generally accepted in the scientific community. *Id*.

The Court finds that it is appropriate to hold a *Daubert* hearing in order to determine the relevance and reliability of the principles underlying Gabriel Alexander's proposed expert testimony. The Court will reserve ruling on the motions to exclude Mr. Alexander's testimony pending the hearing.

## VII. Conclusion

In accordance with the foregoing, plaintiffs' motion for summary judgment against the Allied defendants (doc. 76), defendant Hanes' motion for summary judgment on plaintiffs' claims against it (doc. 78), defendant CCI's motion for summary judgment (doc. 80), plaintiffs' motion to quash (doc. 140), and defendant Hanes' motion to strike errata (doc. 87) are **DENIED.** The Allied defendants' motion for summary judgment (doc. 84) is **GRANTED** as to plaintiffs' claims for intentional tort and loss of consortium related to the intentional tort claim raised in Counts V and VII and **DENIED** as to defendant Hanes' cross-claim. Defendant Ryder's motion for summary judgment (doc. 82) is **GRANTED** and defendant Ryder is **DISMISSED** from the lawsuit. Defendants' joint motion to amend the Scheduling Order (doc. 151) is **GRANTED.** The Allied defendants' motion for extension of time to file a reply in support of their motion to exclude the testimony of plaintiffs' expert witness Gabriel Alexander (doc. 147) is **GRANTED**.

The discovery deadline is extended to **April 21, 2004**, for the limited purposes of (1) allowing plaintiffs the opportunity to take the depositions of Scott McCauley and Lynn Buckholt, and (2) allowing the parties to take additional discovery solely with respect to changes in plaintiff's medical condition following the expiration of the discovery deadline. A ***Daubert*** hearing with regard to the testimony of Gabriel Alexander is scheduled for **Monday, April 19, 2004 at 1:30 p.m.**

This case will proceed to trial in accordance with the schedule previously established by the Court.

**IT IS SO ORDERED.**


S/ Herman J. Weber
HERMAN J. WEBER
SENIOR JUDGE, UNITED STATES DISTRICT COURT


J:\HJWA\02-039msjprlblty.wpd