# EXHIBIT A

1    UNITED STATES DISTRICT COURT
2            SOUTHERN DISTRICT OF OHIO
3                WESTERN DIVISION
4
5    ---------------------------------------
                                    :
6    DAVID FERGUSON, et al.,         :
                                    :
7            Plaintiffs,             :
                                    :
8        vs.                        :        CASE NO.
                                    :        C-1-02-039
9    RYDER AUTOMOTIVE, et al.,       :
                                    :
10           Defendants.            :
                                    :
11   ---------------------------------------
12
13           Deposition of:   THOMAS HELLER
14           Taken:           By the Plaintiffs
                              Pursuant to Agreement
15
             Date:            March 13, 2003
16
             Time:            Commencing at 2:26 p.m.
17
             Place:           Kohen & Patton LLP
18                            1400 Carew Tower
                              441 Vine Street
19                            Cincinnati, Ohio  45202
20           Before:          Debra J. Henderson, RPR
                              Notary Public -
21                            State of Ohio
22
23
24
25

**Ace Reporting Services  (513) 241-3200**
**30 Garfield Place, Suite 620   Cincinnati, Ohio  45202**

Page 6

1    Q.    So were you there on the day of the
2 accident with Mr. Ferguson, September 7th of 2000?
3    A.    No, I was not there.
4    Q.    Okay. Do you know what happened to the
5 cable that was involved in this accident?
6    A.    As far as I know, the cable broke.
7    Q.    Okay. Did you make any reports or take
8 any reports or talk to Mr. Ferguson or anyone else --
9    A.    No.
10   Q.    -- that relates to the accident?
11   A.    No.
12   Q.    Do you know if Mr. Kelly did?
13   A.    No. I don't believe he did.
14   Q.    Now, the actual cable that broke, did
15 you ever see it?
16   A.    Yes.
17   Q.    Okay. Where did you see it at?
18   A.    It was down in the south yard, where the
19 accident occurred the next day.
20   Q.    Okay. So when you say "it was down in
21 the south yard," was it in a building or where was
22 it?
23   A.    No. It was just sitting out in the yard
24 where it happened, where it fell off the truck.
25   Q.    So you saw it the next day sitting in

Page 7

1 the yard?
2    A.    Yeah.
3    Q.    And did it -- was it coiled up or how
4 was it being kept?
5    A.    No. Well, it was just hanging there.
6    Q.    Hanging on the truck?
7    A.    Hanging on the truck.
8    Q.    Oh, okay. Did you see it after that,
9 the actual cable that broke?
10   A.    No.
11   Q.    Do you know what happened to it?
12   A.    No. I have no idea.
13   Q.    Did you ever hear scuttlebutt of what
14 happened to it?
15   A.    No.
16   Q.    No one said anything that so-and-so had
17 it or so-and-so was using it?
18   A.    No.
19   Q.    Okay. You just saw it wrapped up on the
20 truck?
21   A.    Right.
22   Q.    Correct?
23   A.    Correct.
24   Q.    Let me show you what has previously been
25 marked as some exhibits. Plaintiffs' Exhibits A, B,

Page 8

1 C, D, E, F. I think we can just start with A,
2 maybe.
3         Exhibit A, is that what you saw wrapped
4 up on the truck? Is that what you're talking about?
5    A.    Yeah. Uh-huh, yeah.
6    Q.    And Exhibit B is the same?
7    A.    Uh-huh.
8         MR. WINTER: You have to say yes or no.
9    A.    Yes.
10   Q.    Okay. Did you take those pictures? Do
11 you know who took the pictures?
12   A.    No. I don't know who took them, either.
13   Q.    Did you ever talk with Mike Palladino
14 about the accident?
15   A.    The only time I talked to Mike was -- in
16 relation to the cable is when these trucks had just
17 come down out of Marian, and it was as to when these
18 cables were going to be replaced in these trucks.
19   Q.    Okay. We will get to that, but did you
20 ever talk to Mike Palladino about the actual cable
21 after it was broken?
22   A.    No.
23   Q.    You had a conversation with him
24 beforehand when the trucks came down from Marian?
25   A.    Yes.

Page 9

1    Q.    Okay. Do you know when that was?
2    A.    No. No, I couldn't recall no date, no.
3    Q.    Do you know how far it was before
4 Mr. Ferguson's accident?
5    A.    I really couldn't say offhand.
6    Q.    What was your conversation with
7 Mr. Palladino?
8    A.    Well, it was just in relation to these
9 trucks. We had probably ten trucks that had just
10 been transferred down to Moraine from Marian, and it
11 was in relation to the cables that had not been
12 replaced on the trucks.
13   Q.    And what did you say?
14   A.    Well, about as far as contacting the
15 shop to find out when these cables were going to be
16 replaced.
17   Q.    And what did Mr. Palladino say?
18   A.    Well, we both had a discussion with the
19 shop foreman.
20   Q.    Who was that?
21   A.    Bill Weaver.
22   Q.    And what was that discussion about?
23   A.    About the cables on these trucks that
24 were coming down, being replaced, and he stated to us
25 that the cables were on back order at that time. He

3 (Pages 6 to 9)

1    A.    No.
2    Q.    Had you seen cables break before, other
3    than Mr. Fay's and Mr. Ferguson's?
4    A.    No.
5    Q.    And you were't there the day of the
6    accident; is that correct?
7    A.    No.  Well, it happened in the evening.
8    I had done gone home.
9    Q.    Okay.  So the next day is the day that
10    you see the truck and hear about the accident,
11    correct?
12    A.    Yes.
13    Q.    And you saw the cables as they are there
14    in A and B?
15    A.    Yes.
16    Q.    I think that's A and B.  Yeah.  Exhibit
17    A and B, wrapped around.  So the next day when it was
18    daylight, you could see that there, correct?
19    A.    Yes.
20    Q.    Okay.  And did you have any conversation
21    then with Michael Palladino about Mr. Ferguson or the
22    truck?
23    A.    Not that I recall.  Well, yes, I did.
24    On -- I talked to him, contacted Mike about Dave.
25    You know, what they had done, if he was injured, and

1    if they had sent him to the hospital.
2    Q.    Okay.  So you talked to Mike about that,
3    and he told you the situation as related to
4    Mr. Ferguson's injury?
5    A.    Yes.
6    Q.    But did you talk to him about the truck
7    itself or the trailer and the broken cable?
8    A.    No.
9    Q.    Okay.  You said that was back on the
10    south lot.  My understanding, the place didn't have a
11    repair building there, right?
12    A.    No.  Our shop was outside.
13    Q.    Right.  Okay.  So who would have fixed
14    the truck the next day, put another cable on it?
15        MR. WINTER:  Object to the form of the
16    question.
17        THE WITNESS:  Please?
18        MR. WINTER:  I objected to the form of
19    the question.  Answer if you can.
20    A.    The only one that repaired our trucks
21    was the shop, our shop.
22    Q.    Okay.  Mr. Weaver?
23    A.    Well, one of his mechanics.
24    Q.    Okay.  Do you know if there was a --
25    strike -- that there's a record that shows that the

1    cable was replaced the next day on the 8th?  This
2    occurred on the 7th, you said, at night.
3        Do you know if -- on the 7th, if there
4    were cables in the shop to replace --
5    A.    I -- no.
6    Q.    You don't know one way or the other?
7    A.    No.
8    Q.    When it's back on the south lot, what
9    does that mean?
10    A.    Well, we had two lots.  We had our north
11    lot, which is actually where the maintenance office
12    and the shop was.  And then our other -- the other
13    lot, the south lot, is where a lot of the trucks
14    load, and that's where he was loading his truck at
15    the time.
16    Q.    And I take it when you saw the truck,
17    the truck hadn't moved from where the accident
18    occurred?
19    A.    No, I don't believe so.
20    Q.    So it was still sitting where he had
21    fallen off the truck?
22    A.    Uh-huh.
23    Q.    And what time on the 8th did you see it?
24    A.    It was around -- probably 7:30,
25    8:00 a.m.

1    Q.    Was Mr. Palladino there that day, on the
2    8th?
3    A.    Yes.
4        MR. KOUSTMER:  I don't have any other
5    questions.
6        CROSS-EXAMINATION
7    BY MR. PAULUS:
8    Q.    Do you know who Mr. Slag is?
9    A.    Yes.
10    Q.    Who is that?
11    A.    He's the union steward of the drivers.
12    Q.    Did he ever give you a list of trucks
13    that he needed replacement cables for?
14    A.    I couldn't say.  I couldn't say.
15        MR. PAULUS:  That's all I have.
16        CROSS-EXAMINATION
17    BY MR. SCHOENI:
18    Q.    Mr. Heller, my name is Roger Schoeni.
19    Did you ever have physical possession of the cable
20    that broke?
21    A.    No.
22    Q.    Who took physical possession of that
23    cable?
24    A.    I really couldn't say.
25    Q.    Has anyone ever told you what became of

5 (Pages 14 to 17)

# EXHIBIT B

DATE 07/24/02   TIME-10:57

UNIT DETAIL HISTORY LIST   TERMINAL

| UNIT NO | GROUP | ITEM NO | DESCRIPTION | LOC | DATE | RO NUM | METER | RS | POS | CLASS | SITE | TYPE | FC/WA | QTY | COST |
|---------|-------|---------|-------------|-----|------|--------|-------|----|----|-------|------|------|-------|-----|------|
| ALZS61304 | *** | ******** | | *** | 01/01/50 07/24/02 | ******* | ******* ** | ** | *** | * | * | * | ** | ********** ********** | ********** ********** |
| ALZS61304 | 310 | 42007008 | FILTER WATERNEED RELEASE | 73 | 12/22/00 | R066894 | 398642 | 08 | | 2 | 1 | N | | PH | 1.00 | 31.54 |
| ALZS61304 | 310 | 44002060 | FUEL FILTER DAVCO | 73 | 12/22/00 | R066894 | 398642 | 08 | | 2 | 1 | N | | PH | 1.00 | 3.85 |
| ALZS61304 | 310 | 45011038 | FILTER OIL  94/ CUMMINS | 73 | 12/22/00 | R066894 | 398642 | 08 | | 2 | 1 | N | | PH | 1.00 | 28.92 |
| ALZS61304 | 310 | 53998006 | MISC EXPENSE | 73 | 12/22/00 | R066894 | 398642 | 08 | | 2 | 1 | | | | 1.00 | 15.90 |
| ALZS61304 | 310 | 65003063 | FILTER HYDRAULIC (K22001 | 73 | 12/22/00 | R066894 | 398642 | 08 | | 2 | 1 | N | | PH | 1.00 | 2.54 |
| ALZS61304 | 310 | 93-L | HYDRAPAC PH "B " SERVICE | 73 | 12/22/00 | R066894 | 398642 | 08 | | 2 | 1 | | | 08 | .00 | .00 |
| ALZS61304 | 310 | 93001044 | FILTER OIL | 73 | 12/22/00 | R066894 | 398642 | 08 | | 2 | 1 | N | | PH | 1.00 | 9.41 |
| ALZS61304 | 310 | 93001047 | FILTER FUEL | 73 | 12/22/00 | R066894 | 398642 | 08 | | 2 | 1 | N | | PH | 1.00 | 2.32 |
| ALZS61304 | 310 | 93001047 | FILTER FUEL | 73 | 12/29/00 | R066894 | 398642 | 08 | ALL | 2 | 1 | N | | 44 | 3.00 | 79.24 |
| ALZS61304 | 310 | 16006035 | SHOCK | 73 | 11/13/00 | | 390445 | 00 | | 1 | 4 | N | | 00 | 4.00 | 9.11 |
| ALZS61304 | 310 | 53990001 | OIL/ENGINE  BULK | 73 | 11/15/00 | R048740 | 391193 | 04 | ALT | 2 | 1 | | | 99 | .50 | 16.54 |
| ALZS61304 | 310 | 31-L7360 | CHARGING SYS - TERM CHAR | 73 | 11/15/00 | R048740 | 391193 | 04 | | 2 | 1 | N | | PH | 1.00 | 9.41 |
| ALZS61304 | 310 | 93001044 | FILTER OIL | 73 | 11/15/00 | R048740 | 391193 | 04 | | 2 | 1 | N | | PH | 1.00 | 2.29 |
| ALZS61304 | 310 | 93001047 | FILTER FUEL | 73 | 11/15/00 | R048740 | 391193 | 04 | HOP | 2 | 1 | | | 08 | 1.00 | 33.29 |
| ALZS61304 | 310 | 93-L7360 | HYDRAPAC PH "B " SERVICE | 73 | 11/15/00 | R048740 | 391193 | 04 | ALL | 2 | 1 | | | 12 | .50 | 16.64 |
| ALZS61304 | 310 | 17-L7357 | TIRE INSPECTION | 73 | 11/18/00 | 1118031 | 391948 | 04 | | 2 | 1 | | | 03 | .50 | 16.64 |
| ALZS61304 | 310 | 31-L7303 | CHARGING EXCHG | 73 | 11/29/00 | 129011 | 391948 | 04 | ALL | 2 | 1 | | | 12 | .25 | 8.32 |
| ALZS61304 | 310 | 17-L7360 | TIRE INSPECTION | 73 | 10/09/00 | R028949 | 383849 | 04 | | 2 | 1 | N | | 38 | 1.00 | 11.15 |
| ALZS61304 | 310 | 34002129 | FLASHER | 73 | 10/09/00 | R028949 | 383849 | 04 | | 2 | 1 | | | 05 | .20 | 6.65 |
| ALZS61304 | 310 | 93-L7360 | HYDRAPAC REPAIR IN PLACE | 73 | 10/09/00 | R028949 | 383849 | 04 | | 2 | 1 | | | 05 | .30 | 9.98 |
| ALZS61304 | 310 | 93-L7360 | HYDRAPAC REPAIR IN PLACE | 73 | 10/09/00 | R028949 | 383849 | 04 | | 2 | 4 | | | 41 | 1.00 | 30.80 |
| ALZS61304 | 310 | 65 | | 73 | 10/17/00 | P073421 | 385328 | 05 | | 2 | 4 | | | 05 | 1.00 | 31.00 |
| ALZS61304 | 310 | 65-L | HYD LINES, RIP OR REPLAC | 73 | 10/17/00 | P073421 | 385328 | 05 | | 2 | 4 | | | 05 | 1.00 | 120.00 |
| ALZS61304 | 310 | 65-L | HYD LINES, RIP OR REPLAC | 73 | 10/17/00 | P073421 | 385328 | 05 | | 2 | 4 | | | 05 | 1.00 | 120.00 |
| ALZS61304 | 310 | 65-L | HYD LINES, RIP OR REPLAC | 73 | 10/17/00 | P073421 | 385328 | 05 | | 2 | 4 | | | 05 | 1.00 | 120.00 |
| ALZS61304 | 310 | 65-L | HYD LINES, RIP OR REPLAC | 73 | 10/17/00 | P073421 | 385328 | 05 | | 2 | 4 | | | 01 | 1.00 | 2.00 |
| ALZS61304 | 310 | 65 | | 73 | 10/17/00 | P073421 | 385328 | 05 | | 2 | 4 | | | 41 | 1.00 | 30.60 |
| ALZS61304 | 310 | 65 | | 73 | 10/17/00 | P073421 | 385328 | 05 | | 2 | 4 | | | 01 | 1.00 | 2.00 |
| ALZS61304 | 310 | 65 | | 73 | 10/17/00 | P073421 | 385328 | 05 | | 2 | 4 | | | 41 | 1.00 | 30.80 |
| ALZS61304 | 310 | 65 | | 73 | 10/17/00 | P073421 | 385328 | 05 | | 2 | 4 | | | 01 | 1.00 | 2.00 |
| ALZS61304 | 310 | 65 | | 73 | 10/17/00 | P073421 | 385328 | 05 | | 2 | 4 | | | 01 | 1.00 | 305.60- |
| ALZS61304 | 310 | 65 | | 73 | 10/20/00 | R036032 | 386373 | 04 | | 2 | 1 | | | 05 | 1.00 | 33.23 |
| ALZS61304 | 310 | 65-L7303 | HYD LINES, RIP OR REPLAC | 73 | 10/20/00 | R036032 | 386373 | 04 | | 2 | 1 | N | | 44 | 1.00 | 7.53 |
| ALZS61304 | 310 | 93001039 | BELT ALT | 73 | 10/20/00 | R036032 | 386373 | 04 | | 2 | 1 | N | | 38 | 1.00 | 68.44 |
| ALZS61304 | 310 | 93001052 | SOLENIOO    SHUT OFF | 73 | 10/20/00 | R036032 | 386373 | 04 | | 2 | 1 | N | | 18 | 1.00 | 78.29 |
| ALZS61304 | 310 | 93001076 | PUMP WATER | 73 | 10/20/00 | R036032 | 386373 | 04 | | 2 | 1 | | | 05 | 2.00 | 66.55 |
| ALZS61304 | 310 | 93-L7303 | HYDRAPAC REPAIR IN PLACE | 73 | 10/25/00 | R038233 | 387192 | 04 | ALL | 2 | 1 | | | 12 | .25 | 8.32 |
| ALZS61304 | 310 | 17-L7303 | TIRE INSPECTION | 73 | 09/01/00 | P073522 | 378898 | 05 | | 2 | 4 | | | 20 | 1.00 | 150.00 |
| ALZS61304 | 310 | 00-L | TOWING-VENDOR | 73 | 09/01/00 | P073522 | 378898 | 05 | | 2 | 4 | | | 05 | 1.00 | 31.00 |
| ALZS61304 | 310 | 32-L | CRANKING R.I.P. | 73 | 09/08/00 | P073998 | 378920 | 08 | | 2 | 4 | | | 31 | 1.00 | 23.50 |
| ALZS61304 | 310 | PH-L | FEDERAL INSPEC | 73 | 09/08/00 | P073998 | 378920 | 08 | | 2 | 4 | | | PH | 1.00 | 17.25 |
| ALZS61304 | 310 | PH | | 73 | 09/08/00 | P073998 | 378920 | 08 | | 2 | 4 | | | 10 | 1.00 | 129.25 |
| ALZS61304 | 310 | PH-L | PH10 - B-PH | 73 | 09/08/00 | R011232 | 378995 | 24 | HDR | 2 | 1 | | | 03 | .50 | 16.64 |
| ALZS61304 | 310 | 02-L7369 | CAB:WIPER MOTOR,SWT,TRAN | 73 | 09/08/00 | P073998 | 378920 | 08 | | 2 | 4 | | | 12 | 1.00 | 23.50 |
| ALZS61304 | 310 | 17-L | TIRE INSPECTION | 73 | 09/08/00 | P073998 | 378920 | 08 | | 2 | 4 | | | 03 | 1.00 | 164.50 |
| ALZS61304 | 310 | 32-L | CRANK REPLACE | 73 | 09/08/00 | R011232 | 378995 | 24 | BOT | 2 | 1 | N | | 12 | 2.00 | 111.42 |
| ALZS61304 | 310 | 55001276 | SAFETY CABLEHD/RK LONG | 73 | 09/08/00 | P073998 | 378920 | 08 | | 2 | 4 | | | 08 | 1.00 | 35.25 |
| ALZS61304 | 310 | 93-L | HYDRAPAC PH "B " SERVICE | 73 | 09/14/00 | P073308 | 379490 | 01 | | 3 | 4 | | | 05 | 1.00 | 171.00 |
| ALZS61304 | 310 | 32-L | CRANKING R.I.P. | 97 | 09/14/00 | P097308 | 379490 | 01 | | 3 | 4 | | | 44 | 1.00 | 33.28 |
| ALZS61304 | 310 | 32-L7360 | BATTERY REPLACE ONLY | 73 | 09/14/00 | 0914023 | 379871 | 04 | | 2 | 1 | | | 44 | 3.00 | 226.55 |
| ALZS61304 | 310 | 32001061 | BATTERY OC  R/P 32001030 | 73 | 09/14/00 | 0914023 | 379871 | 04 | | 2 | 1 | N | | 38 | 1.00 | 76.07 |
| ALZS61304 | 310 | 01002035 | MOTOR | 72 | 09/15/00 | R014968 | 379670 | 04 | | 2 | 1 | N | | 01 | 1.00 | 31.00 |
| ALZS61304 | 310 | 45-L | ENGINE R.I.P. | 73 | 09/15/00 | P073817 | 379670 | 01 | | 3 | 4 | | | 05 | | | |

Ferguson v. CCI/26/2/
Allied/007

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

DAVID FERGUSON, ET AL.                    :
                                          :
                                          :
            Plaintiffs                    :        Case No. C-1-02-039
                                          :
v.                                        :        Judge Herman Weber
                                          :
                                          :
RYDER AUTOMOTIVE CARRIER                  :
SERVICES, INC., ET AL.                    :        AFFIDAVIT OF
                                          :        RICHARD H. SHIVELY
            Defendants                    :
                                          :

Affiant Richard H. Shively, after having first been duly cautioned and sworn, deposes and

states as follows:

1.      My name is Richard H. Shively. I am the same Richard H. Shively whose

deposition was taken in the above-captioned action on February 20, 2003. I have personal

knowledge of the facts contained within my affidavit.

2.      I have recently been provided a copy of and have reviewed the Unit History Detail

Listing on trailer no. 61304. A copy of that document is attached to my Affidavit as Exhibit A.

The Unit History Detail Listing was not provided to me either before or at my deposition of

February 20, 2003. I first saw it on August 6, 2003. The Unit History Detail Listing assists me

with regard to the topics of identifying the maintenance mechanic who fixed the truck from

which Mr. David Ferguson fell.

3.      My review of the Unit History Detail List reveals that it was I who replaced two of

trailer no. 61304's head ramp safety cables and a switch on September 8, 2000. I know this from

that document because I performed Repair Order No. 011232 on tractor no. 61304 on September

8, 2000. That Repair Order consisted of performing those two maintenance activities. It would have been my standard practice to document the completed repairs and the parts used and sign off on the Repair Order on or shortly after the actions were completed on September 8, 2000.

4.      I do not have any present recollection of disposing either the head ramp safety cables or the switch on September 8, 2000. It would have been my standard practice to cut up the removed head ramp safety cables into pieces and discard them. I do not recall ever setting aside any of the head ramp safety cables that I replaced. I have no reason to believe that the head ramp safety cables that are the subject of my maintenance actions on September 8, 2000, were treated in any other manner.

5.      Michael Palladino never requested that I provide him with any head ramp safety cables that had been broken. I never provided Michael Palladino with any broken head ramp safety cables, including those that had been replaced on tractor no. 61304 on September 8, 2000.

6.      During 1999 and 2000, I had no knowledge of any type of ownership or business relationship between Allied Systems, Ltd. or Allied Automotive Group, Inc., and Consolidated Carriers, Inc. or any other company. I was never told by anyone that a reason for discarding the old style head ramp safety cables upon replacement was due to any ownership or business relationship that Allied Systems, Ltd. or Allied Automotive Group, Inc. might have had with any other company. I had no reason to believe that a reason for discarding the old style head ramp safety cables upon replacement was due to any ownership or business relationship that Allied Systems, Ltd. or Allied Automotive Group, Inc. might have had with any other company.

- 2 -

7.    I was never told or influenced by anyone to dispose or discard any of the old style head ramp safety cables that had been replaced because of the possibility of litigation that might be brought due to the cable breaking.

8    Further, Affiant sayeth naught.

_____
Richard H. Shively

STATE OF OHIO              )
                           ) SS: 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
COUNTY OF MONTGOMERY       )

Sworn to before me and subscribed in my presence, a notary public for the state and county aforesaid this _____ day of August 2003, by Richard H. Shively as his own free and voluntary act and deed.

_____
Notary Public

SHERI J. TAYLOR, Notary Public
In and for the State of Ohio
My Commission Expires March 29, 2004

My commission expires: Mar. 29 2004

- 3 -

## CERTIFICATE OF SERVICE

I certify that true and correct copies of the foregoing were served by depositing the same into the United States Mails, first class postage prepaid, on this 15 day of August 2003, to:

Thomas R. Koustmer, Esq.
1800 Federated Building
7 West Seventh Street
Cincinnati, OH 45202

Michael J. Honerlaw, Esq.
Honerlaw and Honerlaw Co., L.P.A.
9227 Winton Road
Cincinnati, OH 45231

K. Roger Schoeni, Esq.
Kohnen & Patton LLP
PNC Center, Suite 800
201 East Fifth Street
Cincinnati, OH 45202

David E. Larson, Esq.
Larson & Larson PC
11300 Tomahawk Creek Parkway
Suite 310
Leawood, KS 66211

Craig R. Paulus, Esq.
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202

Robert A. Winter, Jr.

F:\data\aliec\Vergassonquincer gas\www.stiliavni.wod

- 4 -

# EXHIBIT D

## AFFIDAVIT

STATE OF GEORGIA    )
                        )
COUNTY OF DEKALB    )

COMES NOW, **Bill McDaniel**, of sound mind and lawful age, and after being duly sworn deposes and says:

1.     I am the Vice President, Claims Administration of USI of Georgia, which is an entity that acts as the third party administrator for liability and workers' compensation claims for Allied Systems, Ltd. and Allied Automotive Group, Inc., the managing general partner of Allied Systems, Ltd. (collectively "Allied"). I have been personally involved in administration of workers' compensation claims and employer liability claims for Allied since August 1997, first with Haul Risk Management Services, Inc., an entity that was affiliated with Allied, and later with the Claims Administration division of Allied Automotive Group, Inc. Since August , 1997, I have overseen and supervised all worker's compensation and employer liability claims for Allied.

2.     I have personal knowledge of the matters set forth herein.

3.     Since August 1997, I am aware of only one state or federal civil action in which either Allied Systems, Ltd. or Allied Automotive Group, Inc. has been sued as a result of an injury involving a fall from the headramp of an automotive carrier due to the alleged failure of a safety cable. That case is styled <u>David E. Ferguson, et al. v. Ryder Automotive Carrier Services, Inc., et al.</u>, U.S. District Court, S.D. Ohio, West. Div., Case No. C-1-02-039.

FURTHER AFFIANT SAYETH NOT.

_____
Bill McDaniel

Sworn to and subscribed before me this 14th day of August, 2003, by Bill McDaniel, who is personally known to me or who has produced ____N/A____ as identification.

_____
Notary Public (signature)

(SEAL)



_____
Linda  M.  Weaver
Notary Public (print name)

2

## CERTIFICATE OF SERVICE

I certify that true and correct copies of the foregoing were served by depositing the same into the United States Mails, first class postage prepaid, on this _15_ day of August 2003, to:

Thomas R. Koustmer, Esq.
1800 Federated Building
7 West Seventh Street
Cincinnati, OH 45202

Michael J. Honerlaw, Esq.
Honerlaw and Honerlaw Co., L.P.A.
9227 Winton Road
Cincinnati, OH 45231

K. Roger Schoeni, Esq.
Kohnen & Patton LLP
PNC Center, Suite 800
201 East Fifth Street
Cincinnati, OH 45202

David E. Larson, Esq.
Larson & Larson PC
11300 Tomahawk Creek Parkway
Suite 310
Leawood, KS 66211

Craig R. Paulus, Esq.
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202

Robert A. Winter, Jr.

s:\dma\allied\ferguson\pleadings\winter affidavit wpd

- 3 -